IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NORRIS WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 19-0104 (RBW) |
| ) | |
| U.S. DEPARTMENT OF JUSTICE, ) | |
| ) | |
| Defendant. ) | |

## DECLARATION OF KELLEIGH A. MILLER

I, Kelleigh A. Miller, hereby make the following Declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.

1. I am currently the Section Chief of the Freedom of Information and Records Management Section ("SAR") of the United States Department of Justice ("DOJ"), Drug Enforcement Administration ("DEA"), located at DEA's Headquarters in Arlington, Virginia. I have served in this capacity since February 2017. I have been a DEA employee for over 19 years. Prior to becoming a Section Chief, I was a Supervisory Program Analyst in the DEA Office of Inspections for 8 years.

2. As the Section Chief, I oversee the processing of requests to DEA under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act ("PA"), 5 U.S.C. § 552a (cited together as FOIA/PA). I am familiar with the policies and practices of the DEA related to search, process, disclosure, and amendment of DEA information under the FOIA and PA because of my experience in this position and because of the nature of my official duties, which

includes supervision of 80 employees who staff three units: Freedom of Information and Privacy Act ("SARF"), Records Management ("SARR"), and Investigative Records ("SARI"). SARF is the DEA office responsible for the receipt, process, and disclosure of DEA information requested pursuant to the FOIA/PA.

3. In preparing this declaration, I have read and am familiar with the complaint in the above titled action.

4. The statements I make in this declaration are true and correct to the best of my belief and are based on my personal knowledge as well as information acquired by me in the course of performing my official duties.

## DEA's LAW ENFORCEMENT MISSION and INVESTIGATIVE RECORDS

5. DEA's mission includes enforcing the controlled substances laws and regulations of the United States. DEA's investigative jurisdiction derives from the Controlled Substances Act, 21 U.S.C. § 801, *et seq.* ("the CSA" or "the Act"). The CSA authorizes DEA to enforce the Act through the investigation of trafficking in controlled substances and the violators who operate at interstate and international levels. This mission involves conducting criminal investigations to assist prosecutions of organizations and principal members of organizations involved in the growing, manufacture, or distribution of controlled substances appearing in or destined for illicit traffic in the United States.

6. Pursuant to its mission, all DEA criminal law enforcement investigative records are maintained in the DEA Investigative Reporting and Filing System ("IRFS"). Records from other DEA record systems that are related to an individual's involvement in, or association with, a DEA intelligence operation or civil, criminal, or regulatory investigation are retained in IRFS because IRFS includes all DEA law enforcement intelligence and investigative information that

is maintained on an individual, whether in paper or electronic format. IRFS is a DEA Privacy Act System of Records (Justice/DEA-008) that contains all administrative, general, and criminal investigative files compiled by DEA for law enforcement purposes.

7. DEA locates information from IRFS using the DEA Narcotics and Dangerous Drugs Information System ("NADDIS"). NADDIS is an electronic data index system and the practical means by which DEA identifies and locates records in IRFS across all of DEA's offices worldwide. Based on the input of search terms (such as name, Social Security Number, or date of birth), NADDIS provides an abstract of information, such as an investigative file number, investigative report number, or other record identifier by which to locate any existing IRFS records that are linked to the individual. A query of NADDIS does not result in any actual IRFS records or documents, nor does it link to any electronic IRFS records. Unlike IRFS, NADDIS is not a record keeping system so it does not contain complete information from an investigative file, but only discrete pieces of information from the Report of Investigation (DEA Form 6), which is an investigative record that is maintained as part of IRFS.

8. A search of IRFS using NADDIS is a worldwide search for DEA records, including records maintained at field offices, because intelligence and investigative records generated across all DEA offices are indexed into NADDIS.

9. An individual is indexed and identified in NADDIS by name, Social Security Number, or date of birth.

## DEA's RECEIPT of PLAINTIFF's REQUEST FOR RECORDS and SUBSEQUENT CORRESPONDENCE

10. By correspondence dated January 15, 2018, Plaintiff, Norris Williams, submitted a request letter to DEA. Plaintiff sought "a full copy" of DEA's file related to Plaintiff and/or the "Criminal Case 2:15-cr-00149-SPC-MRM-1." *See* Exhibit A.

11.     By correspondence dated February 15, 2018, DEA acknowledged receipt of Plaintiff's request and assigned it case number 18-00176-P.  DEA further explained that the records sought would require searches in another office or offices and that the request fell within "unusual circumstances" that would require extending the time limit to respond.  The letter also stated that Plaintiff was determined to be a non-media, non-commercial requester, entitling him to two free hours of search time and up to 100 pages of duplication without charge.  *See* Exhibit B.

12.     By correspondence dated May 4, 2018, DEA informed Plaintiff that the material responsive to his request is exempt from disclosure pursuant to FOIA and the Privacy Act.  *See* Exhibit C.

13.     By correspondence dated June 5, 2018, the Department of Justice, Office of Information Policy ("OIP"), acknowledged the receipt of an appeal from Plaintiff on May 25, 2018, and noted that the appeal was assigned DOJ-AP-2018-005907.

14.     By correspondence dated August 20, 2018, OIP informed Plaintiff that his appeal was denied.

## DEA's SEARCH for RESPONSIVE RECORDS

15.     DEA searched IRFS by querying NADDIS using the Plaintiff's name.  As a result of the query, DEA identified two files responsive to Plaintiff's request.

16.     By memorandum dated February 15, 2018, the FOIA Unit tasked DEA's Miami Division, the office that was identified as having the two case files, with retrieving them and then sending a copy of each file to the FOIA Unit.

17.     DEA's Miami Division notified the FOIA Unit that one of the files, related to the arrest of Plaintiff in 2000, had been destroyed in accordance with the Preservation of Records authority, 28 C.F.R. § 16.48.  The second file, related to the criminal case cited in Plaintiff's

January 15, 2018 request, was located and a copy of the file was sent to the FOIA Unit where it was processed.

## ADEQUACY of SEARCH

18.     Plaintiff's request, seeking records related to Plaintiff and/or the criminal case "2:15-cr-00149-SPC-MRM-1" are reasonably likely to be found in the DEA's IRFS, a Privacy Act System of Records that contains all administrative, general, and investigative files compiled by the DEA for law enforcement purposes.  No other records system maintained by the DEA other than IRFS is reasonably likely to contain the records responsive to Plaintiff's request.  Moreover, the records that Plaintiff sought were located based on a search of this record system.

## DEA's DISCLOSURE DETERMINATION

### Justification for Non-Disclosure of Records About Plaintiff Under the Privacy Act Exemption (j)(2)

19.     The investigative records that are responsive to Plaintiff's requests are maintained in the DEA Investigative Reporting and Filing System (IRFS), JUSTICE/DEA-008.  These records are criminal investigatory data compiled for law enforcement purposes.  The information is gathered pursuant to DEA's law enforcement responsibility.

20.     IRFS is a Privacy Act (PA) system of records for which access is denied pursuant to PA Exemption (j)(2) published at 28 C.F.R. § 16.98.  Consistent with PA Exemption (j)(2), the records maintained in IRFS consist of (a) information compiled for the purpose of identifying individual criminal offenders and alleged offenders; identifying data and notations of arrests; and the nature and disposition of criminal charges, sentencing, confinement, release, parole and probation status; (b) information compiled for the purpose of a criminal investigation, including reports of informants and investigators associated with an identifiable individual; or (c) investigatory material compiled for law enforcement purposes.  DEA processes all requests by

individuals for records pertaining to themselves under both the FOIA and PA in order to provide the requester with the maximum disclosure authorized by law.

21.     DEA has promulgated regulations at 28 C.F.R. § 16.98 which exempt IRFS records from the PA's access provisions, as authorized by 5 U.S.C. § 552a(j)(2).  Subsection (j)(2) exempts from mandatory disclosure all records maintained by an agency or component performing as its principal function any activity pertaining to the enforcement of criminal laws.  DEA is such an agency.  Because Plaintiff's request pertained to his criminal investigation, the materials were necessarily compiled for law enforcement purposes.  Therefore, DEA determined that the responsive records were exempt under the Privacy Act.  Accordingly, DEA next reviewed the records responsive to his request under the provisions of the FOIA.

## Justification for Non-Disclosure of Records About Plaintiff Under the FOIA

### FOIA Exemption (b)(7) Threshold

22.     DEA's investigative jurisdiction derives from the Controlled Substances Act ("The Act"), which authorizes DEA to enforce 21 U.S.C. § 801 *et seq.* through the investigation of incidences involving the trafficking in controlled substances, dangerous drugs, and precursor chemicals. The records responsive to Plaintiff's request pertain to DEA's investigation of him for violation of the Act.  Therefore, the information readily meets  the threshold requirement of Exemption (b)(7).

### Withholding Pursuant to FOIA Exemption (b)(7)(A)

23.     The FOIA, 5 U.S.C. § 552 (b)(7)(A), sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to interfere with enforcement proceedings.

24.     Application of this exemption requires the existence of law enforcement records; a pending or prospective law enforcement proceeding; and a reasonable expectation that the release of information would interfere with the enforcement proceeding.

25.     Exemption 7A was applied to withhold the Plaintiff's criminal file in its entirety, which consisted of 46 pages.

26.     Plaintiff's criminal case is currently on appeal to the United States Court of Appeals for the Eleventh Circuit.  Therefore, FOIA Exemption 7(A) is fully applicable to the information contained in the investigatory file.

27.     Release of the information concerning this investigation would be premature in light of the fact that the appeal stage for the criminal case referenced above has not been completed, the Court could still reject the sentencing of the criminal defendant, and a trial could resume.  The prosecution would likely use the witness information, leads, and evidence collected and maintained within the DEA investigatory file.  Releasing this information would compromise the government's investigation by revealing its scope, pace, and direction.  In addition, release would trigger a multitude of harms as described in the subparagraphs below:

(a)     Suspects and persons of interest would receive investigative details that would either alert them to efforts directed towards them and/or would allow them to analyze pertinent information about the investigation.  As a result, these individuals would acquire the unique advantage of knowing certain details about or related to them which could be used to their advantage to escape prosecution and thwart current investigative efforts by altering or counteracting evidence, changing behavior, intimidating or physically harming witnesses or law enforcement officials, and/or flight.

(b)     Once information is released into the public domain, its use and dissemination by third parties is unrestricted.  As such, release of these investigative details would allow third parties who are not directly related to this matter to interfere with investigative efforts, appeals and/or potential retrials through harassment, intimidation, and creation of false evidence by dispensing extraneous facts discussed in the investigation.  Given the Plaintiff's associates, the threat posed by such harassment and intimidation is very real.

(c)     The release of the withheld investigative details could lead to the identification of sources of information, witnesses, potential witnesses, law enforcement personnel, and individuals otherwise associated with the investigation who could then be targeted for intimidation and/or physical harm.  The release of this information would enable individuals and other third parties to uncover the Government's legal strategy in the case.

28.     DEA withheld all 46 pages pursuant to FOIA Exemption 7(A); however, in the event that application of Exemption 7(A), which is temporal in nature, expires, DEA also determined that the material is protected from disclosure by FOIA Exemptions 7(C), 7(D), 7(E), and 7(F).  A brief discussion of how each of these exemptions apply to this information is contained below.

**Withholding Pursuant to FOIA Exemption (b)(7)(C)**

29.     The FOIA, 5 U.S.C. § 552 (b)(7)(C), sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy.  The investigative records processed in response to Plaintiff's FOIA request contain names and other identifying information that would reveal the identity of, and disclose personal information about, individuals who were involved or associated with the Plaintiff, or with a law enforcement investigation, and could subject them to possible harassment, or focus derogatory inferences and suspicion upon them.  The individuals

are protected from the disclosure of their identities and information about them. These individuals include third-parties, such as law enforcement personnel, witnesses, suspects, co-defendants and confidential sources of information.

30. The individuals' privacy interests were balanced against any discernible public interest in disclosure of the individuals' identities. The Plaintiff provided no facts to establish any public interest that would outweigh the privacy interests of the individuals. Thus, disclosure of the identities would be an unwarranted invasion of their personal privacy.

31. The public interest in disclosure of the information was determined by whether the information in question would inform the Plaintiff or the general public about DEA's performance of its mission to enforce Federal criminal statutes and the Act, or how DEA conducts its internal operations and investigations. In this case, it was determined that there was no legitimate public interest in the information withheld under Exemption (7)(C), and release of any information about a third-party would constitute an unwarranted invasion of that third-party's personal privacy.

**Withholding Pursuant to FOIA Exemption (b)(7)(D)**

32. The FOIA, 5 U.S.C. § 552 (b)(7)(D), sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to reveal the identity of a confidential source or information furnished by a confidential source. Exemption (7)(D) was employed to withhold portions of the report that contained information that would disclose the identity of and the information provided by the confidential source.

33. Because of the nature of DEA's criminal investigations, any information that could identify an informant could subject them, their family members and associates, to serious harm, substantial repercussions, and possibly even death.

**Withholding Pursuant to FOIA Exemption (b)(7)(E)**

34.     The FOIA, 5 U.S.C. § 552(b)(7)(E), sets forth an exemption for records or information compiled for law enforcement purposes if its release would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

35.     DEA has asserted Exemption 7(E) to withhold information related to Plaintiff's investigation including Geo-Drug Enforcement Program (G-DEP) identifiers and other information.  G-DEP identifiers/information are part of the DEA's internal system of developing criminal activity information and intelligence.  The release of the G-DEP identifiers/information would help identify priority given to narcotics investigations, types of criminal activities involved, and violator ratings.  Suspects could decode this information and, as a result, change their patterns of drug trafficking in an effort to respond to what they determined the DEA knows about them, develop enforcement countermeasures, avoid detection and apprehension, create excuses for suspected activities, and/or create alibis for suspected activities.  As such, disclosure of the G-DEP identifiers/information would enable circumvention of the DEA's law enforcement efforts.

36.     DEA also has asserted Exemption 7(E) to withhold information related to Plaintiff's investigations including DEA file numbers, specific information regarding meetings and debriefings with confidential and other sources, as well as related files, NADDIS numbers, acquisition of certain evidence, other identifying information, and material that would reveal sensitive, non-public references to the DEA's Agents Manual, which is not available to the public and would reveal DEA information and law enforcement techniques.

37. If any of this information were to be released, criminals could restructure their activities to avoid or limit the capabilities of the techniques, thus circumventing the law. Further, release of the information protected here would also undermine the DEA's position in achieving its statutory mission and could put agents and sources at risk of harm.

**Withholding Pursuant to FOIA Exemption (b)(7)(F)**

38. The FOIA, 5 U.S.C. § 552(b)(7)(F), sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to endanger the life or physical safety of an individual.

39. DEA Special Agents are frequently called upon to conduct a wide variety of investigations, including sensitive and dangerous undercover operations. Special Agents routinely approach and associate with violators in a covert capacity. Many of those violators are armed, and many have known violent tendencies.

## FORESEEABLE HARM

40. As described in the previous paragraphs, DEA believes that release of any of the withheld information would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions. Specifically, release of the information could reasonably be expected to interfere with law enforcement proceedings; result in an unwarranted invasion of personal privacy; result in revealing a confidential source of information; reveal sensitive law enforcement techniques and procedures; and place in jeopardy the lives and safety of third parties.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on May 9, 2019, in Arlington, Virginia

*KELLEIGH A. MILLER*
KELLEIGH A. MILLER
Section Chief
Freedom of Information & Records Management Section
Drug Enforcement Administration