## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NORRIS WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-0104 (RBW) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF KELLEIGH A. MILLER

I, Kelleigh A. Miller, hereby make the following Declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.

1.      I am currently the Section Chief of the Freedom of Information and Records Management Section ("SAR") of the United States Department of Justice ("DOJ"), Drug Enforcement Administration ("DEA"), located at DEA's Headquarters in Arlington, Virginia. I have served in this capacity since February 2017.  I have been a DEA employee for over 19 years.  Prior to becoming a Section Chief, I was a Supervisory Program Analyst in the DEA Office of Inspections for 8 years.

2.      As the Section Chief, I oversee the processing of requests to DEA under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act ("PA"), 5 U.S.C. § 552a (cited together as FOIA/PA).  I am familiar with the policies and practices of the DEA related to search, process, disclosure, and amendment of DEA information under the FOIA and PA because of my experience in this position and because of the nature of my official duties, which

includes supervision of 80 employees who staff three units: Freedom of Information and Privacy

Act ("SARF"), Records Management ("SARR"), and Investigative Records ("SARI"). SARF is

the DEA office responsible for the receipt, process, and disclosure of DEA information requested

pursuant to the FOIA/PA.

3.      In preparing this declaration, I have read and am familiar with the complaint in the above

titled action.

4.      The statements I make in this declaration are true and correct to the best of my belief and

are based on my personal knowledge as well as information acquired by me in the course of

performing my official duties.

### DEA's LAW ENFORCEMENT MISSION and INVESTIGATIVE RECORDS

5.      DEA's mission includes enforcing the controlled substances laws and regulations of the

United States.  DEA's investigative jurisdiction derives from the Controlled Substances Act, 21

U.S.C. § 801, *et seq.* ("the CSA" or "the Act").  The CSA authorizes DEA to enforce the Act

through the investigation of trafficking in controlled substances and the violators who operate at

interstate and international levels.  This mission involves conducting criminal investigations to

assist prosecutions of organizations and principal members of organizations involved in the

growing, manufacture, or distribution of controlled substances appearing in or destined for illicit

traffic in the United States.

6.      Pursuant to its mission, all DEA criminal law enforcement investigative records are

maintained in the DEA Investigative Reporting and Filing System ("IRFS").  Records from other

DEA record systems that are related to an individual's involvement in, or association with, a

DEA intelligence operation or civil, criminal, or regulatory investigation are retained in IRFS

because IRFS includes all DEA law enforcement intelligence and investigative information that

is maintained on an individual, whether in paper or electronic format. IRFS is a DEA Privacy

Act System of Records (Justice/DEA-008) that contains all administrative, general, and criminal

investigative files compiled by DEA for law enforcement purposes.

7.      DEA locates information from IRFS using the DEA Narcotics and Dangerous Drugs

Information System ("NADDIS"). NADDIS is an electronic data index system and the practical

means by which DEA identifies and locates records in IRFS across all of DEA's offices

worldwide. Based on the input of search terms (such as name, Social Security Number, or date

of birth), NADDIS provides an abstract of information, such as an investigative file number,

investigative report number, or other record identifier by which to locate any existing IRFS

records that are linked to the individual. A query of NADDIS does not result in any actual IRFS

records or documents, nor does it link to any electronic IRFS records. Unlike IRFS, NADDIS is

not a record keeping system so it does not contain complete information from an investigative

file, but only discrete pieces of information from the Report of Investigation (DEA Form 6),

which is an investigative record that is maintained as part of IRFS.

8.      A search of IRFS using NADDIS is a worldwide search for DEA records, including

records maintained at field offices, because intelligence and investigative records generated

across all DEA offices are indexed into NADDIS.

9.      An individual is indexed and identified in NADDIS by name, Social Security Number, or

date of birth.

### DEA's RECEIPT of PLAINTIFF's REQUEST FOR RECORDS and SUBSEQUENT CORRESPONDENCE

10.     By correspondence dated January 15, 2018, Plaintiff, Norris Williams, submitted a

request letter to DEA. Plaintiff sought "a full copy" of DEA's file related to Plaintiff and/or the

"Criminal Case 2:15-cr-00149-SPC-MRM-1." *See* Exhibit A.

11.    By correspondence dated February 15, 2018, DEA acknowledged receipt of Plaintiff's request and assigned it case number 18-00176-P.  DEA further explained that the records sought would require searches in another office or offices and that the request fell within "unusual circumstances" that would require extending the time limit to respond.  The letter also stated that Plaintiff was determined to be a non-media, non-commercial requester, entitling him to two free hours of search time and up to 100 pages of duplication without charge.  *See* Exhibit B.

12.    By correspondence dated May 4, 2018, DEA informed Plaintiff that the material responsive to his request is exempt from disclosure pursuant to FOIA and the Privacy Act.  *See* Exhibit C.

13.    By correspondence dated June 5, 2018, the Department of Justice, Office of Information Policy ("OIP"), acknowledged the receipt of an appeal from Plaintiff on May 25, 2018, and noted that the appeal was assigned DOJ-AP-2018-005907.

14.    By correspondence dated August 20, 2018, OIP informed Plaintiff that his appeal was denied.

## DEA's SEARCH for RESPONSIVE RECORDS

15.    DEA searched IRFS by querying NADDIS using the Plaintiff's name.  As a result of the query, DEA identified two files responsive to Plaintiff's request.

16.    By memorandum dated February 15, 2018, the FOIA Unit tasked DEA's Miami Division, the office that was identified as having the two case files, with retrieving them and then sending a copy of each file to the FOIA Unit.

17.    DEA's Miami Division notified the FOIA Unit that one of the files, related to the arrest of Plaintiff in 2000, had been destroyed in accordance with the Preservation of Records authority, 28 C.F.R. § 16.48.  The second file, related to the criminal case cited in Plaintiff's

January 15, 2018 request, was located and a copy of the file was sent to the FOIA Unit where it was processed.

## ADEQUACY of SEARCH

18.     Plaintiff's request, seeking records related to Plaintiff and/or the criminal case "2:15-cr-00149-SPC-MRM-1" are reasonably likely to be found in the DEA's IRFS, a Privacy Act System of Records that contains all administrative, general, and investigative files compiled by the DEA for law enforcement purposes.  No other records system maintained by the DEA other than IRFS is reasonably likely to contain the records responsive to Plaintiff's request.  Moreover, the records that Plaintiff sought were located based on a search of this record system.

## DEA's DISCLOSURE DETERMINATION

### Justification for Non-Disclosure of Records About Plaintiff Under the Privacy Act Exemption (j)(2)

19.     The investigative records that are responsive to Plaintiff's requests are maintained in the DEA Investigative Reporting and Filing System (IRFS), JUSTICE/DEA-008.  These records are criminal investigatory data compiled for law enforcement purposes.  The information is gathered pursuant to DEA's law enforcement responsibility.

20.     IRFS is a Privacy Act (PA) system of records for which access is denied pursuant to PA Exemption (j)(2) published at 28 C.F.R. § 16.98.  Consistent with PA Exemption (j)(2), the records maintained in IRFS consist of (a) information compiled for the purpose of identifying individual criminal offenders and alleged offenders; identifying data and notations of arrests; and the nature and disposition of criminal charges, sentencing, confinement, release, parole and probation status; (b) information compiled for the purpose of a criminal investigation, including reports of informants and investigators associated with an identifiable individual; or (c) investigatory material compiled for law enforcement purposes.  DEA processes all requests by

individuals for records pertaining to themselves under both the FOIA and PA in order to provide

the requester with the maximum disclosure authorized by law.

21.    DEA has promulgated regulations at 28 C.F.R. § 16.98 which exempt IRFS records from

the PA's access provisions, as authorized by 5 U.S.C. § 552a(j)(2).  Subsection (j)(2) exempts

from mandatory disclosure all records maintained by an agency or component performing as its

principal function any activity pertaining to the enforcement of criminal laws.  DEA is such an

agency.  Because Plaintiff's request pertained to his criminal investigation, the materials were

necessarily compiled for law enforcement purposes.  Therefore, DEA determined that the

responsive records were exempt under the Privacy Act.  Accordingly, DEA next reviewed the

records responsive to his request under the provisions of the FOIA.

### Justification for Non-Disclosure of Records About Plaintiff Under the FOIA

### FOIA Exemption (b)(7) Threshold

22.    DEA's investigative jurisdiction derives from the Controlled Substances Act ("The Act"),

which authorizes DEA to enforce 21 U.S.C. § 801 *et seq.* through the investigation of incidences

involving the trafficking in controlled substances, dangerous drugs, and precursor chemicals.

The records responsive to Plaintiff's request pertain to DEA's investigation of him for violation

of the Act.  Therefore, the information readily meets  the threshold requirement of

Exemption (b)(7).

### Withholding Pursuant to FOIA Exemption (b)(7)(A)

23.    The FOIA, 5 U.S.C. § 552 (b)(7)(A), sets forth an exemption for records or information

compiled for law enforcement purposes the disclosure of which could reasonably be expected to

interfere with enforcement proceedings.

24.     Application of this exemption requires the existence of law enforcement records; a pending or prospective law enforcement proceeding; and a reasonable expectation that the release of information would interfere with the enforcement proceeding.

25.     Exemption 7A was applied to withhold the Plaintiff's criminal file in its entirety, which consisted of 46 pages.

26.     Plaintiff's criminal case is currently on appeal to the United States Court of Appeals for the Eleventh Circuit.  Therefore, FOIA Exemption 7(A) is fully applicable to the information contained in the investigatory file.

27.     Release of the information concerning this investigation would be premature in light of the fact that the appeal stage for the criminal case referenced above has not been completed, the Court could still reject the sentencing of the criminal defendant, and a trial could resume.  The prosecution would likely use the witness information, leads, and evidence collected and maintained within the DEA investigatory file.  Releasing this information would compromise the government's investigation by revealing its scope, pace, and direction.  In addition, release would trigger a multitude of harms as described in the subparagraphs below:

        (a)     Suspects and persons of interest would receive investigative details that would either alert them to efforts directed towards them and/or would allow them to analyze pertinent information about the investigation.  As a result, these individuals would acquire the unique advantage of knowing certain details about or related to them which could be used to their advantage to escape prosecution and thwart current investigative efforts by altering or counteracting evidence, changing behavior, intimidating or physically harming witnesses or law enforcement officials, and/or flight.

(b)     Once information is released into the public domain, its use and dissemination by third parties is unrestricted.  As such, release of these investigative details would allow third parties who are not directly related to this matter to interfere with investigative efforts, appeals and/or potential retrials through harassment, intimidation, and creation of false evidence by dispensing extraneous facts discussed in the investigation.  Given the Plaintiff's associates, the threat posed by such harassment and intimidation is very real.

(c)     The release of the withheld investigative details could lead to the identification of sources of information, witnesses, potential witnesses, law enforcement personnel, and individuals otherwise associated with the investigation who could then be targeted for intimidation and/or physical harm.  The release of this information would enable individuals and other third parties to uncover the Government's legal strategy in the case.

28.     DEA withheld all 46 pages pursuant to FOIA Exemption 7(A); however, in the event that application of Exemption 7(A), which is temporal in nature, expires, DEA also determined that the material is protected from disclosure by FOIA Exemptions 7(C), 7(D), 7(E), and 7(F).  A brief discussion of how each of these exemptions apply to this information is contained below.

**Withholding Pursuant to FOIA Exemption (b)(7)(C)**

29.     The FOIA, 5 U.S.C. § 552 (b)(7)(C), sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy.  The investigative records processed in response to Plaintiff's FOIA request contain names and other identifying information that would reveal the identity of, and disclose personal information about, individuals who were involved or associated with the Plaintiff, or with a law enforcement investigation, and could subject them to possible harassment, or focus derogatory inferences and suspicion upon them.  The individuals

are protected from the disclosure of their identities and information about them. These individuals include third-parties, such as law enforcement personnel, witnesses, suspects, co-defendants and confidential sources of information.

30.     The individuals' privacy interests were balanced against any discernible public interest in disclosure of the individuals' identities. The Plaintiff provided no facts to establish any public interest that would outweigh the privacy interests of the individuals. Thus, disclosure of the identities would be an unwarranted invasion of their personal privacy.

31.     The public interest in disclosure of the information was determined by whether the information in question would inform the Plaintiff or the general public about DEA's performance of its mission to enforce Federal criminal statutes and the Act, or how DEA conducts its internal operations and investigations. In this case, it was determined that there was no legitimate public interest in the information withheld under Exemption (7)(C), and release of any information about a third-party would constitute an unwarranted invasion of that third-party's personal privacy.

**Withholding Pursuant to FOIA Exemption (b)(7)(D)**

32.     The FOIA, 5 U.S.C. § 552 (b)(7)(D), sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to reveal the identity of a confidential source or information furnished by a confidential source. Exemption (7)(D) was employed to withhold portions of the report that contained information that would disclose the identity of and the information provided by the confidential source.

33.     Because of the nature of DEA's criminal investigations, any information that could identify an informant could subject them, their family members and associates, to serious harm, substantial repercussions, and possibly even death.

**Withholding Pursuant to FOIA Exemption (b)(7)(E)**

34.     The FOIA, 5 U.S.C. § 552(b)(7)(E), sets forth an exemption for records or information compiled for law enforcement purposes if its release would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

35.     DEA has asserted Exemption 7(E) to withhold information related to Plaintiff's investigation including Geo-Drug Enforcement Program (G-DEP) identifiers and other information.  G-DEP identifiers/information are part of the DEA's internal system of developing criminal activity information and intelligence.  The release of the G-DEP identifiers/information would help identify priority given to narcotics investigations, types of criminal activities involved, and violator ratings.  Suspects could decode this information and, as a result, change their patterns of drug trafficking in an effort to respond to what they determined the DEA knows about them, develop enforcement countermeasures, avoid detection and apprehension, create excuses for suspected activities, and/or create alibis for suspected activities.  As such, disclosure of the G-DEP identifiers/information would enable circumvention of the DEA's law enforcement efforts.

36.     DEA also has asserted Exemption 7(E) to withhold information related to Plaintiff's investigations including DEA file numbers, specific information regarding meetings and debriefings with confidential and other sources, as well as related files, NADDIS numbers, acquisition of certain evidence, other identifying information, and material that would reveal sensitive, non-public references to the DEA's Agents Manual, which is not available to the public and would reveal DEA information and law enforcement techniques.

37.     If any of this information were to be released, criminals could restructure their activities to avoid or limit the capabilities of the techniques, thus circumventing the law.  Further, release of the information protected here would also undermine the DEA's position in achieving its statutory mission and could put agents and sources at risk of harm.

**Withholding Pursuant to FOIA Exemption (b)(7)(F)**

38.     The FOIA, 5 U.S.C. § 552(b)(7)(F), sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to endanger the life or physical safety of an individual.

39.     DEA Special Agents are frequently called upon to conduct a wide variety of investigations, including sensitive and dangerous undercover operations.  Special Agents routinely approach and associate with violators in a covert capacity.  Many of those violators are armed, and many have known violent tendencies.

## FORESEEABLE HARM

40.     As described in the previous paragraphs, DEA believes that release of any of the withheld information would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions.  Specifically, release of the information could reasonably be expected to interfere with law enforcement proceedings; result in an unwarranted invasion of personal privacy; result in revealing a confidential source of information; reveal sensitive law enforcement techniques and procedures; and place in jeopardy the lives and safety of third parties.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on May 9, 2019, in Arlington, Virginia

KELLEIGH A. MILLER
Section Chief
Freedom of Information & Records Management Section
Drug Enforcement Administration

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
NORRIS WILLIAMS,                        )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )        Civil Action No. 19-0104 (RBW)
                                        )
U.S. DEPARTMENT OF JUSTICE,             )
                                        )
            Defendant.                  )
_____)


**DECLARATION OF ANGELA D. HERTEL**

I, Angela D. Hertel, hereby make the following Declaration under penalty of perjury

pursuant to 28 U.S.C. § 1746.

1.      I am currently the Unit Chief of the Freedom of Information/Privacy Act Legal and

External Affairs Unit ("FSRL"), part of the Freedom of Information/Privacy Act Section

("FSR"), of the United States Department of Justice ("DOJ"), Drug Enforcement Administration

("DEA"), located at DEA's Headquarters in Arlington, Virginia. I have served in this capacity

since October 1, 2020. Before then I served as Acting Unit Chief of the Freedom of

Information/Privacy Act Unit ("FSRF") from May 2019 until FSRF was reorganized as FSR in

October 2020. I have been a DEA employee since October 2018. Prior to becoming a DEA

employee, I was a supervisory contract paralegal supporting FSRF since September 2009.

2.      As the Unit Chief, I, in part, oversee the processing of certain requests to DEA under the

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act ("PA"), 5 U.S.C. §

552a (cited together as "FOIA/PA"). Due to my experience in responding to requests for DEA

records since 2009 and the nature of my official duties, I am familiar with the policies and

practices of the DEA related to search, process, and disclosure of DEA information under the

FOIA and PA.  FSR is (and FSRF was before its reorganization into FSR) the DEA office

responsible for the receipt, process, and disclosure of DEA information requested pursuant to the

FOIA/PA.

3.      The statements I make in this declaration are true and correct to the best of my belief and

are based on my personal knowledge as well as information acquired by me in the course of

performing my official duties.

**DEA's Law Enforcement Mission and Investigative Records**

4.      DEA's mission includes enforcing the controlled substances laws and regulations of the

United States. DEA's investigative jurisdiction derives from the Controlled Substances Act, 21

U.S.C. § 801, *et seq.* ("the CSA" or "the Act"). The CSA authorizes DEA to enforce the Act

through the investigation of trafficking in controlled substances and the violators who operate at

interstate and international levels. This mission involves conducting criminal investigations to

assist prosecutions of organizations and principal members of organizations involved in the

growing, manufacture, or distribution of controlled substances appearing in or destined for illicit

traffic in the United States.

5.      Pursuant to its mission, all DEA criminal law enforcement investigative records are

maintained in the DEA Investigative Reporting and Filing System ("IRFS"). Records from other

DEA record systems that are related to an individual's involvement in, or association with, a

DEA intelligence operation or civil, criminal, or regulatory investigation are retained in IRFS

because IRFS includes all DEA law enforcement intelligence and investigative information that

is maintained on an individual, whether in paper or electronic format. IRFS is a DEA Privacy

Act System of Records (Justice/DEA-008) that contains all administrative, general, and criminal investigative files compiled by DEA for law enforcement purposes.

6.     DEA locates information from IRFS using the DEA Narcotics and Dangerous Drugs Information System ("NADDIS"). NADDIS is an electronic data index system and the practical means by which DEA identifies and locates records in IRFS across all of DEA's offices worldwide. Based on the input of search terms (such as name, Social Security Number, or date of birth), NADDIS provides an abstract of information, such as an investigative file number, investigative report number, or other record identifier by which to locate any existing IRFS records that are linked to the individual. A query of NADDIS does not result in any actual IRFS records or documents, nor does it link to any electronic IRFS records. Unlike IRFS, NADDIS is not a record keeping system so it does not contain complete information from an investigative file, but only discrete pieces of information from the Report of Investigation (DEA Form 6), which is an investigative record that is maintained as part of IRFS.

7.     A search of IRFS using NADDIS is a worldwide search for DEA records, including records maintained at field offices, because intelligence and investigative records generated across all DEA offices are indexed into NADDIS.

8.     An individual is indexed and identified in NADDIS by name, Social Security Number, or date of birth.

### DEA's Search for Responsive Records

9.     As noted in DEA's declaration filed May 17, 2019, DEA searched IRFS by querying NADDIS using the Plaintiff's name. As a result of the query, DEA identified the file responsive to Plaintiff's request. *See* Declaration of Kelleigh A. Miller (ECF No. 12-3, "Miller Decl.").  No other records system maintained by the DEA other than IRFS is reasonably likely to contain the

records responsive to Plaintiff's request. Moreover, the records that Plaintiff sought were located based on a search of this record system. DEA's FOIA Unit sought the responsive file from the Miami Division. The file was related to Plaintiff's arrest and conviction for drug trafficking. The FOIA Unit received 46 pages, including one duplicate page, and those pages were withheld in full pursuant to Exemption 7(A) because Plaintiff's appeal of his criminal conviction was open. *See id* ¶¶ 23-28.

10.     On January 8, 2020, the Court issued an Opinion and Order ruling that Exemption 7(A) no longer applied because Plaintiff's appeal of his criminal conviction had been denied. The Court ordered DEA to re-process the 45 pages.

11.     By correspondence dated February 6, 2020, DEA partially released 37 pages and withheld 8 pages in full. The correspondence informed Plaintiff that the material withheld was exempt from disclosure pursuant to FOIA and the Privacy Act.

12.     While reviewing the 45 pages in more detail, the FOIA Unit discovered that several reports indicated that the file included additional records that the FOIA Unit had not received from the Miami Division. The FOIA Unit tasked DEA's Miami Division to retrieve the complete file and send a copy to the FOIA Unit. The Miami Division sent a copy of the file, including additional pages not previously sent, to the FOIA Unit on February 7, 2020.

13.     While reviewing the additional pages, the FOIA Unit noted that photographs and video recordings were mentioned in the file but had not been included in what the Miami Division had sent. An additional request was sent to the Miami Division to provide copies of the photographs and audio/video recordings associated with the file.

14.     By March 10, 2020, all of the photographs and video recordings associated with the file had been received by the FOIA Unit. The Miami Division confirmed to the FOIA Unit that a copy of the entire responsive file was now in the possession of the FOIA Unit.

15.     In addition to the original 45 pages, the FOIA Unit processed 290 pages of records and six audio/video files.

16.     By correspondence dated June 30, 2020, DEA released 84 pages in full, partially released 155 pages, withheld 51 pages in full, and withheld the 6 audio/video files. The correspondence informed Plaintiff that the material withheld was exempt from disclosure pursuant to FOIA and the Privacy Act.

17.     Combining the two productions: DEA released 84 pages in full, partially released 192 pages, withheld 59 pages in full, and withheld 6 audio/video files.

## Adequacy of the Search

18.     Plaintiff's request seeking records related to Plaintiff and/or the criminal case "2:15-cr-00149-SPC-MRM-1" are reasonably likely to be found in the DEA's IRFS, a Privacy Act System of Records that contains all administrative, general, and investigative files compiled by the DEA for law enforcement purposes. No other records system maintained by the DEA other than IRFS is reasonably likely to contain the records responsive to Plaintiff's request. Moreover, the records that Plaintiff sought were located based on a search of this record system.

19.     DEA acknowledges that the FOIA Unit did not originally receive the complete file from the Miami Division. However, once that error was discovered by the FOIA Unit, the complete file was retrieved and processed.

## DEA's Disclosure Determination

*Privacy Act Exemption (j)(2)*

20.     The investigative records that are responsive to Plaintiff's request are maintained in the

DEA Investigative Reporting and Filing System (IRFS), JUSTICE/DEA-008. These records are

criminal investigatory data compiled for law enforcement purposes. The information is gathered

pursuant to DEA's law enforcement responsibility.

21.     IRFS is a Privacy Act (PA) system of records for which access is denied pursuant to PA

Exemption (j)(2) published at 28 C.F.R. § 16.98. Consistent with PA Exemption (j)(2), the

records maintained in IRFS consist of (a) information compiled for the purpose of identifying

individual criminal offenders and alleged offenders; identifying data and notations of arrests; and

the nature and disposition of criminal charges, sentencing, confinement, release, parole and

probation status; (b) information compiled for the purpose of a criminal investigation, including

reports of informants and investigators associated with an identifiable individual; or (c)

investigatory material compiled for law enforcement purposes. DEA processes all requests by

individuals for records pertaining to themselves under both the FOIA and PA in order to provide

the requester with the maximum disclosure authorized by law.

22.     DEA has promulgated regulations at 28 C.F.R. § 16.98 which exempt IRFS records from

the PA's access provisions, as authorized by 5 U.S.C. § 552a(j)(2). Subsection (j)(2) exempts

from mandatory disclosure all records maintained by an agency or component performing as its

principal function any activity pertaining to the enforcement of criminal laws. DEA is such an

agency. Because Plaintiff's request pertained to his criminal investigation, the materials were

necessarily compiled for law enforcement purposes. Therefore, DEA determined that the

responsive records were exempt under the Privacy Act. Accordingly, DEA next reviewed the records responsive to his request under the provisions of the FOIA.

**FOIA Exemptions**

*Exemption 7 Threshold*

23.     DEA's investigative jurisdiction derives from the Act, which authorizes DEA to enforce 21 U.S.C. § 801 *et seq.* through the investigation of incidences involving the trafficking in controlled substances, dangerous drugs, and precursor chemicals. The records responsive to Plaintiff's request pertain to DEA's investigation of him for violation of the Act. Therefore, the information readily meets the threshold requirement of Exemption 7.

24.     A *Vaughn* Index is attached that documents the exemptions applied to all of the responsive material withheld. *See* Exhibit A.

*Exemption 7(C) and Exemption 6*

25.     The FOIA, 5 U.S.C. § 552 (b)(7)(C), sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. The investigative records processed in response to Plaintiff's FOIA request contain names and other identifying information that would reveal the identity of, and disclose personal information about, individuals who were involved or associated with the Plaintiff, or with a law enforcement investigation, and could subject them to possible harassment, or focus derogatory inferences and suspicion upon them. The individuals are protected from the disclosure of their identities and information about them. These individuals include third-parties, such as law enforcement personnel, witnesses, suspects, co-defendants, and confidential sources of information.

26.     The FOIA, 5 U.S.C. § 552 (b)(6) protects information about individuals in personnel and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. DEA applied exemption 6 in conjunction with Exemption 7(C) to information in a number of records. Although the balancing test for Exemption 6 uses a "would constitute a clearly unwarranted invasion of personal privacy" and the test for Exemption 7(C) uses the lesser standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is similar enough to warrant a consolidated discussion. The privacy interests are balanced against the public's interest in disclosure under the analysis of both exemptions.

27.     The individuals' privacy interests were balanced against any discernible public interest in disclosure of the individuals' identities. The Plaintiff provided no facts to establish any public interest that would outweigh the privacy interests of the individuals. Thus, disclosure of the identities would be an unwarranted invasion of their personal privacy.

28.     In asserting these exemptions, each piece of information was examined to determine the degree and nature of the privacy interest of any individual whose name or identifying data appeared in the documents at issue. The public interest in disclosure of the information was determined by whether the information in question would inform the Plaintiff or the general public about DEA's performance of its mission to enforce Federal criminal statutes and the Act, or how DEA conducts its internal operations and investigations. In this case, it was determined that there was no legitimate public interest in the information withheld under exemptions 7(C) or 6, and release of any information about a third-party would constitute an unwarranted invasion of that third-party's personal privacy.

29.     Fifty-Nine (59) pages were withheld in full pursuant to Exemptions 7(C) and 6. The
Plaintiff is not the sole subject of the file related to his prosecution. The pages include DEA
forms associated with, and photographs of, individuals other than the Plaintiff, and are withheld
because disclosure of the pages could reasonably be expected to constitute an unwarranted
invasion of the personal privacy of the individuals who are the subject of those reports and
photographs. There is no public interest that would outweigh the privacy interests of the
individuals who are the subject of those reports and photographs.

30.     One Hundred and Eighty-Two (182) pages of the responsive file were released with
pieces of information redacted pursuant to Exemptions 7(C) and 6. These pages included the
following examples of records: DEA Form 6 (Report of Investigation); DEA Form 7 (Report of
Drug Property Collected, Purchased, or Seized); DEA Form 7a (Acquisition of Nondrug
Property Seizures); DEA Form 12 (Declaration of Forfeiture); DEA Form 48 (Disposition of
Non Drug Evidence); DEA Form 113 (Chemical Analysis Report); DEA Form 202 (Personal
History Report); DEA Form 210 (Defendant Disposition Report); the indictment of Plaintiff with
attachments; warrants issued related to Plaintiff; and photographs. While this list is not
exhaustive, the redacted information includes names of law enforcement personnel, their initials,
names of third-party individuals, telephone numbers and addresses, vehicle registrations that
could be used to identify third-parties, signatures of law enforcement personnel, NADDIS
information, DEA routing information that would reveal law enforcement personnel, criminal
associates, information derived from sources of information, confidential source numbers, and
the like.

31.     Exemptions 7(C) and 6 were also applied to information in many of the records that were
withheld in full pursuant to other exemptions.

*Exemption 7(D)*

32.      The FOIA, 5 U.S.C. § 552 (b)(7)(D), sets forth an exemption for the information

compiled for law enforcement purposes the disclosure of which could reasonably be expected to

reveal the identity of a confidential source or information furnished by a confidential source.

DEA has registered, or "coded," confidential sources. These sources are assigned an identity

code and receive express assurances from DEA that their identity and the information they

provide is confidential. As part of its law enforcement authority and mission under the Act, DEA

relies on Exemption 7(D) to protect source-identifying and source-supplied investigative

information. When it cannot be ascertained that a source was found to have been expressly made

a promise of confidentiality, certain circumstances may support an inference of confidentiality,

such as the character of the crime being investigated, and the source's relation to the nature of

the crime.

33.      In this case, based upon the facts and circumstances, confidentiality was either express or

implied for the sources of information. The sources were involved, and maintained a close

relationship with, several individuals who trafficked in illegal drugs and engaged in other drug-

dealing and illegal activities. The information provided by the individuals related to the illicit

trafficking in drugs by Plaintiff and others. Under these circumstances, it is presumed that the

individuals would not have provided the information unless they believed that the information

and their identity would be held in confidence and not released to Plaintiff or the public, except

as required by law. Thus, confidentiality was implied and the information withheld.

34.      Exemption 7(D) was applied to withhold Forty (40) pages in full. The reports discussed

confidential source information, provided information that would likely reveal the location of the

confidential source, and included the identity code assigned to the confidential source, which

indicates that DEA likely had given an express promise of confidentiality because the individual

had been assigned a confidential source identity code. Because release of the information in

those documents could reasonably be expected to allow for identification of the confidential

source or the disclosure of information furnished by the confidential source, the documents were

withheld in full.

35.     The release of information about a confidential source could jeopardize DEA operations

as the continued cooperation of confidential sources is paramount to DEA investigations and

DEA's development of criminal intelligence. Release of this information would hamper future

cooperation. Because of the nature of DEA's criminal investigations, any information that could

identify an informant could subject them, their family members and associates, to serious harm,

substantial repercussions, and possibly even death. Therefore, exemption 7(D), in conjunction

with 6, 7(C), 7(E), and 7(F), was applied to withhold this information from disclosure.

*Exemption (7)(E)*

36.     The FOIA, 5 U.S.C. § 552(b)(7)(E), sets forth an exemption for records or information

compiled for law enforcement purposes if its release would disclose techniques and procedures

for law enforcement investigations or prosecutions, or would disclose guidelines for law

enforcement investigations or prosecutions if such disclosure could reasonably be expected to

risk circumvention of the law.

37.     Fifty-Seven (57) pages were withheld in full pursuant to Exemption 7(E). These pages

discussed and outlined techniques and procedures used to investigate Plaintiff that, if released,

would constitute significant harm to DEA's ability to investigate individuals involved in drug

trafficking. Release of this information could reasonably be expected to allow drug-traffickers to circumvent the law.

38.     The Six (6) audio/video files were also withheld in full pursuant to Exemption 7(E). These videos document the surveillance of Plaintiff during the drug trafficking investigation that led to his arrest and conviction, including recordings of undercover operations. Release of the recordings would provide details of the techniques and procedures used by DEA to investigate drug trafficking suspects and activity that, if released, would constitute significant harm to DEA's ability to investigate individuals involved in drug trafficking. Release of this information could reasonably be expected to allow drug-traffickers to circumvent the law.

39.     One Hundred and Twenty (120) pages of the responsive file were released with pieces of information redacted pursuant to Exemption 7(E). These pages included the following examples of records: DEA Form 6 (Report of Investigation); DEA Form 7 (Report of Drug Property Collected, Purchased, or Seized); DEA Form 7a (Acquisition of Nondrug Property Seizures); DEA Form 12 (Declaration of Forfeiture); DEA Form 48 (Disposition of Non Drug Evidence); DEA Form 113 (Chemical Analysis Report); DEA Form 202 (Personal History Report); DEA Form 210 (Defendant Disposition Report); the indictment of Plaintiff with attachments; warrants issued related to Plaintiff; and photographs.

40.     DEA has asserted Exemption 7(E) to withhold information related to Plaintiff's investigations including Geo-Drug Enforcement Program (G-DEP) identifiers and other information. These investigative reporting procedures include the documentation of criminal activity by G-DEP identifiers and other information. G-DEP identifiers/information are part of the DEA's internal system of developing criminal activity information and intelligence. These identifiers/information relate solely to internal DEA investigative procedures. G-DEP

identifiers/information are assigned to all DEA cases at the time the case file is opened and indicate the classification of the violator(s), the types and amount of suspected drugs involved, the priority of the investigation, and the suspected location and scope of criminal activity. The release of the G-DEP identifiers/information would help identify priority given to narcotics investigations, types of criminal activities involved, and violator ratings. Suspects could decode this information and, as a result, change their patterns of drug trafficking in an effort to respond to what they determined the DEA knows about them, develop enforcement countermeasures, avoid detection and apprehension, create excuses for suspected activities, and/or create alibis for suspected activities. As such, disclosure of the G-DEP identifiers/information would enable circumvention of the DEA's law enforcement efforts.

41.     DEA also has asserted Exemption 7(E) to withhold information related to Plaintiff's investigations including DEA file numbers, specific information regarding meetings and debriefings with confidential and other sources, as well as related files, NADDIS numbers, acquisition of certain evidence, other identifying information, and material that would reveal sensitive, non-public references to the DEA's Agents' Manual, which is not available to the public and would reveal DEA information and law enforcement techniques. DEA has also protected undercover operations and the use of confidential informants under Exemption 7(E).

42.     If any of this information were to be released, criminals could restructure their activities to avoid or limit the capabilities of the techniques, thus circumventing the law. Further, release of the information protected here would also undermine the DEA's position in achieving its statutory mission and could put agents and sources at risk of harm. Additionally, DEA asserted 7(E) to protect sensitive case numbers because the release of case numbering convention identifies the investigative interest or priority given to such matters. Applying a mosaic analysis,

suspects could use these numbers (indicative of investigative priority), in conjunction with other information known about other individuals and techniques, to change their pattern of activity to avoid detection, apprehension, or create alibis for suspected activities, etc.

43.    Exemption 7(E) was applied to information in many of the records that were withheld in full pursuant to other exemptions.

*Exemption 7(F)*

44.    The FOIA, 5 U.S.C. § 552(b)(7)(F), sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to endanger the life or physical safety of an individual.

45.    Pursuant to Exemption 7(F) One Hundred and Sixty (160) pages of the responsive file were released with pieces of information redacted. These pages included the following examples of records: DEA Form 6 (Report of Investigation); DEA Form 7 (Report of Drug Property Collected, Purchased, or Seized); DEA Form 7a (Acquisition of Nondrug Property Seizures); DEA Form 12 (Declaration of Forfeiture); DEA Form 48 (Disposition of Non Drug Evidence); DEA Form 113 (Chemical Analysis Report); DEA Form 202 (Personal History Report); DEA Form 210 (Defendant Disposition Report); the indictment of Plaintiff with attachments; warrants issued related to Plaintiff; and photographs.

46.    The names of DEA Special Agents, other law enforcement personnel, and names of individuals involved in criminal investigations were withheld pursuant to Exemption 7(F), typically in conjunction with Exemptions 6 and 7(C).

47.    DEA Special Agents are frequently called upon to conduct a wide variety of investigations, including sensitive and dangerous undercover operations. Special Agents

routinely approach and associate with violators in a covert capacity. Many of those violators are armed, and many have known violent tendencies.

48.     It has been the experience of DEA that violence is inherent in the drug trade, and the release of the identities of law enforcement officers has resulted in several instances of physical attacks, threats, harassment, murder, and attempted murder. Therefore, Special Agents as well as other individuals involved in criminal investigations are withheld, since it is reasonable to conclude that identifying them could subject them to harassment, reprisal or physical retaliation for providing information and being connected with the investigation in any way.

49.     Further, Exemption 7(F) was applied to information in many of the records that were withheld in full pursuant to other exemptions.

## **Segregability and Basis for Withholdings**

50.     All responsive information was examined to determine whether any reasonably segregable information could be released. Pages were withheld in their entirety where, based upon the review, the release of any additional information would: (1) provide no useful information, or incomprehensible words or phrases that would not shed any light on how the Government conducts business; (2) result in compromising the identity of and information provided by sources of information who were granted express or implied confidentiality; (3) be an unwarranted invasion of personal privacy when balanced against the public interest in the release of information gathered during the course of a criminal investigation; (4) disclose techniques and procedures for law enforcement investigations or prosecutions; or (5) place in jeopardy the lives and safety of third-parties which includes sources of information, individuals associated with or mentioned in the investigative reports, and DEA agents.

51.     Each page was examined to determine whether there was any reasonably segregable information. As a result Eighty-Four (84) pages were released in full, and because of the application of overlapping exemptions, One Hundred and Ninety-Two (192) pages were released in part with redactions, and Fifty-Nine (59) pages and Six (6) audio/video files were withheld in full.

**Foreseeable Harm**

52.     As described in the previous paragraphs, DEA believes that release of any of the withheld information would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions. Specifically, release of the information could reasonably be expected to result in an unwarranted invasion of personal privacy; result in revealing a confidential source of information; reveal sensitive law enforcement techniques and procedures; and place in jeopardy the lives and safety of third parties.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on May 19, 2021, in Accokeek, Maryland

_____
ANGELA D. HERTEL
Unit Chief, Legal and External Affairs Unit
Freedom of Information and Privacy Act Section
Drug Enforcement Administration

# EXHIBIT A

EXHIBIT A

*Norris Williams v. Department of Justice*
Civil Action No. 19-cv-0104
United States District Court, District of Columbia
*Vaughn* Index

This index contains a description of the 251 pages of records withheld in full or released in part by DEA pursuant to Freedom of Information Act (FOIA) Exemptions 6, 7C, 7D, 7E, and 7F.  For clarity of presentation, the records in this *Vaughn* Index are keyed to document categories. The descriptions of each record within this index are meant to be read in tandem with the declaration, which provides a more fulsome explanation of the basis for withholding the information at issue.

| SUMMARY OF JUSTIFICATION CATEGORIES | | |
|---|---|---|
| **CODED CATEGORIES** | **CODE** | **CATEGORY OF INFORMATION WITHHELD** |
| (b)(6) & (b)(7)(C) | | **CLEARLY UNWARRANTED AND UNWARRANTED INVASION OF PERSONAL PRIVACY** |
| | 1 | Names, Addresses, Telephone Numbers, Contact Information, and/or Identifying Information of DEA Special Agents and Support Personnel |
| | 2 | Names, Addresses, Telephone Numbers, Contact Information, and/or Identifying Information of Third Parties |
| | 3 | Names, Addresses, Telephone Numbers, Contact Information, and/or Identifying Information Concerning Local Law Enforcement Personnel |
| (b)(7)(D) | | **CONFIDENTIAL SOURCE MATERIAL** |
| | 1 | Confidential Source Symbol Numbers (Express Confidentiality) |
| | 2 | Names, Addresses, Telephone Numbers, and/or Identifying Information of Third Parties who Provided Information to the DEA under an "Express" and/or "Implied" Assurance of Confidentiality, Confidential Source File Numbers, and Information Provided by and/or Identifying Data Concerning Source Symbol Numbered Informants under an Express Promise of Confidentiality |
| (b)(7)(E) | | **INVESTIGATIVE TECHNIQUE OR PROCEDURE** |
| | 1 | Identifying Information of Internal Indexing/Numbering Systems: Other Law Enforcement Codes |
| | 2 | Identifying Information of Internal Indexing/Numbering Systems: File Number |
| | 3 | Identifying Information of Internal Indexing/Numbering Systems: Case G-DEP Identifier/Identifying Information |
| | 4 | Identifying Information of Internal Indexing/Numbering Systems: NADDIS. |
| | 5 | Identifying Information of Internal Indexing/Numbering Systems: Arrest Office or Agent Identifier |

| | 6 | Identifying Information for Investigative Techniques that Are Not Known to the Public |
|---|---|---|
| | 7 | Identifying Information of Internal Indexing/Numbering Systems: National Crime Information Center (NCIC) |
| | 8 | Undercover Recordings |
| (b)(7)(F) | | **INFORMATION THAT COULD REASONABLY BE EXPECTED TO ENDAGER THE LIFE OR PHYSICAL SAFETY OF AN INDIVIDUAL** |
| | 1 | Names, Addresses, Telephone Numbers, Contact Information, and/or Identifying Information of DEA Special Agents and/or Local Law Enforcement Officers |
| | 2 | Identifying Information of Internal Indexing/Numbering Systems: Group No. |

**A.  February 6, 2020 Initial Response—Records Withheld in Full, Pursuant to Exemptions 6 & 7(C)-(F)**

| No. of Pages | Document | Applied Exemptions | Code | Description of Withheld Documents |
|---|---|---|---|---|
| 2 | DEA-202, Personal History Report | (b)(6);(b)(7)(C) | 1, 2 | DEA-202, Personal History Report, September 2014.  These pages are withheld in full pursuant Exemptions (b)(6) and (7)(C) because the subject of the form is not the Plaintiff.  Portions of the records are also covered by Exemptions (7)(D), (7)(E), and (7)(F). |
| | | (b)(7)(D) | 2 | |
| | | (b)(7)(E) | 1, 2, 3, 4 | |
| | | (b)(7)(F) | 1, 2 | |
| 6 | DEA-6, Report of Investigation | (b)(6);(b)(7)(C) | 1, 2, 3 | DEA-6, Report of Investigation, February 2015 and November 2014.  These pages are withheld in full pursuant Exemption (7)(D) because they discuss a confidential source(s).  Portions of the records are also covered by Exemptions (b)(6), (7)(C), (7)(E), and (7)(F). |
| | | (b)(7)(D) | 1, 2 | |
| | | (b)(7)(E) | 2, 3, 4 | |
| | | (b)(7)(F) | 1, 2 | |

**B.  February 6, 2020 Initial Response—Records Released in Part, Pursuant to Exemptions 6 & 7(C)-(F)**

| Page Nos. | No. of Pages | Document | Applied Exemptions | Code | Description of Documents |
|---|---|---|---|---|---|
| 1 | 1 | DEA-210, Defendant Disposition Report | (b)(6);(b)(7)(C) | 1 | DEA-210, Defendant Disposition Report, October 2016. |
| | | | (b)(7)(E) | 1, 2, 3, 4 | |
| | | | (b)(7)(F) | 1, 2 | |
| 2-4 | 3 | DEA-202, Personal History Report | (b)(6);(b)(7)(C) | 1, 2 | DEA-202, Personal History Report, October 2015. |
| | | | (b)(7)(E) | 1, 2, 3, 4, 5 | |

| No. of Pages | Document | Applied Exemptions | Code | Description of Withheld Documents |
|---|---|---|---|---|
| | | (b)(7)(F) | 1, 2 | |
| 7-13; 16-36; 41-45 | 33 | DEA-6, Report of Investigation | (b)(6);(b)(7)(C) | 1, 2, 3 | DEA-6, Report of Investigation, dated November 2014 through October 2016. |
| | | | (b)(7)(E) | 1, 2, 3, 4 | |
| | | | (b)(7)(F) | 1, 2 | |

**C.  June 30, 2020 Final Response— Records Withheld in Full, Pursuant to Exemptions 6 & 7(C)-(F)**

| No. of Pages | Document | Applied Exemptions | Code | Description of Withheld Documents |
|---|---|---|---|---|
| 1 | DEA-7, Report of Drug Property Collected, Purchased, or Seized | (b)(6);(b)(7)(C) | 1, 2 | DEA-7, Report of Drug Property Collected, Purchased, or Seized, October 2014.  This page is withheld in full pursuant Exemption (7)(D) because it concerns a confidential source(s).  Portions of the record is also covered by Exemptions (b)(6), (7)(C), (7)(E), and (7)(F). |
| | | (b)(7)(D) | 1, 2 | |
| | | (b)(7)(E) | 1, 2, 3 | |
| | | (b)(7)(F) | 1, 2 | |
| 1 | DEA-7, Report of Drug Property Collected, Purchased, or Seized | (b)(6);(b)(7)(C) | 1, 2, 3 | DEA-7, Report of Drug Property Collected, Purchased, or Seized, November 2014.  These pages are withheld in full pursuant Exemptions (b)(6) and (7)(C) because subject of the form is not the Plaintiff.  Portions of the records are also covered by Exemptions (7)(E), and (7)(F). |
| | | (b)(7)(E) | 1, 2, 3 | |
| | | (b)(7)(F) | 1, 2 | |
| 3 | DEA-6, Report of Investigation | (b)(6);(b)(7)(C) | 1, 2, 3 | DEA-6, Report of Investigation, May 2016 and March 2015.  These pages are withheld in full pursuant Exemptions (b)(6) and (7)(C) because subject of the form is not the Plaintiff.  Portions of the records are also covered by Exemptions (7)(E), and (7)(F). |
| | | (b)(7)(E) | 2, 3, 4 | |
| | | (b)(7)(F) | 1, 2 | |
| 30 | DEA-6, Report of Investigation | (b)(6);(b)(7)(C) | 1, 2, 3 | DEA-6, Report of Investigation, dated September 2014 through September 2016.  These pages are withheld in full pursuant Exemption (7)(D) because they concern a confidential source(s).  Portions of the records are also covered by Exemptions (b)(6), (7)(C), (7)(E), and (7)(F). |
| | | (b)(7)(D) | 1, 2 | |
| | | (b)(7)(E) | 2, 3, 4 | |
| | | (b)(7)(F) | 1, 2 | |
| 1 | DEA Memorandum | (b)(6);(b)(7)(C) | 1 | DEA Memorandum and DEA-12, Receipt for Cash or Other Items, July 2015.  These pages are withheld in full pursuant Exemption (7)(E) because the documents discuss a law enforcement technique that is not known to the public. Portions of the records are also covered by Exemptions (b)(6), (7)(C), and (7)(F). |
| | | (b)(7)(E) | 1, 2, 3, 6 | |
| | | (b)(7)(F) | 1 | |
| 12 | DEA-284, Authorization | (b)(6);(b)(7)(C) | 1, 3 | DEA-284, Authorization for Use and Report of Use of Consensual Eavesdropping and/or CC TV Equipment, dated September 2014 through October 2015.  These pages are withheld in full pursuant Exemption (7)(E) because the documents discuss a law enforcement technique that is not known |
| | | (b)(7)(D) | 1, 2 | |
| | | (b)(7)(E) | 1, 2, 3, 6 | |
| | | (b)(7)(F) | 1 | |

| | | | | | to the public. Portions of the records are also covered by Exemptions (b)(6), (7)(C), (7)(D), and (7)(F). |
| 2 | Photograph | (b)(6);(b)(7)(C) | 2 | | Surveillance Photographs.  These pages are withheld in full pursuant to Exemption (b)(6) and (7)(C) because they do not contain images of the Plaintiff or the Plaintiff's vehicle. |

**D.  June 30, 2020 Final Response—Records Released in Part, Pursuant to Exemptions 6 & 7(C)-(F)**

| Page Nos. | No. of Pages | Document | Applied Exemptions | Code | Description of Documents |
|---|---|---|---|---|---|
| 46 | 1 | DEA-48a, Disposition of Nondrug Evidence | (b)(6);(b)(7)(C) | 1 | DEA-48a, Disposition of Nondrug Evidence, October 2015. |
| | | | (b)(7)(E) | 2, 3 | |
| | | | (b)(7)(F) | 1 | |
| 48; 50 | 2 | DEA-7, Report of Drug Property Collected, Purchased, or Seized | (b)(6);(b)(7)(C) | 1, 3 | DEA-7, Report of Drug Property Collected, Purchased, or Seized, November 2014 and December 2014. |
| | | | (b)(7)(E) | 1, 2, 3 | |
| | | | (b)(7)(F) | 1, 2 | |
| 51 | 1 | Photograph | (b)(7)(E) | 2 | Photograph of Drug Exhibit. |
| 52-58 | 7 | DEA-7, Report of Drug Property Collected, Purchased, or Seized | (b)(6);(b)(7)(C) | 1, 3 | DEA-7, Report of Drug Property Collected, Purchases, or Seized, dated February 2015 through October 2015. |
| | | | (b)(7)(E) | 1, 2, 3 | |
| | | | (b)(7)(F) | 1, 2 | |
| 59-69 | 11 | DEA-7a, Acquisition of Nondrug Property Seizures | (b)(6);(b)(7)(C) | 1, 3 | DEA-7a, Acquisition of Nondrug Property Seizures, dated November 2014 through November 2015. |
| | | | (b)(7)(E) | 2, 3 | |
| | | | (b)(7)(F) | 1, 2 | |
| 70-83 | 13 | DEA-113, Laboratory Form | (b)(6);(b)(7)(C) | 1 | DEA-113, Chemical Analysis Report, dated December 2014 through May 2016. |
| | | | (b)(7)(E) | 2 | |
| | | | (b)(7)(F) | 1 | |
| 84-85 | 2 | DEA-202, Personal History Report | (b)(6);(b)(7)(C) | 1, 2 | DEA-202, Personal History Report, September 2014. |
| | | | (b)(7)(E) | 1, 2, 3, 4 | |
| | | | (b)(7)(F) | 1 | |
| 86-92; 95-96; 98-102; 108-111; 135-138 | 22 | DEA-6, Report of Investigation | (b)(6);(b)(7)(C) | 1, 3 | DEA-6, Report of Investigation, dated November 2014 through December 2017. |
| | | | (b)(7)(E) | 1, 2, 3, 4 | |
| | | | (b)(7)(F) | 1, 2 | |

| 143 | 1 | Deposit Slip | (b)(6);(b)(7)(C) | 1 | Deposit slip of seized currency for the purposes of the investigation, October 2015. |
| | | | (b)(7)(F) | 1 | |
| 144 | 1 | Itemized Sale Receipt | (b)(6);(b)(7)(C) | 1 | Bank teller receipt, October 2015. |
| | | | (b)(7)(F) | 1 | |
| 145 | 1 | DEA-12, High Value Item/Currency Seizure | (b)(6);(b)(7)(C) | 1 | High Value Item/Currency Seizure form, October 2015. |
| | | | (b)(7)(E) | 2 | |
| | | | (b)(7)(F) | 1 | |
| 148 | 1 | DEA-12, Receipt for Cash or Other Items | (b)(6);(b)(7)(C) | 1 | DEA-12, Receipt for Cash or Other Items, October 2015. |
| | | | (b)(7)(E) | 2 | |
| | | | (b)(7)(F) | 1 | |
| 149 | 1 | DEA-12, Receipt for Cash or Other Items | (b)(6);(b)(7)(C) | 1 | DEA-12, Receipt for Cash and Other Items. |
| | | | (b)(7)(E) | 2 | |
| | | | (b)(7)(F) | 1 | |
| 162; 165-166 | 3 | Indictment, Case No. 2:15-cr-149, Middle District of Florida | (b)(7)(E) | 2 | Indictment for Plaintiff, Case No. 2:15-cr-149, Middle District of Florida, October 2015. [The remaining two pages (163, 164) were released in full]. |
| | | | (b)(6);(b)(7)(C) | 2 | |
| 170-171 | 2 | Search and Seizure Warrant, Case No. 2:15-mj-1127, Middle District of Florida | (b)(6);(b)(7)(C) | 1 | Search and Seizure Warrant, Case No. 2:15-mj-1127, Middle District of Florida and Attachments A-B, October 2015. [The remaining three pages (167, 168, and 169) were released in full]. |
| | | | (b)(7)(F) | 1 | |
| 172 | 1 | Application for a Search Warrant, Case No. 2:15-mj-1127, Middle District of Florida | (b)(6);(b)(7)(C) | 1 | Application for a Search Warrant, Case No. 2:15-mj-1127, Middle District of Florida, October 2015. |
| | | | (b)(7)(F) | 1 | |
| 173-179 | 7 | Affidavit | (b)(6);(b)(7)(C) | 1, 3 | Affidavit describing nature of charges against Plaintiff, October 2015. |
| | | | (b)(7)(F) | 1 | |
| 180-193; 195-214; 216 | 35 | Transcript of Cell Call Recording | (b)(6);(b)(7)(C) | 1, 2, 3 | Transcript of Cell Call Recordings and Undercover Meetings, dated November 2014 through October 2015. |
| | | | (b)(7)(E) | 2 | |
| | | | (b)(7)(F) | 1 | |
| 217-233; 235-237 | 20 | Declaration of Forfeiture | (b)(6);(b)(7)(C) | 1, 3 | Declaration of Forfeiture and Related Forfeiture Records, including Equitable Sharing Documents and U.S. Marshals Service Seized Property Evidence Control Form, dated October 2015 through January 2016. [The remaining one page (234) was released in full]. |
| | | | (b)(7)(E) | 1, 2, 3, 5, 7 | |
| | | | (b)(7)(F) | 1, 2 | |

| 244; 247; 249-250; 254-261; 308-310; 313 | 16 | Photograph | (b)(6);(b)(7)(C) | 2 | Surveillance and Search Photographs. |
|---|---|---|---|---|---|
| 272-273; 285-286 | 4 | Photograph | (b)(6);(b)(7)(C) | 1, 2 | Surveillance and Search Photographs. |
|  |  |  | (b)(7)(F) | 1 |  |
| 334-335 | 2 | Photograph | (b)(7)(E) | 2 | Photographs of Drug Exhibits. |

**E.  June 30, 2020 Final Response—Records Withheld in Full, Pursuant to Exemptions 6 & 7(C)-(F)**

| Record | No. of Pages | Type | Applied Exemptions | Code | Description of Withheld Records |
|---|---|---|---|---|---|
| Audio/Visual | N/A | CD | (b)(6);(b)(7)(C) | 1 | These audio and video files document the surveillance of Plaintiff during the drug trafficking investigation that led to his arrest and conviction, including recordings of undercover operations and were withheld in full under Exemption (7)(E).  Portions of the recordings would also have been covered by Exemptions (b)(6), (7)(C), and (7)(F). |
|  |  |  | (b)(7)(E) | 8 |  |
|  |  |  | (b)(7)(F) | 1 |  |

# EXHIBIT B

FILED

2015 OCT 28 PM 2: 09

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO.   2:15-cr |
| | **2:15-Cr-149-FtM-38MRM** |
| | 21:841(a)(1) |
| v. | 21:841(b)(1)(C) |
| | 21:841(b)(1)(B)(i) |
| | 21:846 |
| NORRIS WILLIAMS | 21:853 (Forfeiture) |

## **INDICTMENT**

The Grand Jury charges:

## **COUNT ONE**

On or about November 18, 2014, in Lee County, in the Middle District of

Florida, the defendant herein,

### **NORRIS WILLIAMS,**

did knowingly possess with intent to distribute and distribute a quantity of a mixture

or substance containing a detectable amount of heroin, a Schedule I controlled

substance, in violation of Title 21, United States Code, Sections 841(a)(1) and

841(b)(1)(C).

## **COUNT TWO**

On or about December 17, 2014, in Lee County, in the Middle District of

Florida, the defendant herein,

### **NORRIS WILLIAMS,**

did knowingly possess with intent to distribute and distribute a quantity of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

### COUNT THREE

On or about February 11, 2015, in Lee County, in the Middle District of Florida, the defendant herein,

### NORRIS WILLIAMS,

did knowingly possess with intent to distribute and distribute a quantity of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

### COUNT FOUR

On or about October 20, 2015, in Lee County, in the Middle District of Florida, the defendant herein,

### NORRIS WILLIAMS,

did knowingly attempt to possess with intent to distribute a kilogram or more of a quantity of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(i) and 846.

2

## FORFEITURE

1.     The allegations contained in Counts One through Four of this Indictment are incorporated by reference for the purpose of alleging forfeiture pursuant to Title 21, United States Code, Section 853.

2.     Upon conviction of a violation of Title 21, United States Code, Section 841, the defendant shall forfeit to the United States of America, pursuant to Title 21, United States Code, Section 853, any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offense and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offense.

3.     The property to be forfeited includes, but is not limited to, the following:  **$50,000 in U.S. Currency.**

4.     If any of the property described above, as a result of any act or omission of the defendants:

　　　　a.     cannot be located upon the exercise of due diligence;

　　　　b.     has been transferred or sold to, or deposited with, a third party;

　　　　c.     has been placed beyond the jurisdiction of the court;

　　　　d.     has been substantially diminished in value; or

　　　　e.     has been commingled with other property which cannot be divided without difficulty,

3

the United States of America shall be entitled to forfeiture of substitute property

under Title 21, United States Code, Section 853(p).

A TRUE BILL,

Date: ___10/28/15___

_____
Foreperson

A. LEE BENTLEY, III
United States Attorney

By: _____
Robert P. Barcliff
Assistant United States Attorney
Trial Attorney

By: _____
Michael Baggé-Hernández
Assistant United States Attorney
Asset Forfeiture

By: _____
Jesus M. Casas
Assistant United States Attorney
Chief, Fort Myers Division

4

FORM OBD-34
APR 1991

No. 2:15-cr-

# UNITED STATES DISTRICT COURT
## Middle District of Florida
### Fort Myers Division

THE UNITED STATES OF AMERICA

vs.

NORRIS WILLIAMS

## INDICTMENT

Violations:
21 U.S.C. § 841(a)(1)
21 U.S.C. § 841(b)(1)(C)
21 U.S.C. § 841(b)(1)(B)(i)
21 U.S.C. § 846
21 U.S.C. § 853 (Forfeiture)

A true bill,

_____
Foreperson

Filed in open court this 28th day
of October, 2015.

_____
Clerk

Bail $ _____

GPO 863 525