UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NORRIS WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 19-0104 (RBW) |
| ) | |
| DEPARTMENT OF JUSTICE, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552. This matter is before the Court on the Defendant's Motion for Summary Judgment (ECF No. 33) and the plaintiff's Motion to Strike Defendant's Request for Summary Judgment (ECF No. 35), construed by the Court as the plaintiff's opposition to the defendant's motion for summary judgment. For the reasons discussed below, the Court grants the defendant's motion in part and denies the motion in part without prejudice.

**I. BACKGROUND**

The plaintiff submitted a FOIA request to the Drug Enforcement Administration ("DEA"), a component of the United States Department of Justice ("DOJ"), on January 15, 2018, seeking "'a full copy' of DEA's file related to [the plaintiff] and/or Criminal Case 2:15-cr-00149-SPC-MRM-1." Defendant's Statement of Undisputed Material Facts (ECF No. 33, "SMF") ¶ 1. The DEA's first search yielded 45 pages of responsive records, all of which were withheld in full under Exemption 7(A). *Id.* ¶ 3.

1

The DEA filed its first summary judgment motion (ECF No. 12) on May 17, 2019, asserting that all of the responsive records properly were withheld in full under Exemption 7(A) because an appeal of the plaintiff's criminal case was then pending in the United States Court of Appeals for the Eleventh Circuit. Alternatively, the DEA argued that Exemptions 7(C), 7(D), 7(E) and 7(F) also justified withholding these records in full. On January 8, 2020, the Court issued a Memorandum Opinion and Order (ECF No. 20) denying the motion in part without prejudice. The Court issued that ruling because it was not clear that Exemption 7(A) still applied, and if the Court were to consider the DEA's alternative bases for withholding information, the DEA had not justified its decisions to withhold the records in full under Exemptions 7(D), 7(E) and 7(F).

DEA staff subsequently reprocessed the 45 pages of responsive records. SMF ¶ 5; Declaration of Angela D. Hertel (ECF No. 33-1, "Hertel Decl.") ¶ 10. It was also discovered that additional responsive records existed but had not been retrieved and processed. SMF ¶ 5. Thereafter, the DEA released to the plaintiff 84 pages in full, released 192 pages in part, withheld 59 pages in full, and withheld 6 audio/video files in full, relying on Exemptions 6, 7(C), 7(D), 7(E), and 7(F). *Id.*

## II. DISCUSSION

### A. Legal Standard

"FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions." *Students Against Genocide v. U.S. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001). In a FOIA action, the defendant agency has "[the] burden of demonstrating that the withheld documents are exempt from disclosure." *Boyd v. U.S. Dep't of Justice*, 475 F.3d 381, 385 (D.C. Cir. 2007) (citation omitted).

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Representative*, 641 F. 3d 521, 527 (D.C. Cir. 2011). Courts will grant summary judgment to an agency only if the agency can prove "that it has fully discharged its obligations under [ ] FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Friends of Blackwater v. U.S. Dep't of Interior*, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (citation omitted). Thus, in a lawsuit brought to compel the production of documents under the FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced ... or is wholly[, or partially,] exempt [from disclosure].'" *Students Against Genocide*, 257 F.3d at 833 (omission in original) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)). "In ruling on summary judgment, courts may rely on non-conclusory agency affidavits demonstrating the basis for withholding if they are not contradicted by contrary evidence in the record or by evidence of the agency's bad faith." *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021) (citing *Shapiro v. Dep't of Justice*, 893 F.3d 796, 799 (D.C. Cir. 2018)).

**B. The DEA's Searches for Responsive Records**

An agency "fulfills its obligations under [the] FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citation and internal quotation marks omitted). The agency may submit affidavits or declarations to explain the method and scope of its search, *see Perry v. Block*, 684 F.2d 124, 127 (D.C. Cir. 1982), and such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents," *SafeCard*

*Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation and internal quotation marks omitted).

In its Investigative Reporting and Filing System ("IRFS"), the DEA maintains "criminal law enforcement investigative records," including "[r]ecords from other DEA record systems that are related to an individual's involvement in, or association with, a DEA intelligence operation or civil, criminal, or regulatory investigation[.]" Declaration of Kelleigh A. Miller (ECF No. 33-1, "Miller Decl.") ¶ 6. Information is retrieved from IRFS using the Narcotics and Dangerous Drugs Information System ("NADDIS"), "an electronic data index system and the practical means by which DEA identifies records in IRFS across all of [the] DEA's offices worldwide." *Id.* ¶ 7. Using search terms such as an individual's name, Social Security number or date of birth, a NADDIS query yields "an abstract of information, such as an investigative file number, investigative report number, or other record identifier by which to locate any existing IRFS records . . . linked to the individual." *Id.*; *see id.* ¶¶ 8-9. The DEA's declarants state that IRFS is the only system of records reasonably likely to contain records responsive to the plaintiff's FOIA request. *See id.* ¶ 18; Hertel Decl. ¶ 18.

A NADDIS search using the plaintiff's name as a search term identified two files maintained at the DEA's Miami Division. *See* Miller Decl. ¶¶ 15-16. One file, related to the plaintiff's arrest in 2000, "had been destroyed in accordance with the Preservation of Records authority, 28 C.F.R. § 16.48." *Id.* ¶ 17. The second file, which pertained to the criminal case the plaintiff identified in his FOIA request, was retrieved from the Miami Division. *Id.*

That second file contained 45 pages of responsive records. *See* Hertel Decl. ¶¶ 9, 11. The DEA released to the plaintiff 37 of these pages in part and withheld 8 pages in full. *Id.* ¶ 11. On further review of these 45 pages, DEA staff "discovered . . . several reports indicat[ing there

4

were] additional records that . . . had not [been retrieved] from the Miami Division." *Id.* ¶ 12. The complete file was retrieved from the Miami Division in February 2020, and associated photographs and video recordings were retrieved in March 2020. *See id.* ¶¶ 13-14. DEA staff then processed six audio/visual files and 290 pages of records in addition to the 45 pages that had been initially located. *Id.* ¶ 15. In June 2020, the DEA released to the plaintiff 84 pages in full, released 155 pages in part, withheld 51 pages in full, and withheld the six audio/visual files in full. *Id.* ¶ 16. In total, the DEA released to the plaintiff 84 pages in full,  192 pages in part, withheld 59 pages in full, and withheld the six audio/video files in full. *Id.* ¶ 17.

One of the DEA's declarants acknowledges the agency's failure to retrieve the entire file from the Miami Division during the first the first search. *See* Hertel Decl. ¶ 19. However, the error has been remedied, and the Court accepts the DEA's representation that all the responsive records have now been retrieved and processed. *See id.*

The plaintiff is under the impression that the Court's January 8, 2020, Memorandum Opinion and Order directed the DEA "to turn over all/ documents that were in [its] possession." Pl.'s Opp'n at 1 (page numbers designated by CM/ECF).[1] He is mistaken. The Court's conclusion that the DEA initially failed to meet its burden on summary judgment does not require the release in full of responsive records. Rather, the DEA was afforded a second opportunity to describe its search for responsive records and to justify its decisions to withhold information under the claimed exemptions.

The adequacy of the DEA's search depends on its scope and methods, not its results. *See Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). Here, the DEA has

---

[1] As stated above, the Court construes the plaintiff's "Motion to Strike Defendants [sic] Request for Summary Judgment" as his opposition ("Pl.'s Opp'n") to the DEA's motion for summary judgment.

demonstrated that its searches were adequate, and the plaintiff's challenge to the DEA's refusal to release all of the responsive records in full is rejected.

### C. Exemption 7

#### 1. Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. 5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982). "To show that . . . documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

Here, one of the declarants explains that the DEA derives its investigative jurisdiction from the Controlled Substances Act, *see* 21 U.S.C. § 801 *et seq.*, which authorizes "the investigation of incidences involving the trafficking in controlled substances, dangerous drugs, and precursor chemicals." Hertel Decl. ¶ 23. And, the declarant represents that the DEA's "mission involves conducting criminal investigations to assist prosecutions of organizations and principal members of organizations involved in the growing, manufacture, or distribution of controlled substances appearing in or destined for illicit traffic in the United States." *Id.* ¶ 4.

The "[p]laintiff [currently] is serving a sentence of 360 months imprisonment for his conviction for distributing heroin and possessing heroin with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and for attempting to possess a kilogram or more of heroin with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(i), and 21 U.S.C. §

846." Defendant's Statement of Material Facts Not In Genuine Dispute (ECF No. 12-2) ¶ 2. The same declarant states that the responsive records pertain to the DEA's investigation of the plaintiff for violation of the Controlled Substances Act, Hertel Decl. ¶ 23, thus demonstrating that the records fall within the scope of Exemption 7.

### 2. Exemption 7(C)

The DEA applies Exemption 6 in conjunction with Exception 7(C) as to "a number of records," Hertel Decl. ¶ 26, to protect the names of and personal identifying information about third parties involved or associated with the plaintiff and the law enforcement investigation into the plaintiff's activities, *see id.* ¶ 25. These third parties include "law enforcement personnel, witnesses, suspects, co-defendants, and confidential sources of information." *Id.* "When information is claimed to be exempt from disclosure under both provisions, courts 'focus . . . on Exemption 7(C) because it provides broader privacy protection than Exemption 6 and thus establishes a lower bar for withholding material.'" *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 854 F.3d 675, 681 (D.C. Cir. 2017) (quoting *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1091 n.2 (D.C. Cir. 2014)); *Archibald v. U.S. Dep't of Justice*, 950 F. Supp. 2d 80, 86 (D.D.C. 2013) ("[I]t is sufficient to consider only Exemption 7(C), because if the defendants are not excused from disclosure under the heightened privacy protection of Exemption 7(C), then neither will they be excused under Exemption 6."), *aff'd*, No. 13-5190, 2014 WL 590894 (D.C. Cir. Jan. 28, 2014).

Exemption 7(C) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). "In order to trigger the balancing of public interests against private

interests, a FOIA requester must (1) show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and (2) show the information is likely to advance that interest." *Boyd*, 475 F.3d at 387 (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)) (internal quotation marks omitted).

The Court previously observed that, on review of the DEA's first supporting declaration, *see* Miller Decl. ¶¶ 29-31, the DEA properly withheld the names of and other identifying information about law enforcement personnel, witnesses, suspects, co-defendants and confidential sources appearing in the investigative records deemed responsive to the plaintiff's FOIA request. *See* Mem. Op. and Order, *Williams v. Dep't of Justice*, No. 1:19-CV-0104 (D.D.C. Jan. 8, 2020) at 8. Similarly, on review of the DEA's second declaration, *see* Hertel Decl. ¶¶ 25-31, the Court now concludes that the DEA properly withheld information about third parties, among whom are "law enforcement personnel, witnesses, suspects, co-defendants, and confidential sources of information," *id.* ¶ 25, from the responsive records. The DEA having identified the third parties' privacy interests, *see id.* ¶ 26, they prevail in light of the plaintiff's failure to show a public interest that outweighs the privacy interests of those individuals.

The District of Columbia Circuit has held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs.*, 926 F.2d at 1206. The DEA has met its burden, and the Court concludes that the names of and identifying information about third parties mentioned in the responsive records properly are withheld under Exemption 7(C).

### 3. Exemption 7(D)

Exemption 7(D) protects from disclosure those records or information compiled for law enforcement purposes that

> could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . . , information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). "A source is confidential within the meaning of exemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (per curiam) (citing *DOJ v. Landano*, 508 U.S. 165, 170-74 (1993)) (internal quotation marks omitted). There is no general "presumption that a source is confidential within the meaning of [FOIA] Exemption 7(D) whenever [a] source provides information [to a law enforcement agency] in the course of a criminal investigation." *Landano*, 508 U.S. at 181. Where an agency does not grant an express assurance of confidentiality to its sources, "courts consider a number of factors to determine whether the source nonetheless spoke with an understanding that the communication would remain confidential," *Roth v. DOJ*, 642 F.3d 1161, 1184 (D.C. Cir. 2011) (internal quotation marks and citation omitted), including "[t]he nature of the crime . . . investigated and the source's relation to it," *Landano*, 508 U.S. at 180.

The DEA relies on Exemption 7(D) in conjunction with Exemptions 6, 7(C), 7(E), and 7(F) to withhold information about sources to whom the DEA conferred an express or implied assurance of confidentiality. *See* Hertel Decl. ¶¶ 32-35. One of its declarants explains that

certain of these sources were "registered, or 'coded,' confidential sources" to whom the DEA "assigned an identity code" and offered "express assurances . . . that their identit[ies] and the information they provide[d] is confidential." *Id.* ¶ 32. With regard to the other sources, the declarant asserts that the "facts and circumstances" of this case show that confidentiality can be implied. *See id.* ¶ 33. She explains that the sources were "involved, and maintained a close relationship with, several individuals who trafficked in illegal drugs and engaged in other drug-dealing and illegal activities." *Id.* Further, she states that information provided by these sources pertained to the plaintiff's and other individuals' drug trafficking activities, such that it is reasonable to "presume[] that [they] would not have provided . . . information unless they believed that the information and their identit[ies] would be held in confidence and not released to Plaintiff or the public[.]" *Id.* Lastly, the declarant explains that disclosure of confidential sources "could jeopardize DEA operations" because the agency relies on "continued cooperation of confidential sources [in] investigations and . . . development of criminal intelligence." *Id.* ¶ 35. Given "the nature of DEA's criminal investigations," the declarant states, "any information that could identify an informant could subject [him or her and] [his or her] family members and associates, to serious harm, substantial repercussions, and possibly even death." *Id.*

  Although the DEA declaration is short on details, the Court is nonetheless persuaded that both the "coded" confidential sources and the other sources are entitled to Exemption 7(D)'s protection. Courts in this Circuit recognize that trafficking illegal drugs carries with it violence and risk of retaliation if sources are known to have cooperated with law enforcement. *See Mays v. DEA*, 234 F.3d 1324, 1329 (D.C. Cir. 2000) (finding that "violence and risk of retaliation" attendant to distribution of crack and powder cocaine "warrant an implied grant of confidentiality" to "the cooperating individual [who] supplied information about a conspiracy to

distribute" these drugs).  In compliance with that precedent, the Court concludes that the DEA properly withholds the identities of its sources and the information they provided in the course of the investigation of the plaintiff and his drug trafficking activities.  *See, e.g.*, *Kowal v. U.S. Dep't of Justice*, No. 18-CV-938, 2021 WL 3363445, at *5 (D.D.C. Aug. 3, 2021) (inferring assurance of confidentiality where sources "were involved, and maintained a close relationship with, several individuals who trafficked in and engaged in other drug-dealing and illegal activity and that the information they provided related to the trafficking"); *Garza v. U.S. Marshals Serv.*, No. 16-CV-0976, 2018 WL 4680205, at *15 (D.D.C. Sept. 28, 2018) (recognizing the courts' extension of Exemption 7(D) protection to sources "involved, and maintained a close relationship with, several individuals who trafficked in cocaine and engaged in other violent and illegal activities," and who provided information "related to the illicit trafficking in drugs by the [p]laintiff and others"), *aff'd sub nom. Garza v. United States Marshals Serv.*, No. 18-5311, 2020 WL 768221 (D.C. Cir. Jan. 22, 2020); *Cooper v. U.S. Dep't of Justice*, 169 F. Supp. 3d 20, 40 (D.D.C. 2016) (concluding "that the source of the redacted information is protected by Exemption 7(D), as it is reasonable to infer that the information provided was in connection with the DEA's drug importation and distribution investigation of the plaintiff").

### 4. Exemption 7(E)

Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such . . . information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

Under Exemption 7(E), the DEA withheld in full 57 pages of records which "discussed and outlined techniques and procedures used to investigate [the plaintiff]," Hertel Decl. ¶ 37, and withheld in full six audio/visual files "document[ing] the surveillance of [the plaintiff] during the drug trafficking investigation," as well as "recordings of undercover operations," *id.* ¶ 38.  From various forms, *see id.* ¶ 39, the DEA redacted Geo-Drug Enforcement Program ("G-DEP") identifiers from which an individual could learn the "priority given to narcotics investigations, types of criminal activities involved, and violator ratings," *id.* ¶ 40, and other investigation information, including "DEA file numbers, specific information regarding meetings and debriefings with confidential and other sources, as well as related files, NADDIS numbers, acquisition of certain evidence, other identifying information, and material that would reveal sensitive, non-public references to the DEA's Agents' Manual," *id.* ¶ 41.

Once again, the supporting declaration is lacking in detail.  While certain information, such as NADDIS numbers and G-DEP identifiers, ordinarily is protected under Exemption 7(E), *see, e.g., Chavis v. U.S. Dep't of Justice*, No. 20-CV-0638, 2021 WL 1668069, at *8 (D.D.C. Apr. 28, 2021) (concluding that G-DEP and NADDIS codes are "routinely and appropriately withheld" under Exemption 7(E)), *appeal docketed*, No. 21-5150 (D.C. Cir. June 30, 2021), the DEA fails to demonstrate that the remaining information properly has been withheld.  The DEA asserts in vague terms that "information regarding and debriefings with . . . sources, as well as related files . . . , acquisition of certain evidence, other identifying information, and material that would reveal sensitive, non-public references to the DEA's Agent's Manual . . . would reveal . . . law enforcement techniques."  Hertel Decl. ¶ 41.  While DEA's position may have merit, it has not demonstrated that it is entitled to summary judgment, as an agency must "at least provide *some* explanation of what procedures are involved and how they would be disclosed[,]" if the

12

withheld documents were released to the plaintiff.  *Citizens for Responsibility & Ethics in Washington*, 746 F.3d at 1102.  From what has been provided, the Court can neither determine whether Exemption 7(E) applies with respect to the information withheld, nor whether any reasonably segregable information can be disclosed.  *See, e.g., Kowal*, 2021 WL 3363445, at *6 (finding that, due to "brevity and vagueness" of declaration, the Court could not determine "what law enforcement procedures are at stake and how references to the DEA Agents' Manual might disclose those procedures").

### 5. Exemption 7(F)

Exemption 7(F) protects from disclosure information contained in law enforcement records that "could reasonably be expected to endanger the life or physical safety of any individual."  5 U.S.C. § 552(b)(7)(F).  This Circuit has observed that the exemption's "language is very broad," and that it "does not require that a particular kind of individual be at risk of harm; 'any individual' will do."  *Public Employees for Environmental Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 205 (D.C. Cir. 2014); *see Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 525 (D.C. Cir. 2015) (noting that "the phrase 'any individual'" makes clear that Exemption 7(F) now shields the life or physical safety of *any* person, not only the law enforcement personnel protected under the pre–1986 version of the statute").  "In reviewing claims under Exemption 7(F), courts have inquired whether or not there is a nexus between disclosure and possible harm and whether the deletions were narrowly made to avert the possibility of such harm."  *Berard v. Fed. Bureau of Prisons*, 209 F. Supp. 3d 167, 174 (D.D.C. 2016) (citing *Albuquerque Pub. Co. v. U.S. Dep't. of Justice*, 726 F. Supp. 851, 858 (D.D.C. 1989)).

The DEA relies on Exemption 7(F) to withhold "[t]he names of DEA Special Agents,

13

other law enforcement personnel, and names of individuals involved in criminal investigations[.]" Hertel Decl. ¶ 46.  The declarant explains that "DEA Special Agents are frequently called upon to conduct a wide variety of investigations, including sensitive and dangerous undercover operations," and "routinely approach and associate with violators in a covert capacity." *Id.* ¶ 47.  Violators are often armed and "have known violent tendencies." *Id.* Further, she explains, in the DEA's experience, "violence is inherent in the drug trade, and the release of the identities of law enforcement officers has resulted in several instances of physical attacks, threats, harassment, murder, and attempted murder." *Id.* ¶ 48.  For these reasons, the DEA asserts Exemption 7(F) to protect its Special Agents and the "other individuals involved in criminal investigations," so that they are not "subject[ed] to harassment, reprisal or physical retaliation" for having been involved in the investigation.  *Id.*

The DEA applies Exemption 7(F) "to information in many of the records that were withheld in full pursuant to other exemptions." *Id.* ¶ 49.  For example, it applies Exemption 7(F) "typically in conjunction with Exemptions 6 and 7(C)." *Id.* ¶ 46.  Insofar as the DEA relies on Exemptions 7(C) and 7(F) to withhold the names of and identifying information about DEA Special Agents and other law enforcement officers, *see generally id.*, Ex. A (Vaughn Index), the withholdings are proper.  Less clear, however, is the DEA's reliance on Exemption 7(F) to withhold a category of information designated "Identifying Information of Internal Indexing/Numbering Systems: Group No." *See id.*, Ex. A at 2 (ECF No. 33-1 at 31).  It appears that this category of information may be withheld in conjunction with Exemption 7(E), but further explanation is needed before the Court can reach that conclusion.

## III. CONCLUSION

The DEA has demonstrated that its searches for responsive records were adequate and that its decision to withhold information under Exemptions 7(C) and 7(D) is appropriate. However, the DEA's explanations regarding its withholdings under Exemptions 7(E) and 7(F) are inadequate.

Accordingly, it is hereby

ORDERED that the plaintiff's Motion to Strike Defendant's Request for Summary Judgment [35] is construed as the plaintiff's opposition to the defendant's motion for summary judgment and is DENIED.  It is

FURTHER ORDERED that the Defendant's Motion for Summary Judgment [33] is GRANTED IN PART and DENIED IN PART WITHOUT PREJUDICE.  It is

FURTHER ORDERED that the defendant shall file a renewed motion for summary judgment by January 31, 2022.

SO ORDERED this 6th day of December, 2021.

/s/
REGGIE B. WALTON
United States District Judge