UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NORRIS WILLIAMS,      ) | |
| ) | |
| Plaintiff,     ) | |
| ) | |
| v.     ) | Civ. A. No. 19-104 (RBW) |
| ) | |
| U.S. DEPARTMENT OF JUSTICE,     ) | |
| ) | |
| Defendant.     ) | |
| ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant United States Department of Justice, by and through undersigned counsel, respectfully moves for summary judgment on Plaintiff's cause of action brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, because there is no genuine issue of material fact, and Defendant is entitled to a judgment as a matter of law.  In support of this motion, Defendant submits the accompanying Statement of Material Facts as to Which There is No Genuine Dispute, Memorandum of Points and Authorities, Declaration of Angela D. Hertel, and *Vaughn* index.

Plaintiff, who is proceeding *pro se*, should take notice that any factual assertions contained in the documents in support of this motion will be accepted by the Court as true unless Plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in the documents.  *See Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992); Fed. R. Civ. P. 56(e); LCvR 7.1.

Dated: May 24, 2021

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. BAR # 415793
Acting United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

By: */s/ John Moustakas*
John Moustakas, D.C. Bar #442076
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2518
john.moustakas@usdoj.gov

*Counsel for Defendant*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NORRIS WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-0104 (RBW) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant United States Department of Justice, by and through undersigned counsel, hereby submits the following statement of material facts as to which there is no genuine dispute in support of Defendant's motion for summary judgment in this action brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

1.     On January 15, 2018, Plaintiff, Norris Williams, submitted a request letter to the Drug Enforcement Administration ("DEA").  Plaintiff sought "a full copy" of DEA's file related to Plaintiff and/or the "Criminal Case 2:15-cr-00149-SPC-MRM-1."  *See* the Declaration of Kelleigh A. Miller ("Miller Decl.")(ECF No. 12-3).

2.     The DEA acknowledged receipt of the request on February 15, 2018 and assigned it case number 18-00176-P.  *Id*.

3.     The original search for records resulted in identifying and processing 45 pages. On May 4, 2018, the 45 pages were withheld in full pursuant to Exemption 7(A) because Plaintiff's appeal of his criminal conviction was open.  *Id*.

4.      On January 8, 2020, the Court issued an Opinion and Order that held that it appeared Exemption 7(A) no longer applied because Plaintiff's appeal of his criminal conviction had been denied. The Court ordered DEA to re-process the 45 pages.

5.      Upon reprocessing the pages, DEA's FOIA Unit discovered that additional records had not been sent to DEA's FOIA Unit from the Division that held the responsive case file.  A copy of the entire file was then retrieved and processed.  In total, DEA released 84 pages in full, partially released 192 pages, withheld 59 pages in full, and withheld 6 audio/video files pursuant to Exemptions 6, 7(C), 7(D), 7(E), and 7(F).  *See* the Declaration of Angela D. Hertel ("Hertel Decl.") (attached hereto as Exhibit 1).

6.      In responding to Plaintiff's FOIA request DEA searched the DEA Investigative Reporting and Filing System ("Investigative System"), a comprehensive DEA Privacy Act System of Records database containing "all administrative, general, and criminal investigative files compiled by DEA for law enforcement purposes."  Hertel Decl. ¶ 6.

7.      The information sought in Plaintiff's FOIA request was reasonably likely to be found in the Investigative System given the type of information stored inside the database.  *Id.*

8.      Further, it was also reasonably unlikely a DEA records system other than the Investigative System would contain records related to Plaintiff's FOIA request.  *See id.*

9.      The Investigative System is the only records system maintained by DEA that is likely to contain records responsive to Plaintiff's request.  *See id.* ¶ 9.

10.     DEA withheld under Exemptions 6 and 7(C) names, phone numbers, and addresses, among other sensitive and personal information.  *See id.* ¶¶ 28-30.

11.     DEA determined that some of the information requested by Plaintiff fell into Exemption 7(D) because confidential sources were involved in the investigation and provided information related to Plaintiff's illegal activities.  *See* Hertel Decl. ¶ 32.

12.     DEA withheld under Exemption 7(E) some information requested by Plaintiff because the information contained Geo-Drug Enforcement Program identifiers and other information related to internal DEA procedures such as "DEA file numbers, specific information regarding meetings and debriefings with confidential and other sources, Narcotics System numbers, acquisition of certain evidence, other identifying information, and material that would reveal sensitive, non-public references to the DEA's Agents' Manual."  *See* Hertel Decl. ¶¶ 39-40.

13.     DEA withheld information contained in various DEA Forms and other law enforcement pursuant to exemption 7(F).  *See* Hertel Decl. ¶ 44.  The requested information included "names of DEA Special Agents, other law enforcement personnel, and names of individuals involved in criminal investigations[.]"  *Id*. ¶ 45.

14.     DEA has exempted records within the Investigative System from disclosure under the Privacy Act.  *See* Hertel Decl. ¶¶ 20-22; Investigative System, System of Records Notice, 77 Fed. Reg. 21,808, 21,811 (Apr. 11, 2012).

15.     In this case, each page processed was examined to determine whether there was any reasonably segregable information that could be released, and the agency acted on the conclusion of that assessment.  *See* Hertel Decl. ¶51.

Dated: May 24, 2021

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. BAR # 415793
Acting United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

By: */s/ John Moustakas*
John Moustakas, D.C. Bar #442076
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2518
john.moustakas@usdoj.gov

*Counsel for Defendant*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NORRIS WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-0104 (RBW) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant United States Department of Justice, and specifically its component the Drug Enforcement Administration ("DEA"), by and through undersigned counsel, respectfully submits this Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment. As required, Defendant conducted a search reasonably calculated to produce responsive records to Plaintiff's subject Freedom of Information Act ("FOIA") and the Privacy Act, 5 U.S.C. § 552a requests. Because no material facts are in dispute and Defendant has properly fulfilled its obligations under FOIA and the Privacy Act by conducting a reasonable search and determining that no segregable material may be released, Defendant is entitled to judgment as a matter of law and respectfully requests that the Court enter summary judgment in its favor.

## STANDARD OF REVIEW

**A.    Rule 56 Motion for Summary Judgment**

When no genuine dispute exists as to any material fact, summary judgment is required. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. *Id.* at 247. "The burden on the moving party

may be discharged by 'showing'—that is, pointing out to the [Court]—that there is an absence of evidence to support the non-moving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987).  Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Thus, to avoid summary judgment here, the Plaintiff (as the non-moving party) must present some objective evidence that would enable the Court to find he is entitled to relief.

In *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute..  In *Anderson* the Supreme Court further explained that "the mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff." *Anderson*, 477 U.S. at 252; *see also Laningham v. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor). In *Celotex*, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## B.  <u>Summary Judgment in FOIA Cases</u>

"FOIA cases are typically and appropriately decided on motions for summary judgment." *DeSilva v. Dep't of Housing & Urban Dev.*, 36 F. Supp. 3d 65, 69 (D.D.C. 2014);  *see also* 5 U.S.C. § 552(a)(4)(B).  For purposes of summary judgment in a FOIA matter, an agency's

decision to withhold information from a FOIA requester is subject to *de novo* review by the courts. *Steinberg v. Dep't of Just.*, 23 F.3d 548, 551 (D.C.Cir.1994); *Hayden v. Nat'l Sec. Agency Cent. Sec. Serv.*, 608 F.2d 1381, 1384 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980). In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and, if applicable, that each document that falls within the class requested either has been produced, is unidentifiable, or is exempt from disclosure. *Students Against Genocide v. Dept. of State*, 257 F.3d 828, 833 (D.C. Cir. 2001); *Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980).

An agency satisfies the summary judgment requirements in a FOIA case by providing affidavits or declarations and other evidence which show that the documents in question were produced or are exempt from disclosure. *Hayden v. NSA*, 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979); *Church of Scientology v. Dep't of Army*, 611 F.2d 738, 742 (9th Cir. 1980); *Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (summary judgment in FOIA cases may be awarded solely on the basis of agency affidavits "when the affidavits describe the documents and the justifications for non- disclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.") (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)); *see also Pub. Citizen Inc. v. Dep't of State*, 100 F. Supp. 2d 10, 16 (D.D.C. 2000), *aff'd in part, rev'd in part*, 276 F.3d 634 (D.C. Cir. 2002).

## **ARGUMENT**

Plaintiff requests that Defendant be compelled to provide requested records in this action. *See generally* Plaintiff's Complaint ("Pl.'s Compl.") These claims fail as a matter of law.

Defendant conducted an adequate search for responsive records, produced all releasable records, and reviewed the records for segregability.    Accordingly, Defendant is entitled to summary judgment.

## A.    The DEA Conducted an Adequate Search

The search conducted by the DEA was an adequate search because it amounted to a good faith effort and is supported by a detailed declaration from an experienced DEA employee. When determining whether an agency's search was adequate, the inquiry is "guided by principles of reasonableness." *Dugan v. Dep't of Just.*, 82 F. Supp. 3d 485, 494 (D.D.C. 2015) (holding ATF conducted an adequate search because affidavits provided a detailed description of filing systems and search methods).  A search is adequate when it is shown "beyond material doubt" that an agency conducted a search "reasonably calculated to uncover all relevant documents." *See Weisberg*, 705 F.2d at 1351 (holding search adequate even though no records revealed because agent consulted with colleagues about potential locations of records).

Declarations or affidavits may be used to satisfy the beyond material doubt requirement so long as the declaration is "sufficiently detailed" in the information it provides.  *See Schotz v. Samuels*, 72 F. Supp. 3d. 81, 87 (D.D.C. 2014) (citing *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 838 (D.C. Cir. 2001)) (finding search adequate because the declaration explained the search of a person's central file was likely to provide relevant documents).  A declaration may be deemed sufficiently detailed when it provides items such as search terms used, type of search performed, and when it states all likely locations were searched.  *See Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (quoting *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)) (finding the search adequate because agency affidavits provided detailed information about record-keeping systems).

Here, DEA performed an adequate search for two reasons, 1) DEA searched all areas reasonably likely to contain the requested information and 2) the search conducted is supported by a valid declaration. In responding to Plaintiff's FOIA request DEA searched the DEA Investigative Reporting and Filing System ("Investigative System"), a comprehensive DEA Privacy Act System of Records database containing "all administrative, general, and criminal investigative files compiled by DEA for law enforcement purposes." Declaration of Angela Hertel ("Hertel Decl.") ¶ 6. Like in *Schotz*, where the court found the search adequate because the Bureau of Prisons affidavit explained the record-keeping system in detail and stated the central file was reasonably likely to reveal all the requested information, here DEA's Declaration describes the system DEA searched in detail and how said system was reasonably likely to reveal Plaintiff's requested information. *See id.* ¶ 9. The information sought in Plaintiff's FOIA request was reasonably likely to be found in the Investigative System given the type of information stored inside the database. *See id.* Further, it was also reasonably unlikely a DEA records system other than the Investigative System would contain records related to Plaintiff's FOIA request. *See id.*

The Hertel Declaration adequately describes the search. Ms. Hertel, the Unit Chief of the Freedom of Information/Privacy Act Legal and External Affairs Unit, oversees the processing of requests to DEA under the FOIA, 5 U.S.C. § 552. *Id*. ¶¶ 1-2. She is well qualified to provide information regarding the policies and practices of DEA related to search, process, and disclosure of DEA information under the FOIA and the Privacy Act. *Id*. The Declaration describes in detail what the Investigative System is and how the DEA searches the Investigative System using the DEA Narcotics and Dangerous Drugs Information System ("Narcotics

System"). *See id.* ¶¶ 6-9. The Investigative System is the only records system maintained by DEA that is likely to contain records responsive to Plaintiff's request. *See id.* ¶ 9.

Unlike in *Oglesby*, where the court reversed a summary judgment because the government affidavits did not include details such as search terms used or search methods used, here the Declaration includes the search terms used within the Narcotics System to obtain results such as name, Social Security number, and date of birth. Furthermore, DEA's records associated with Plaintiff's criminal prosecution were located and processed after the successful search. *Id.* While the DEA Division that maintained the file originally failed to send the entire file, the mistake was uncovered by the FOIA Unit and the entire file was eventually processed. *See id.* ¶¶ 12-15. By stating where and how DEA retrieved the information provided, the Declaration has provided sufficient details to show DEA satisfied its obligations to conduct an adequate search responsive to Plaintiff's FOIA request.

Therefore, the search conducted by DEA was adequate as it amounts to a good faith effort to search a system reasonably likely to reveal the documents requested by Plaintiff and the Declaration is sufficiently detailed.

**B.  The Court Should Grant Summary Judgment in Favor of Defendant Because the DEA Properly Applied the Statutory Exemptions Listed.**

DEA has applied FOIA Exemption 6, 7(C), 7(D), 7(E), and 7(F). The Court should grant summary judgment in Defendant's favor because DEA properly applied those statutory exemptions as demonstrated below and in the accompanying declaration and *Vaughn* index.

**1.  Exemption 6:  Privacy Interests in Non-Law Enforcement Records**

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "To invoke Exemption 6, an agency's explanation 'must show that the

documents come from the type of files that are statutorily protected, and must also show that, on balance, the public interest in disclosure does not outweigh the personal privacy interest of the individual who is the subject of the file.'"  *Burnett v. DEA*, Civ. A. No. 19-0870 (CJN), 2021 WL 1209142, at *4 (D.D.C. Mar. 31, 2021) (quoting *Allen v. Dep't of Def.*, 658 F. Supp. 15, 21 (D.D.C. 1986) (citing *Dep't of Air Force v. Rose*, 425 U.S. 352, 372, (1976))).

Here, DEA conducted the proper balancing for all the information resulting from the search.  When the agency reviewed the files, "[t]he individuals' privacy interests were balanced against any discernible public interest."  Hertel Decl. ¶ 26.  In the Complaint "Plaintiff provided no facts to establish any public interest that would outweigh the privacy interests of the [third party] individuals" whose information is found in the records.  *Id*.  When evaluating the public interest, DEA looked at "whether the information in question would inform the Plaintiff or the general public about DEA's performance of its mission to enforce Federal criminal statutes and the Act."  *Id.* ¶ 27.  After review, the agency determined no legitimate public interest existed and therefore the information should be withheld because it risked an unwarranted invasion of privacy by disclosing names, phone numbers, addresses, and numerous other pieces of sensitive and personal information.  *Id.* ¶¶ 28-30.[1]

## 2.    <u>Exemption 7</u>

DEA's application of FOIA Exemptions 7(C) to (F) each share the threshold requirement that the "records or information [have been] compiled for law enforcement purposes."  5 U.S.C.

---

[1]    In connection with the final review of Defendant's moving papers, undersigned counsel discovered that a page of Plaintiff's indictment was produced subject to redaction of the Grand Jury foreperson's signature pursuant to Exemptions 6, 7(C).  *See* Exhibit A (*Vaughn* index)*,* Pages 162; 165-66.  Because the indictment that appears on the docket in *United States of America v. Williams*, Civ. A. No. 15-0149 (M.D. Fla. 2015) includes the foreperson's signature, Defendant hereby releases a copy of the entire publicly-filed indictment from which a single page was redacted.  *See* Exhibit B.  All other redactions described in the page-rage in the *Vaughn* index remain intact.

§ 552(b)(7). DEA is a quintessential law enforcement agency. *See* Hertel Decl. ¶ 4. All of the records generated by Plaintiff's requested search are criminal law enforcement records maintained in the DEA Investigative System, which is the repository of :all DEA law enforcement intelligence and investigative information that is maintained on any individual, whether in paper or electronic format." *Id.* ¶ 5. When "the agency's principal function is law enforcement, we are 'more deferential' to the agency's claimed purpose for the particular records." *Pub. Emps. For Env't Responsibility ("PEER") v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.*, 740 F.3d 195, 203 (D.C. Cir. 2014). The records in this case meet the Exemption 7 threshold.

      a.     <u>Exemption 7(C): Privacy Interests in Law Enforcement Records</u>

Exemption 7(C) covers law enforcement records (as opposed to personnel, medical and similar files) that "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C), as distinct from the higher standard applicable to non-law enforcement records under Exemption 6 ("clearly unwarranted"). When evaluating an agency's invocation of Exemption 7(C), the Court generally defers to the agency's claim that the information is compiled for law enforcement purposes, *PEER*, 740 F.3d at 203, and examines whether the agency has sufficiently demonstrated that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C).

As with the analysis Exemption 6, DEA determined that the public interest did not outweigh the privacy interests because the information contained information such as names, phone numbers, and addresses, among other sensitive and personal information. *See id.* ¶¶ 28-30. DEA weighed the public interest against the private interest in determining whether disclosure was subject to an exemption. *See* Hertel Decl. ¶ 25. Because the privacy interests

there trumped any public ones under the Exemption 6's higher "clearly unwarranted invasion of privacy" standard, they necessarily meet the lower standard under Exemption 7(C).

        b.    <u>Exemption 7(D): Confidential Sources</u>

Exemption 7(D) prevents the release of information that "could reasonably be expected to disclose the identity of a confidential source." 5 U.S.C. § 552(b)(7)(D). Here, DEA determined that some of the information requested by Plaintiff fell into that category because confidential sources were involved in the investigation and provided information related to Plaintiff's illegal activities. *See* Hertel Decl. ¶ 32. Information provided during a criminal investigation is inherently sensitive and must be afforded protection to ensure that cooperating private citizens will not be subjected to harassment and will continue to cooperate. *See, e.g.*, *Gula v. Meese*, 699 F. Supp. 956, 960 (D.D.C. 1988). "The nature of the crime investigated and informant's relation to it are the most important factors in determining whether implied confidentiality exists." *Amuso v. Dep't of Just.*, 600 F. Supp. 2d 78, 100 (D.D.C. 2009). Plaintiff was convicted of drug trafficking (heroin). Hertel Decl. ¶ 9.[2] The "violence and risk of retaliation attendant to drug trafficking warrant an implied grant of confidentiality to a source who provides information to investigators." *Lasko v. Dep't of Just.*, 684 F. Supp. 2d 120, 134 (D.D.C. 2010).

DEA determined that "confidentiality was either express or implied for the sources of information" and acted under the presumption that those individuals would not have provided helpful information unless they believed their information would be kept confidential. *See* Hertel Decl. ¶ 32. Release of this information could jeopardize DEA operations and could subject confidential sources, or their family members, to serious harm, reprisal, and even death.

---

[2]    Specifically, Plaintiff arrested for and convicted of multiple drug offenses involving heroin, including possession with intent to distribute one kilogram or more of heroin under 21 U.S.C. §§ 841(a0(1), (b)(1)(A)(i). As to that charge alone, Plaintiff was sentenced to 360 months' imprisonment. *See United States of America v. Williams*, Crim. No. 15-0149 (M.D. Fla. Filed Oct. 30, 2020), Opinion & Order (ECF No. 146),

*See id.* ¶ 34.  Exemption 7(D) is designed to prevent sources from "drying up" because of a fear of disclosure.  *See, e.g., Shaw v. FBI*, 749 F.2d 58, 61 (D.C. Cir. 1984); *Lesar v. Dep't of Just.*, 636 F.2d 472, 492 (D.C. Cir. 1980).

c.       Exemption 7(E):  Law Enforcement Procedures and Techniques

Exemption 7(E) prevents the release of information that "would disclose techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).   DEA withheld some information requested by Plaintiff because the information contained Geo-Drug Enforcement Program identifiers and other information related to internal DEA procedures such as "DEA file numbers, specific information regarding meetings and debriefings with confidential and other sources, Narcotics System numbers, acquisition of certain evidence, other identifying information, and material that would reveal sensitive, non-public references to the DEA's Agents' Manual."  *See* Hertel Decl. ¶¶ 39-40.  DEA was concerned that criminals would be able to use this information to "restructure their activities to avoid or limit the capabilities of the techniques" and "change their pattern of activity to avoid detection, apprehension, or create alibis for suspected activities, etc."  *See id.* ¶ 41.  The Declaration makes clear that DEA reviewed the requested information, concluded that the information discovered during the search amounted to items that disclosed internal agency processes, and accordingly withheld them in compliance with the exemption.  *See id.*  Those actions were eminently justified.

d.       Exemption 7(F):  Endangerment

Exemption 7(F) prevents the release of information that "could reasonably be expected to endanger the life or physical safety of an individual." 5 U.S.C. § 552(b)(7)(F).  DEA withheld information contained in various DEA Forms and other law enforcement pursuant to exemption

7(F).  *See* Hertel Decl. ¶ 44.  The requested information included "names of DEA Special Agents, other law enforcement personnel, and names of individuals involved in criminal investigations[.]"  *Id*. ¶ 45.  DEA determined that it would be reasonable to conclude that releasing this information would subject the persons identified to harassment, reprisal or physical retaliation.  *See id.* ¶ 47.  It is well-established that law enforcement officials investigating drug activity may be subject to physical harm, the danger of which can only be heightened when their identities are revealed.  *See Albuquerque Pub. Co. v. Dep't of Just.*, 726 F. Supp. 851, 858 (D.D.C. 1989); *Rodrequez v. U.S. Postal Serv.*, Civ. A. No. 90-1886, 1991 WL 212202, at \*7 (D.D.C. Oct. 2, 1991); *Housley v. FBI*, Civ. A. No. 87-2579, 1988 WL 30751, at \*3 (D.D.C. 1988).

**C.**  **Privacy Act Exemption (j)(2).**

Title 5 U.S.C. § 552a lists numerous exemptions allowing information to be withheld with exemption (j)(2) allowing the agency to withhold "material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals."  5 U.S.C. § 552a(j)(2).  Courts have found withholding information under this exemption valid "so long as the document in question was located in a system of records that has been properly exempted from the disclosure provisions of the Privacy Act."  *Mobley v. CIA*, 924 F. Supp. 2d 24, 67 (D.C. Cir. 2013) (finding FBI withholding of information valid because FBI promulgated regulation exempting records in Central Records System from disclosure under Privacy Act).

As was dispositive in *Mobley*, an agency regulation—here, 28 C.F.R. § 16.98—exempts DEA records within the Investigative System from disclosure under the Privacy Act.  *See* Hertel Decl. ¶¶ 20-22; Investigative System, System of Records Notice, 77 Fed. Reg. 21,808, 21,811

(Apr. 11, 2012).  The information sought by Plaintiff was contained in the Investigative System. *Id.*  Consequently, it is subject to withholding.  *See id.*

**D.      Segregability and Foreseeable Harm**

FOIA requires that "any reasonably segregable portion of a record" be released "after deletion of the portions which are exempt" under the Act's exemptions.  Moreover, the FOIA Improvement Act of 2016 addressed segregability requirements, directing that agencies shall "consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible."  *See* 5 U.S.C. § 552(a)(8)(A)(ii).

In this case, each page processed was examined to determine whether there was any reasonably segregable information that could be released, and the agency acted on the conclusion of that assessment.  *See* Hertel Decl. ¶ 51.  As a result of that assessment, certain records were withheld in full and others were released subject to redactions.  *Id.*  Entitled to a presumption that it complied with the obligation to disclose reasonably segregable material—a fact corroborated by the nature of its releases—the agency has met its burden.  *See Sussman* v. *U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

DEA also considered whether any records or portions thereof determined to be exempt should, nonetheless, be released because harm from their publication is not reasonably foreseeable.  Because of the stakes at issue, it properly determined that it could not.  *See* Hertel Decl. ¶ 52.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant this

motion for summary judgment.

Date: May 24, 2021                          Respectfully submitted,

                                            CHANNING D. PHILLIPS, D.C. Bar #415793
                                            Acting United States Attorney

                                            BRIAN P. HUDAK
                                            Acting Chief, Civil Division

                                            By: */s/ John Moustakas*
                                            John Moustakas, D.C. Bar #442076
                                            Assistant United States Attorney
                                            555 Fourth Street, N.W.
                                            Washington, D.C. 20530
                                            (202) 252-2518
                                            john.moustakas@usdoj.gov

                                            *Counsel for Defendant*

### CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that service of the foregoing Motion has been made by first-class

mail on May 24, 2021, to:

NORRIS WILLIAMS
R33221-018
FCI COLEMAN MEDIUM
P.O. Box 1032
Coleman, FL 33521-1032

*Pro se* Plaintiff                          /s/   *John Moustakas*
                                            John Moustakas
                                            Assistant United States Attorney

13

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|                          |     |                              |
|--------------------------|-----|------------------------------|
| NORRIS WILLIAMS,         | )   |                              |
|                          | )   |                              |
| Plaintiff,               | )   |                              |
|                          | )   |                              |
| v.                       | )   | Civil Action No. 19-0104 (RBW) |
|                          | )   |                              |
| U.S. DEPARTMENT OF JUSTICE, | ) |                            |
|                          | )   |                              |
| Defendant.               | )   |                              |
|                          | )   |                              |

_____

## DECLARATION OF KELLEIGH A. MILLER

I, Kelleigh A. Miller, hereby make the following Declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.

1.      I am currently the Section Chief of the Freedom of Information and Records Management Section ("SAR") of the United States Department of Justice ("DOJ"), Drug Enforcement Administration ("DEA"), located at DEA's Headquarters in Arlington, Virginia. I have served in this capacity since February 2017.  I have been a DEA employee for over 19 years.  Prior to becoming a Section Chief, I was a Supervisory Program Analyst in the DEA Office of Inspections for 8 years.

2.      As the Section Chief, I oversee the processing of requests to DEA under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act ("PA"), 5 U.S.C. § 552a (cited together as FOIA/PA).  I am familiar with the policies and practices of the DEA related to search, process, disclosure, and amendment of DEA information under the FOIA and PA because of my experience in this position and because of the nature of my official duties, which

includes supervision of 80 employees who staff three units: Freedom of Information and Privacy

Act ("SARF"), Records Management ("SARR"), and Investigative Records ("SARI"). SARF is

the DEA office responsible for the receipt, process, and disclosure of DEA information requested

pursuant to the FOIA/PA.

3.      In preparing this declaration, I have read and am familiar with the complaint in the above

titled action.

4.      The statements I make in this declaration are true and correct to the best of my belief and

are based on my personal knowledge as well as information acquired by me in the course of

performing my official duties.

### DEA's LAW ENFORCEMENT MISSION and INVESTIGATIVE RECORDS

5.      DEA's mission includes enforcing the controlled substances laws and regulations of the

United States.  DEA's investigative jurisdiction derives from the Controlled Substances Act, 21

U.S.C. § 801, *et seq.* ("the CSA" or "the Act").  The CSA authorizes DEA to enforce the Act

through the investigation of trafficking in controlled substances and the violators who operate at

interstate and international levels.  This mission involves conducting criminal investigations to

assist prosecutions of organizations and principal members of organizations involved in the

growing, manufacture, or distribution of controlled substances appearing in or destined for illicit

traffic in the United States.

6.      Pursuant to its mission, all DEA criminal law enforcement investigative records are

maintained in the DEA Investigative Reporting and Filing System ("IRFS").  Records from other

DEA record systems that are related to an individual's involvement in, or association with, a

DEA intelligence operation or civil, criminal, or regulatory investigation are retained in IRFS

because IRFS includes all DEA law enforcement intelligence and investigative information that

is maintained on an individual, whether in paper or electronic format.  IRFS is a DEA Privacy

Act System of Records (Justice/DEA-008) that contains all administrative, general, and criminal

investigative files compiled by DEA for law enforcement purposes.

7.      DEA locates information from IRFS using the DEA Narcotics and Dangerous Drugs

Information System ("NADDIS").  NADDIS is an electronic data index system and the practical

means by which DEA identifies and locates records in IRFS across all of DEA's offices

worldwide.  Based on the input of search terms (such as name, Social Security Number, or date

of birth), NADDIS provides an abstract of information, such as an investigative file number,

investigative report number, or other record identifier by which to locate any existing IRFS

records that are linked to the individual.  A query of NADDIS does not result in any actual IRFS

records or documents, nor does it link to any electronic IRFS records.  Unlike IRFS, NADDIS is

not a record keeping system so it does not contain complete information from an investigative

file, but only discrete pieces of information from the Report of Investigation (DEA Form 6),

which is an investigative record that is maintained as part of IRFS.

8.      A search of IRFS using NADDIS is a worldwide search for DEA records, including

records maintained at field offices, because intelligence and investigative records generated

across all DEA offices are indexed into NADDIS.

9.      An individual is indexed and identified in NADDIS by name, Social Security Number, or

date of birth.

### DEA's RECEIPT of PLAINTIFF's REQUEST FOR RECORDS and SUBSEQUENT CORRESPONDENCE

10.     By correspondence dated January 15, 2018, Plaintiff, Norris Williams, submitted a

request letter to DEA.  Plaintiff sought "a full copy" of DEA's file related to Plaintiff and/or the

"Criminal Case 2:15-cr-00149-SPC-MRM-1."  *See* Exhibit A.

11.     By correspondence dated February 15, 2018, DEA acknowledged receipt of Plaintiff's

request and assigned it case number 18-00176-P.  DEA further explained that the records sought

would require searches in another office or offices and that the request fell within "unusual

circumstances" that would require extending the time limit to respond.  The letter also stated that

Plaintiff was determined to be a non-media, non-commercial requester, entitling him to two free

hours of search time and up to 100 pages of duplication without charge.  *See* Exhibit B.

12.     By correspondence dated May 4, 2018, DEA informed Plaintiff that the material

responsive to his request is exempt from disclosure pursuant to FOIA and the Privacy Act.  *See*

Exhibit C.

13.     By correspondence dated June 5, 2018, the Department of Justice, Office of Information

Policy ("OIP"), acknowledged the receipt of an appeal from Plaintiff on May 25, 2018, and

noted that the appeal was assigned DOJ-AP-2018-005907.

14.     By correspondence dated August 20, 2018, OIP informed Plaintiff that his appeal was

denied.

### DEA's SEARCH for RESPONSIVE RECORDS

15.     DEA searched IRFS by querying NADDIS using the Plaintiff's name.  As a result of the

query, DEA identified two files responsive to Plaintiff's request.

16.     By memorandum dated February 15, 2018, the FOIA Unit tasked DEA's Miami

Division, the office that was identified as having the two case files, with retrieving them and then

sending a copy of each file to the FOIA Unit.

17.     DEA's Miami Division notified the FOIA Unit that one of the files, related to the arrest

of Plaintiff in 2000, had been destroyed in accordance with the Preservation of Records

authority, 28 C.F.R. § 16.48.  The second file, related to the criminal case cited in Plaintiff's

January 15, 2018 request, was located and a copy of the file was sent to the FOIA Unit where it

was processed.

## ADEQUACY of SEARCH

18.    Plaintiff's request, seeking records related to Plaintiff and/or the criminal case "2:15-cr-

00149-SPC-MRM-1" are reasonably likely to be found in the DEA's IRFS, a Privacy Act

System of Records that contains all administrative, general, and investigative files compiled by

the DEA for law enforcement purposes.  No other records system maintained by the DEA other

than IRFS is reasonably likely to contain the records responsive to Plaintiff's request.  Moreover,

the records that Plaintiff sought were located based on a search of this record system.

## DEA's DISCLOSURE DETERMINATION

### Justification for Non-Disclosure of Records About Plaintiff Under the Privacy Act Exemption (j)(2)

19.    The investigative records that are responsive to Plaintiff's requests are maintained in the

DEA Investigative Reporting and Filing System (IRFS), JUSTICE/DEA-008.  These records are

criminal investigatory data compiled for law enforcement purposes.  The information is gathered

pursuant to DEA's law enforcement responsibility.

20.    IRFS is a Privacy Act (PA) system of records for which access is denied pursuant to PA

Exemption (j)(2) published at 28 C.F.R. § 16.98.  Consistent with PA Exemption (j)(2), the

records maintained in IRFS consist of (a) information compiled for the purpose of identifying

individual criminal offenders and alleged offenders; identifying data and notations of arrests; and

the nature and disposition of criminal charges, sentencing, confinement, release, parole and

probation status; (b) information compiled for the purpose of a criminal investigation, including

reports of informants and investigators associated with an identifiable individual; or (c)

investigatory material compiled for law enforcement purposes.  DEA processes all requests by

individuals for records pertaining to themselves under both the FOIA and PA in order to provide the requester with the maximum disclosure authorized by law.

21.    DEA has promulgated regulations at 28 C.F.R. § 16.98 which exempt IRFS records from the PA's access provisions, as authorized by 5 U.S.C. § 552a(j)(2).  Subsection (j)(2) exempts from mandatory disclosure all records maintained by an agency or component performing as its principal function any activity pertaining to the enforcement of criminal laws.  DEA is such an agency.  Because Plaintiff's request pertained to his criminal investigation, the materials were necessarily compiled for law enforcement purposes.  Therefore, DEA determined that the responsive records were exempt under the Privacy Act.  Accordingly, DEA next reviewed the records responsive to his request under the provisions of the FOIA.

### Justification for Non-Disclosure of Records About Plaintiff Under the FOIA

### FOIA Exemption (b)(7) Threshold

22.    DEA's investigative jurisdiction derives from the Controlled Substances Act ("The Act"), which authorizes DEA to enforce 21 U.S.C. § 801 *et seq.* through the investigation of incidences involving the trafficking in controlled substances, dangerous drugs, and precursor chemicals. The records responsive to Plaintiff's request pertain to DEA's investigation of him for violation of the Act.  Therefore, the information readily meets  the threshold requirement of Exemption (b)(7).

### Withholding Pursuant to FOIA Exemption (b)(7)(A)

23.    The FOIA, 5 U.S.C. § 552 (b)(7)(A), sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to interfere with enforcement proceedings.

24.     Application of this exemption requires the existence of law enforcement records; a pending or prospective law enforcement proceeding; and a reasonable expectation that the release of information would interfere with the enforcement proceeding.

25.     Exemption 7A was applied to withhold the Plaintiff's criminal file in its entirety, which consisted of 46 pages.

26.     Plaintiff's criminal case is currently on appeal to the United States Court of Appeals for the Eleventh Circuit.  Therefore, FOIA Exemption 7(A) is fully applicable to the information contained in the investigatory file.

27.     Release of the information concerning this investigation would be premature in light of the fact that the appeal stage for the criminal case referenced above has not been completed, the Court could still reject the sentencing of the criminal defendant, and a trial could resume.  The prosecution would likely use the witness information, leads, and evidence collected and maintained within the DEA investigatory file.  Releasing this information would compromise the government's investigation by revealing its scope, pace, and direction.  In addition, release would trigger a multitude of harms as described in the subparagraphs below:

        (a)     Suspects and persons of interest would receive investigative details that would either alert them to efforts directed towards them and/or would allow them to analyze pertinent information about the investigation.  As a result, these individuals would acquire the unique advantage of knowing certain details about or related to them which could be used to their advantage to escape prosecution and thwart current investigative efforts by altering or counteracting evidence, changing behavior, intimidating or physically harming witnesses or law enforcement officials, and/or flight.

(b)      Once information is released into the public domain, its use and dissemination by

third parties is unrestricted.  As such, release of these investigative details would allow third

parties who are not directly related to this matter to interfere with investigative efforts, appeals

and/or potential retrials through harassment, intimidation, and creation of false evidence by

dispensing extraneous facts discussed in the investigation.  Given the Plaintiff's associates, the

threat posed by such harassment and intimidation is very real.

(c)      The release of the withheld investigative details could lead to the identification of

sources of information, witnesses, potential witnesses, law enforcement personnel, and

individuals otherwise associated with the investigation who could then be targeted for

intimidation and/or physical harm.  The release of this information would enable individuals and

other third parties to uncover the Government's legal strategy in the case.

28.      DEA withheld all 46 pages pursuant to FOIA Exemption 7(A); however, in the event that

application of Exemption 7(A), which is temporal in nature, expires, DEA also determined that

the material is protected from disclosure by FOIA Exemptions 7(C), 7(D), 7(E), and 7(F).  A

brief discussion of how each of these exemptions apply to this information is contained below.

**Withholding Pursuant to FOIA Exemption (b)(7)(C)**

29.      The FOIA, 5 U.S.C. § 552 (b)(7)(C), sets forth an exemption for records or information

compiled for law enforcement purposes the disclosure of which could reasonably be expected to

constitute an unwarranted invasion of personal privacy.  The investigative records processed in

response to Plaintiff's FOIA request contain names and other identifying information that would

reveal the identity of, and disclose personal information about, individuals who were involved or

associated with the Plaintiff, or with a law enforcement investigation, and could subject them to

possible harassment, or focus derogatory inferences and suspicion upon them.  The individuals

are protected from the disclosure of their identities and information about them.  These

individuals include third-parties, such as law enforcement personnel, witnesses, suspects, co-

defendants and confidential sources of information.

30.     The individuals' privacy interests were balanced against any discernible public interest in

disclosure of the individuals' identities.  The Plaintiff provided no facts to establish any public

interest that would outweigh the privacy interests of the individuals.  Thus, disclosure of the

identities would be an unwarranted invasion of their personal privacy.

31.     The public interest in disclosure of the information was determined by whether the

information in question would inform the Plaintiff or the general public about DEA's

performance of its mission to enforce Federal criminal statutes and the Act, or how DEA

conducts its internal operations and investigations.  In this case, it was determined that there was

no legitimate public interest in the information withheld under Exemption (7)(C), and release of

any information about a third-party would constitute an unwarranted invasion of that third-

party's personal privacy.

**Withholding Pursuant to FOIA Exemption (b)(7)(D)**

32.     The FOIA, 5 U.S.C. § 552 (b)(7)(D), sets forth an exemption for records or information

compiled for law enforcement purposes the disclosure of which could reasonably be expected to

reveal the identity of a confidential source or information furnished by a confidential source.

Exemption (7)(D) was employed to withhold portions of the report that contained information

that would disclose the identity of and the information provided by the confidential source.

33.     Because of the nature of DEA's criminal investigations, any information that could

identify an informant could subject them, their family members and associates, to serious harm,

substantial repercussions, and possibly even death.

**Withholding Pursuant to FOIA Exemption (b)(7)(E)**

34.     The FOIA, 5 U.S.C. § 552(b)(7)(E), sets forth an exemption for records or information

compiled for law enforcement purposes if its release would disclose techniques and procedures

for law enforcement investigations or prosecutions, or would disclose guidelines for law

enforcement investigations or prosecutions if such disclosure could reasonably be expected to

risk circumvention of the law.

35.     DEA has asserted Exemption 7(E) to withhold information related to Plaintiff's

investigation including Geo-Drug Enforcement Program (G-DEP) identifiers and other

information.  G-DEP identifiers/information are part of the DEA's internal system of developing

criminal activity information and intelligence.  The release of the G-DEP identifiers/information

would help identify priority given to narcotics investigations, types of criminal activities

involved, and violator ratings.  Suspects could decode this information and, as a result, change

their patterns of drug trafficking in an effort to respond to what they determined the DEA knows

about them, develop enforcement countermeasures, avoid detection and apprehension, create

excuses for suspected activities, and/or create alibis for suspected activities.  As such, disclosure

of the G-DEP identifiers/information would enable circumvention of the DEA's law enforcement

efforts.

36.     DEA also has asserted Exemption 7(E) to withhold information related to Plaintiff's

investigations including DEA file numbers, specific information regarding meetings and

debriefings with confidential and other sources, as well as related files, NADDIS numbers,

acquisition of certain evidence, other identifying information, and material that would reveal

sensitive, non-public references to the DEA's Agents Manual, which is not available to the

public and would reveal DEA information and law enforcement techniques.

37.     If any of this information were to be released, criminals could restructure their activities to avoid or limit the capabilities of the techniques, thus circumventing the law.  Further, release of the information protected here would also undermine the DEA's position in achieving its statutory mission and could put agents and sources at risk of harm.

**Withholding Pursuant to FOIA Exemption (b)(7)(F)**

38.     The FOIA, 5 U.S.C. § 552(b)(7)(F), sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to endanger the life or physical safety of an individual.

39.     DEA Special Agents are frequently called upon to conduct a wide variety of investigations, including sensitive and dangerous undercover operations.  Special Agents routinely approach and associate with violators in a covert capacity.  Many of those violators are armed, and many have known violent tendencies.

## FORESEEABLE HARM

40.     As described in the previous paragraphs, DEA believes that release of any of the withheld information would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions.  Specifically, release of the information could reasonably be expected to interfere with law enforcement proceedings; result in an unwarranted invasion of personal privacy; result in revealing a confidential source of information; reveal sensitive law enforcement techniques and procedures; and place in jeopardy the lives and safety of third parties.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on May 9, 2019, in Arlington, Virginia

KELLEIGH A. MILLER
Section Chief
Freedom of Information & Records Management Section
Drug Enforcement Administration

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ )<br>NORRIS WILLIAMS,                            )<br>                                                   )<br>              Plaintiff,                        )<br>                                                   )<br>       v.                                          )<br>                                                   )<br>U.S. DEPARTMENT OF JUSTICE,       )<br>                                                   )<br>              Defendant.                      )<br>_____ ) | Civil Action No. 19-0104 (RBW) |

**DECLARATION OF ANGELA D. HERTEL**

I, Angela D. Hertel, hereby make the following Declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.

1.        I am currently the Unit Chief of the Freedom of Information/Privacy Act Legal and External Affairs Unit ("FSRL"), part of the Freedom of Information/Privacy Act Section ("FSR"), of the United States Department of Justice ("DOJ"), Drug Enforcement Administration ("DEA"), located at DEA's Headquarters in Arlington, Virginia. I have served in this capacity since October 1, 2020. Before then I served as Acting Unit Chief of the Freedom of Information/Privacy Act Unit ("FSRF") from May 2019 until FSRF was reorganized as FSR in October 2020. I have been a DEA employee since October 2018. Prior to becoming a DEA employee, I was a supervisory contract paralegal supporting FSRF since September 2009.

2.        As the Unit Chief, I, in part, oversee the processing of certain requests to DEA under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act ("PA"), 5 U.S.C. § 552a (cited together as "FOIA/PA"). Due to my experience in responding to requests for DEA

records since 2009 and the nature of my official duties, I am familiar with the policies and

practices of the DEA related to search, process, and disclosure of DEA information under the

FOIA and PA.  FSR is (and FSRF was before its reorganization into FSR) the DEA office

responsible for the receipt, process, and disclosure of DEA information requested pursuant to the

FOIA/PA.

3.      The statements I make in this declaration are true and correct to the best of my belief and

are based on my personal knowledge as well as information acquired by me in the course of

performing my official duties.

**DEA's Law Enforcement Mission and Investigative Records**

4.      DEA's mission includes enforcing the controlled substances laws and regulations of the

United States. DEA's investigative jurisdiction derives from the Controlled Substances Act, 21

U.S.C. § 801, *et seq.* ("the CSA" or "the Act"). The CSA authorizes DEA to enforce the Act

through the investigation of trafficking in controlled substances and the violators who operate at

interstate and international levels. This mission involves conducting criminal investigations to

assist prosecutions of organizations and principal members of organizations involved in the

growing, manufacture, or distribution of controlled substances appearing in or destined for illicit

traffic in the United States.

5.      Pursuant to its mission, all DEA criminal law enforcement investigative records are

maintained in the DEA Investigative Reporting and Filing System ("IRFS"). Records from other

DEA record systems that are related to an individual's involvement in, or association with, a

DEA intelligence operation or civil, criminal, or regulatory investigation are retained in IRFS

because IRFS includes all DEA law enforcement intelligence and investigative information that

is maintained on an individual, whether in paper or electronic format. IRFS is a DEA Privacy

Act System of Records (Justice/DEA-008) that contains all administrative, general, and criminal

investigative files compiled by DEA for law enforcement purposes.

6.      DEA locates information from IRFS using the DEA Narcotics and Dangerous Drugs

Information System ("NADDIS"). NADDIS is an electronic data index system and the practical

means by which DEA identifies and locates records in IRFS across all of DEA's offices

worldwide. Based on the input of search terms (such as name, Social Security Number, or date of

birth), NADDIS provides an abstract of information, such as an investigative file number,

investigative report number, or other record identifier by which to locate any existing IRFS

records that are linked to the individual. A query of NADDIS does not result in any actual IRFS

records or documents, nor does it link to any electronic IRFS records. Unlike IRFS, NADDIS is

not a record keeping system so it does not contain complete information from an investigative

file, but only discrete pieces of information from the Report of Investigation (DEA Form 6),

which is an investigative record that is maintained as part of IRFS.

7.      A search of IRFS using NADDIS is a worldwide search for DEA records, including

records maintained at field offices, because intelligence and investigative records generated

across all DEA offices are indexed into NADDIS.

8.      An individual is indexed and identified in NADDIS by name, Social Security Number, or

date of birth.

### DEA's Search for Responsive Records

9.      As noted in DEA's declaration filed May 17, 2019, DEA searched IRFS by querying

NADDIS using the Plaintiff's name. As a result of the query, DEA identified the file responsive

to Plaintiff's request. *See* Declaration of Kelleigh A. Miller (ECF No. 12-3, "Miller Decl.").  No

other records system maintained by the DEA other than IRFS is reasonably likely to contain the

records responsive to Plaintiff's request. Moreover, the records that Plaintiff sought were located based on a search of this record system. DEA's FOIA Unit sought the responsive file from the Miami Division. The file was related to Plaintiff's arrest and conviction for drug trafficking. The FOIA Unit received 46 pages, including one duplicate page, and those pages were withheld in full pursuant to Exemption 7(A) because Plaintiff's appeal of his criminal conviction was open. *See id* ¶¶ 23-28.

10.     On January 8, 2020, the Court issued an Opinion and Order ruling that Exemption 7(A) no longer applied because Plaintiff's appeal of his criminal conviction had been denied. The Court ordered DEA to re-process the 45 pages.

11.     By correspondence dated February 6, 2020, DEA partially released 37 pages and withheld 8 pages in full. The correspondence informed Plaintiff that the material withheld was exempt from disclosure pursuant to FOIA and the Privacy Act.

12.     While reviewing the 45 pages in more detail, the FOIA Unit discovered that several reports indicated that the file included additional records that the FOIA Unit had not received from the Miami Division. The FOIA Unit tasked DEA's Miami Division to retrieve the complete file and send a copy to the FOIA Unit. The Miami Division sent a copy of the file, including additional pages not previously sent, to the FOIA Unit on February 7, 2020.

13.     While reviewing the additional pages, the FOIA Unit noted that photographs and video recordings were mentioned in the file but had not been included in what the Miami Division had sent. An additional request was sent to the Miami Division to provide copies of the photographs and audio/video recordings associated with the file.

14.     By March 10, 2020, all of the photographs and video recordings associated with the file had been received by the FOIA Unit. The Miami Division confirmed to the FOIA Unit that a copy of the entire responsive file was now in the possession of the FOIA Unit.

15.     In addition to the original 45 pages, the FOIA Unit processed 290 pages of records and six audio/video files.

16.     By correspondence dated June 30, 2020, DEA released 84 pages in full, partially released 155 pages, withheld 51 pages in full, and withheld the 6 audio/video files. The correspondence informed Plaintiff that the material withheld was exempt from disclosure pursuant to FOIA and the Privacy Act.

17.     Combining the two productions: DEA released 84 pages in full, partially released 192 pages, withheld 59 pages in full, and withheld 6 audio/video files.

**Adequacy of the Search**

18.     Plaintiff's request seeking records related to Plaintiff and/or the criminal case "2:15-cr-00149-SPC-MRM-1" are reasonably likely to be found in the DEA's IRFS, a Privacy Act System of Records that contains all administrative, general, and investigative files compiled by the DEA for law enforcement purposes. No other records system maintained by the DEA other than IRFS is reasonably likely to contain the records responsive to Plaintiff's request. Moreover, the records that Plaintiff sought were located based on a search of this record system.

19.     DEA acknowledges that the FOIA Unit did not originally receive the complete file from the Miami Division. However, once that error was discovered by the FOIA Unit, the complete file was retrieved and processed.

## DEA's Disclosure Determination

*Privacy Act Exemption (j)(2)*

20.     The investigative records that are responsive to Plaintiff's request are maintained in the

DEA Investigative Reporting and Filing System (IRFS), JUSTICE/DEA-008. These records are

criminal investigatory data compiled for law enforcement purposes. The information is gathered

pursuant to DEA's law enforcement responsibility.

21.     IRFS is a Privacy Act (PA) system of records for which access is denied pursuant to PA

Exemption (j)(2) published at 28 C.F.R. § 16.98. Consistent with PA Exemption (j)(2), the

records maintained in IRFS consist of (a) information compiled for the purpose of identifying

individual criminal offenders and alleged offenders; identifying data and notations of arrests; and

the nature and disposition of criminal charges, sentencing, confinement, release, parole and

probation status; (b) information compiled for the purpose of a criminal investigation, including

reports of informants and investigators associated with an identifiable individual; or (c)

investigatory material compiled for law enforcement purposes. DEA processes all requests by

individuals for records pertaining to themselves under both the FOIA and PA in order to provide

the requester with the maximum disclosure authorized by law.

22.     DEA has promulgated regulations at 28 C.F.R. § 16.98 which exempt IRFS records from

the PA's access provisions, as authorized by 5 U.S.C. § 552a(j)(2). Subsection (j)(2) exempts

from mandatory disclosure all records maintained by an agency or component performing as its

principal function any activity pertaining to the enforcement of criminal laws. DEA is such an

agency. Because Plaintiff's request pertained to his criminal investigation, the materials were

necessarily compiled for law enforcement purposes. Therefore, DEA determined that the

responsive records were exempt under the Privacy Act. Accordingly, DEA next reviewed the records responsive to his request under the provisions of the FOIA.

**FOIA Exemptions**

*Exemption 7 Threshold*

23.     DEA's investigative jurisdiction derives from the Act, which authorizes DEA to enforce 21 U.S.C. § 801 *et seq.* through the investigation of incidences involving the trafficking in controlled substances, dangerous drugs, and precursor chemicals. The records responsive to Plaintiff's request pertain to DEA's investigation of him for violation of the Act. Therefore, the information readily meets  the threshold requirement of Exemption 7.

24.     A *Vaughn* Index is attached that documents the exemptions applied to all of the responsive material withheld. *See* Exhibit A.

*Exemption 7(C) and Exemption 6*

25.     The FOIA, 5 U.S.C. § 552 (b)(7)(C), sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. The investigative records processed in response to Plaintiff's FOIA request contain names and other identifying information that would reveal the identity of, and disclose personal information about, individuals who were involved or associated with the Plaintiff, or with a law enforcement investigation, and could subject them to possible harassment, or focus derogatory inferences and suspicion upon them. The individuals are protected from the disclosure of their identities and information about them. These individuals include third-parties, such as law enforcement personnel, witnesses, suspects, co-defendants, and confidential sources of information.

26.     The FOIA, 5 U.S.C. § 552 (b)(6) protects information about individuals in personnel and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. DEA applied exemption 6 in conjunction with Exemption 7(C) to information in a number of records. Although the balancing test for Exemption 6 uses a "would constitute a clearly unwarranted invasion of personal privacy" and the test for Exemption 7(C) uses the lesser standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is similar enough to warrant a consolidated discussion. The privacy interests are balanced against the public's interest in disclosure under the analysis of both exemptions.

27.     The individuals' privacy interests were balanced against any discernible public interest in disclosure of the individuals' identities. The Plaintiff provided no facts to establish any public interest that would outweigh the privacy interests of the individuals. Thus, disclosure of the identities would be an unwarranted invasion of their personal privacy.

28.     In asserting these exemptions, each piece of information was examined to determine the degree and nature of the privacy interest of any individual whose name or identifying data appeared in the documents at issue. The public interest in disclosure of the information was determined by whether the information in question would inform the Plaintiff or the general public about DEA's performance of its mission to enforce Federal criminal statutes and the Act, or how DEA conducts its internal operations and investigations. In this case, it was determined that there was no legitimate public interest in the information withheld under exemptions 7(C) or 6, and release of any information about a third-party would constitute an unwarranted invasion of that third-party's personal privacy.

29.     Fifty-Nine (59) pages were withheld in full pursuant to Exemptions 7(C) and 6. The Plaintiff is not the sole subject of the file related to his prosecution. The pages include DEA forms associated with, and photographs of, individuals other than the Plaintiff, and are withheld because disclosure of the pages could reasonably be expected to constitute an unwarranted invasion of the personal privacy of the individuals who are the subject of those reports and photographs. There is no public interest that would outweigh the privacy interests of the individuals who are the subject of those reports and photographs.

30.     One Hundred and Eighty-Two (182) pages of the responsive file were released with pieces of information redacted pursuant to Exemptions 7(C) and 6. These pages included the following examples of records: DEA Form 6 (Report of Investigation); DEA Form 7 (Report of Drug Property Collected, Purchased, or Seized); DEA Form 7a (Acquisition of Nondrug Property Seizures); DEA Form 12 (Declaration of Forfeiture); DEA Form 48 (Disposition of Non Drug Evidence); DEA Form 113 (Chemical Analysis Report); DEA Form 202 (Personal History Report); DEA Form 210 (Defendant Disposition Report); the indictment of Plaintiff with attachments; warrants issued related to Plaintiff; and photographs. While this list is not exhaustive, the redacted information includes names of law enforcement personnel, their initials, names of third-party individuals, telephone numbers and addresses, vehicle registrations that could be used to identify third-parties, signatures of law enforcement personnel, NADDIS information, DEA routing information that would reveal law enforcement personnel, criminal associates, information derived from sources of information, confidential source numbers, and the like.

31.     Exemptions 7(C) and 6 were also applied to information in many of the records that were withheld in full pursuant to other exemptions.

*Exemption 7(D)*

32.     The FOIA, 5 U.S.C. § 552 (b)(7)(D), sets forth an exemption for the information

compiled for law enforcement purposes the disclosure of which could reasonably be expected to

reveal the identity of a confidential source or information furnished by a confidential source.

DEA has registered, or "coded," confidential sources. These sources are assigned an identity

code and receive express assurances from DEA that their identity and the information they

provide is confidential. As part of its law enforcement authority and mission under the Act, DEA

relies on Exemption 7(D) to protect source-identifying and source-supplied investigative

information. When it cannot be ascertained that a source was found to have been expressly made

a promise of confidentiality, certain circumstances may support an inference of confidentiality,

such as the character of the crime being investigated, and the source's relation to the nature of

the crime.

33.     In this case, based upon the facts and circumstances, confidentiality was either express or

implied for the sources of information. The sources were involved, and maintained a close

relationship with, several individuals who trafficked in illegal drugs and engaged in other drug-

dealing and illegal activities. The information provided by the individuals related to the illicit

trafficking in drugs by Plaintiff and others. Under these circumstances, it is presumed that the

individuals would not have provided the information unless they believed that the information

and their identity would be held in confidence and not released to Plaintiff or the public, except

as required by law. Thus, confidentiality was implied and the information withheld.

34.     Exemption 7(D) was applied to withhold Forty (40) pages in full. The reports discussed

confidential source information, provided information that would likely reveal the location of the

confidential source, and included the identity code assigned to the confidential source, which

indicates that DEA likely had given an express promise of confidentiality because the individual

had been assigned a confidential source identity code. Because release of the information in

those documents could reasonably be expected to allow for identification of the confidential

source or the disclosure of information furnished by the confidential source, the documents were

withheld in full.

35.     The release of information about a confidential source could jeopardize DEA operations

as the continued cooperation of confidential sources is paramount to DEA investigations and

DEA's development of criminal intelligence. Release of this information would hamper future

cooperation. Because of the nature of DEA's criminal investigations, any information that could

identify an informant could subject them, their family members and associates, to serious harm,

substantial repercussions, and possibly even death. Therefore, exemption 7(D), in conjunction

with 6, 7(C), 7(E), and 7(F), was applied to withhold this information from disclosure.

*Exemption (7)(E)*

36.     The FOIA, 5 U.S.C. § 552(b)(7)(E), sets forth an exemption for records or information

compiled for law enforcement purposes if its release would disclose techniques and procedures

for law enforcement investigations or prosecutions, or would disclose guidelines for law

enforcement investigations or prosecutions if such disclosure could reasonably be expected to

risk circumvention of the law.

37.     Fifty-Seven (57) pages were withheld in full pursuant to Exemption 7(E). These pages

discussed and outlined techniques and procedures used to investigate Plaintiff that, if released,

would constitute significant harm to DEA's ability to investigate individuals involved in drug

trafficking. Release of this information could reasonably be expected to allow drug-traffickers to circumvent the law.

38.     The Six (6) audio/video files were also withheld in full pursuant to Exemption 7(E). These videos document the surveillance of Plaintiff during the drug trafficking investigation that led to his arrest and conviction, including recordings of undercover operations. Release of the recordings would provide details of the techniques and procedures used by DEA to investigate drug trafficking suspects and activity that, if released, would constitute significant harm to DEA's ability to investigate individuals involved in drug trafficking. Release of this information could reasonably be expected to allow drug-traffickers to circumvent the law.

39.     One Hundred and Twenty (120) pages of the responsive file were released with pieces of information redacted pursuant to Exemption 7(E). These pages included the following examples of records: DEA Form 6 (Report of Investigation); DEA Form 7 (Report of Drug Property Collected, Purchased, or Seized); DEA Form 7a (Acquisition of Nondrug Property Seizures); DEA Form 12 (Declaration of Forfeiture); DEA Form 48 (Disposition of Non Drug Evidence); DEA Form 113 (Chemical Analysis Report); DEA Form 202 (Personal History Report); DEA Form 210 (Defendant Disposition Report); the indictment of Plaintiff with attachments; warrants issued related to Plaintiff; and photographs.

40.     DEA has asserted Exemption 7(E) to withhold information related to Plaintiff's investigations including Geo-Drug Enforcement Program (G-DEP) identifiers and other information. These investigative reporting procedures include the documentation of criminal activity by G-DEP identifiers and other information. G-DEP identifiers/information are part of the DEA's internal system of developing criminal activity information and intelligence. These identifiers/information relate solely to internal DEA investigative procedures. G-DEP

identifiers/information are assigned to all DEA cases at the time the case file is opened and

indicate the classification of the violator(s), the types and amount of suspected drugs involved,

the priority of the investigation, and the suspected location and scope of criminal activity. The

release of the G-DEP identifiers/information would help identify priority given to narcotics

investigations, types of criminal activities involved, and violator ratings. Suspects could decode

this information and, as a result, change their patterns of drug trafficking in an effort to respond

to what they determined the DEA knows about them, develop enforcement countermeasures,

avoid detection and apprehension, create excuses for suspected activities, and/or create alibis for

suspected activities. As such, disclosure of the G-DEP identifiers/information would enable

circumvention of the DEA's law enforcement efforts.

41.     DEA also has asserted Exemption 7(E) to withhold information related to Plaintiff's

investigations including DEA file numbers, specific information regarding meetings and

debriefings with confidential and other sources, as well as related files, NADDIS numbers,

acquisition of certain evidence, other identifying information, and material that would reveal

sensitive, non-public references to the DEA's Agents' Manual, which is not available to the

public and would reveal DEA information and law enforcement techniques. DEA has also

protected undercover operations and the use of confidential informants under Exemption 7(E).

42.     If any of this information were to be released, criminals could restructure their activities

to avoid or limit the capabilities of the techniques, thus circumventing the law. Further, release of

the information protected here would also undermine the DEA's position in achieving its

statutory mission and could put agents and sources at risk of harm. Additionally, DEA asserted

7(E) to protect sensitive case numbers because the release of case numbering convention

identifies the investigative interest or priority given to such matters. Applying a mosaic analysis,

suspects could use these numbers (indicative of investigative priority), in conjunction with other information known about other individuals and techniques, to change their pattern of activity to avoid detection, apprehension, or create alibis for suspected activities, etc.

43.     Exemption 7(E) was applied to information in many of the records that were withheld in full pursuant to other exemptions.

*Exemption 7(F)*

44.     The FOIA, 5 U.S.C. § 552(b)(7)(F), sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to endanger the life or physical safety of an individual.

45.     Pursuant to Exemption 7(F) One Hundred and Sixty (160) pages of the responsive file were released with pieces of information redacted. These pages included the following examples of records: DEA Form 6 (Report of Investigation); DEA Form 7 (Report of Drug Property Collected, Purchased, or Seized); DEA Form 7a (Acquisition of Nondrug Property Seizures); DEA Form 12 (Declaration of Forfeiture); DEA Form 48 (Disposition of Non Drug Evidence); DEA Form 113 (Chemical Analysis Report); DEA Form 202 (Personal History Report); DEA Form 210 (Defendant Disposition Report); the indictment of Plaintiff with attachments; warrants issued related to Plaintiff; and photographs.

46.     The names of DEA Special Agents, other law enforcement personnel, and names of individuals involved in criminal investigations were withheld pursuant to Exemption 7(F), typically in conjunction with Exemptions 6 and 7(C).

47.     DEA Special Agents are frequently called upon to conduct a wide variety of investigations, including sensitive and dangerous undercover operations. Special Agents

routinely approach and associate with violators in a covert capacity. Many of those violators are armed, and many have known violent tendencies.

48.     It has been the experience of DEA that violence is inherent in the drug trade, and the release of the identities of law enforcement officers has resulted in several instances of physical attacks, threats, harassment, murder, and attempted murder. Therefore, Special Agents as well as other individuals involved in criminal investigations are withheld, since it is reasonable to conclude that identifying them could subject them to harassment, reprisal or physical retaliation for providing information and being connected with the investigation in any way.

49.     Further, Exemption 7(F) was applied to information in many of the records that were withheld in full pursuant to other exemptions.

### Segregability and Basis for Withholdings

50.     All responsive information was examined to determine whether any reasonably segregable information could be released. Pages were withheld in their entirety where, based upon the review, the release of any additional information would: (1) provide no useful information, or incomprehensible words or phrases that would not shed any light on how the Government conducts business; (2) result in compromising the identity of and information provided by sources of information who were granted express or implied confidentiality; (3) be an unwarranted invasion of personal privacy when balanced against the public interest in the release of information gathered during the course of a criminal investigation; (4) disclose techniques and procedures for law enforcement investigations or prosecutions; or (5) place in jeopardy the lives and safety of third-parties which includes sources of information, individuals associated with or mentioned in the investigative reports, and DEA agents.

51.     Each page was examined to determine whether there was any reasonably segregable information. As a result Eighty-Four (84) pages were released in full, and because of the application of overlapping exemptions, One Hundred and Ninety-Two (192) pages were released in part with redactions, and Fifty-Nine (59) pages and Six (6) audio/video files were withheld in full.

**Foreseeable Harm**

52.     As described in the previous paragraphs, DEA believes that release of any of the withheld information would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions. Specifically, release of the information could reasonably be expected to result in an unwarranted invasion of personal privacy; result in revealing a confidential source of information; reveal sensitive law enforcement techniques and procedures; and place in jeopardy the lives and safety of third parties.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on May 19, 2021, in Accokeek, Maryland

_____
ANGELA D. HERTEL
Unit Chief, Legal and External Affairs Unit
Freedom of Information and Privacy Act Section
Drug Enforcement Administration

# EXHIBIT A

EXHIBIT A

*Norris Williams v. Department of Justice*
Civil Action No. 19-cv-0104
United States District Court, District of Columbia
*Vaughn* Index

This index contains a description of the 251 pages of records withheld in full or released in part by DEA pursuant to Freedom of Information Act (FOIA) Exemptions 6, 7C, 7D, 7E, and 7F.  For clarity of presentation, the records in this *Vaughn* Index are keyed to document categories. The descriptions of each record within this index are meant to be read in tandem with the declaration, which provides a more fulsome explanation of the basis for withholding the information at issue.

| SUMMARY OF JUSTIFICATION CATEGORIES | | |
|---|---|---|
| **CODED CATEGORIES** | **CODE** | **CATEGORY OF INFORMATION WITHHELD** |
| (b)(6) & (b)(7)(C) | | **CLEARLY UNWARRANTED AND UNWARRANTED INVASION OF PERSONAL PRIVACY** |
| | 1 | Names, Addresses, Telephone Numbers, Contact Information, and/or Identifying Information of DEA Special Agents and Support Personnel |
| | 2 | Names, Addresses, Telephone Numbers, Contact Information, and/or Identifying Information of Third Parties |
| | 3 | Names, Addresses, Telephone Numbers, Contact Information, and/or Identifying Information Concerning Local Law Enforcement Personnel |
| (b)(7)(D) | | **CONFIDENTIAL SOURCE MATERIAL** |
| | 1 | Confidential Source Symbol Numbers (Express Confidentiality) |
| | 2 | Names, Addresses, Telephone Numbers, and/or Identifying Information of Third Parties who Provided Information to the DEA under an "Express" and/or "Implied" Assurance of Confidentiality, Confidential Source File Numbers, and Information Provided by and/or Identifying Data Concerning Source Symbol Numbered Informants under an Express Promise of Confidentiality |
| (b)(7)(E) | | **INVESTIGATIVE TECHNIQUE OR PROCEDURE** |
| | 1 | Identifying Information of Internal Indexing/Numbering Systems: Other Law Enforcement Codes |
| | 2 | Identifying Information of Internal Indexing/Numbering Systems: File Number |
| | 3 | Identifying Information of Internal Indexing/Numbering Systems: Case G-DEP Identifier/Identifying Information |
| | 4 | Identifying Information of Internal Indexing/Numbering Systems: NADDIS. |
| | 5 | Identifying Information of Internal Indexing/Numbering Systems: Arrest Office or Agent Identifier |

| | 6 | Identifying Information for Investigative Techniques that Are Not Known to the Public |
|---|---|---|
| | 7 | Identifying Information of Internal Indexing/Numbering Systems: National Crime Information Center (NCIC) |
| | 8 | Undercover Recordings |
| (b)(7)(F) | | **INFORMATION THAT COULD REASONABLY BE EXPECTED TO ENDAGER THE LIFE OR PHYSICAL SAFETY OF AN INDIVIDUAL** |
| | 1 | Names, Addresses, Telephone Numbers, Contact Information, and/or Identifying Information of DEA Special Agents and/or Local Law Enforcement Officers |
| | 2 | Identifying Information of Internal Indexing/Numbering Systems: Group No. |

**A. February 6, 2020 Initial Response—Records Withheld in Full, Pursuant to Exemptions 6 & 7(C)-(F)**

| No. of Pages | Document | Applied Exemptions | Code | Description of Withheld Documents |
|---|---|---|---|---|
| 2 | DEA-202, Personal History Report | (b)(6);(b)(7)(C) | 1, 2 | DEA-202, Personal History Report, September 2014.  These pages are withheld in full pursuant Exemptions (b)(6) and (7)(C) because the subject of the form is not the Plaintiff.  Portions of the records are also covered by Exemptions (7)(D), (7)(E), and (7)(F). |
| | | (b)(7)(D) | 2 | |
| | | (b)(7)(E) | 1, 2, 3, 4 | |
| | | (b)(7)(F) | 1, 2 | |
| 6 | DEA-6, Report of Investigation | (b)(6);(b)(7)(C) | 1, 2, 3 | DEA-6, Report of Investigation, February 2015 and November 2014.  These pages are withheld in full pursuant Exemption (7)(D) because they discuss a confidential source(s).  Portions of the records are also covered by Exemptions (b)(6), (7)(C), (7)(E), and (7)(F). |
| | | (b)(7)(D) | 1, 2 | |
| | | (b)(7)(E) | 2, 3, 4 | |
| | | (b)(7)(F) | 1, 2 | |

**B. February 6, 2020 Initial Response—Records Released in Part, Pursuant to Exemptions 6 & 7(C)-(F)**

| Page Nos. | No. of Pages | Document | Applied Exemptions | Code | Description of Documents |
|---|---|---|---|---|---|
| 1 | 1 | DEA-210, Defendant Disposition Report | (b)(6);(b)(7)(C) | 1 | DEA-210, Defendant Disposition Report, October 2016. |
| | | | (b)(7)(E) | 1, 2, 3, 4 | |
| | | | (b)(7)(F) | 1, 2 | |
| 2-4 | 3 | DEA-202, Personal History Report | (b)(6);(b)(7)(C) | 1, 2 | DEA-202, Personal History Report, October 2015. |
| | | | (b)(7)(E) | 1, 2, 3, 4, 5 | |

| 7-13; 16-36; 41-45 | 33 | DEA-6, Report of Investigation | (b)(6);(b)(7)(C) | 1, 2, 3 | DEA-6, Report of Investigation, dated November 2014 through October 2016. |
| | | | (b)(7)(E) | 1, 2, 3, 4 | |
| | | | (b)(7)(F) | 1, 2 | |

**C.  June 30, 2020 Final Response— Records Withheld in Full, Pursuant to Exemptions 6 & 7(C)-(F)**

| No. of Pages | Document | Applied Exemptions | Code | Description of Withheld Documents |
|---|---|---|---|---|
| 1 | DEA-7, Report of Drug Property Collected, Purchased, or Seized | (b)(6);(b)(7)(C) | 1, 2 | DEA-7, Report of Drug Property Collected, Purchased, or Seized, October 2014.  This page is withheld in full pursuant Exemption (7)(D) because it concerns a confidential source(s).  Portions of the record is also covered by Exemptions (b)(6), (7)(C), (7)(E), and (7)(F). |
| | | (b)(7)(D) | 1, 2 | |
| | | (b)(7)(E) | 1, 2, 3 | |
| | | (b)(7)(F) | 1, 2 | |
| 1 | DEA-7, Report of Drug Property Collected, Purchased, or Seized | (b)(6);(b)(7)(C) | 1, 2, 3 | DEA-7, Report of Drug Property Collected, Purchased, or Seized, November 2014.  These pages are withheld in full pursuant Exemptions (b)(6) and (7)(C) because subject of the form is not the Plaintiff.  Portions of the records are also covered by Exemptions (7)(E), and (7)(F). |
| | | (b)(7)(E) | 1, 2, 3 | |
| | | (b)(7)(F) | 1, 2 | |
| 3 | DEA-6, Report of Investigation | (b)(6);(b)(7)(C) | 1, 2, 3 | DEA-6, Report of Investigation, May 2016 and March 2015.  These pages are withheld in full pursuant Exemptions (b)(6) and (7)(C) because subject of the form is not the Plaintiff.  Portions of the records are also covered by Exemptions (7)(E), and (7)(F). |
| | | (b)(7)(E) | 2, 3, 4 | |
| | | (b)(7)(F) | 1, 2 | |
| 30 | DEA-6, Report of Investigation | (b)(6);(b)(7)(C) | 1, 2, 3 | DEA-6, Report of Investigation, dated September 2014 through September 2016.  These pages are withheld in full pursuant Exemption (7)(D) because they concern a confidential source(s).  Portions of the records are also covered by Exemptions (b)(6), (7)(C), (7)(E), and (7)(F). |
| | | (b)(7)(D) | 1, 2 | |
| | | (b)(7)(E) | 2, 3, 4 | |
| | | (b)(7)(F) | 1, 2 | |
| 1 | DEA Memorandum | (b)(6);(b)(7)(C) | 1 | DEA Memorandum and DEA-12, Receipt for Cash or Other Items, July 2015.  These pages are withheld in full pursuant Exemption (7)(E) because the documents discuss a law enforcement technique that is not known to the public.  Portions of the records are also covered by Exemptions (b)(6), (7)(C), and (7)(F). |
| | | (b)(7)(E) | 1, 2, 3, 6 | |
| | | (b)(7)(F) | 1 | |
| 12 | DEA-284, Authorization | (b)(6);(b)(7)(C) | 1, 3 | DEA-284, Authorization for Use and Report of Use of Consensual Eavesdropping and/or CC TV Equipment, dated September 2014 through October 2015.  These pages are withheld in full pursuant Exemption (7)(E) because the documents discuss a law enforcement technique that is not known |
| | | (b)(7)(D) | 1, 2 | |
| | | (b)(7)(E) | 1, 2, 3, 6 | |
| | | (b)(7)(F) | 1 | |

| | | | | to the public. Portions of the records are also covered by Exemptions (b)(6), (7)(C), (7)(D), and (7)(F). |
|---|---|---|---|---|
| 2 | Photograph | (b)(6);(b)(7)(C) | 2 | Surveillance Photographs.  These pages are withheld in full pursuant to Exemption (b)(6) and (7)(C) because they do not contain images of the Plaintiff or the Plaintiff's vehicle. |

**D.  June 30, 2020 Final Response—Records Released in Part, Pursuant to Exemptions 6 & 7(C)-(F)**

| Page Nos. | No. of Pages | Document | Applied Exemptions | Code | Description of Documents |
|---|---|---|---|---|---|
| 46 | 1 | DEA-48a, Disposition of Nondrug Evidence | (b)(6);(b)(7)(C) | 1 | DEA-48a, Disposition of Nondrug Evidence, October 2015. |
| | | | (b)(7)(E) | 2, 3 | |
| | | | (b)(7)(F) | 1 | |
| 48; 50 | 2 | DEA-7, Report of Drug Property Collected, Purchased, or Seized | (b)(6);(b)(7)(C) | 1, 3 | DEA-7, Report of Drug Property Collected, Purchased, or Seized, November 2014 and December 2014. |
| | | | (b)(7)(E) | 1, 2, 3 | |
| | | | (b)(7)(F) | 1, 2 | |
| 51 | 1 | Photograph | (b)(7)(E) | 2 | Photograph of Drug Exhibit. |
| 52-58 | 7 | DEA-7, Report of Drug Property Collected, Purchased, or Seized | (b)(6);(b)(7)(C) | 1, 3 | DEA-7, Report of Drug Property Collected, Purchases, or Seized, dated February 2015 through October 2015. |
| | | | (b)(7)(E) | 1, 2, 3 | |
| | | | (b)(7)(F) | 1, 2 | |
| 59-69 | 11 | DEA-7a, Acquisition of Nondrug Property Seizures | (b)(6);(b)(7)(C) | 1, 3 | DEA-7a, Acquisition of Nondrug Property Seizures, dated November 2014 through November 2015. |
| | | | (b)(7)(E) | 2, 3 | |
| | | | (b)(7)(F) | 1, 2 | |
| 70-83 | 13 | DEA-113, Laboratory Form | (b)(6);(b)(7)(C) | 1 | DEA-113, Chemical Analysis Report, dated December 2014 through May 2016. |
| | | | (b)(7)(E) | 2 | |
| | | | (b)(7)(F) | 1 | |
| 84-85 | 2 | DEA-202, Personal History Report | (b)(6);(b)(7)(C) | 1, 2 | DEA-202, Personal History Report, September 2014. |
| | | | (b)(7)(E) | 1, 2, 3, 4 | |
| | | | (b)(7)(F) | 1 | |
| 86-92; 95-96; 98-102; 108-111; 135-138 | 22 | DEA-6, Report of Investigation | (b)(6);(b)(7)(C) | 1, 3 | DEA-6, Report of Investigation, dated November 2014 through December 2017. |
| | | | (b)(7)(E) | 1, 2, 3, 4 | |
| | | | (b)(7)(F) | 1, 2 | |

| 143 | 1 | Deposit Slip | (b)(6);(b)(7)(C) | 1 | Deposit slip of seized currency for the purposes of the investigation, October 2015. |
|---|---|---|---|---|---|
| | | | (b)(7)(F) | 1 | |
| 144 | 1 | Itemized Sale Receipt | (b)(6);(b)(7)(C) | 1 | Bank teller receipt, October 2015. |
| | | | (b)(7)(F) | 1 | |
| 145 | 1 | DEA-12, High Value Item/Currency Seizure | (b)(6);(b)(7)(C) | 1 | High Value Item/Currency Seizure form, October 2015. |
| | | | (b)(7)(E) | 2 | |
| | | | (b)(7)(F) | 1 | |
| 148 | 1 | DEA-12, Receipt for Cash or Other Items | (b)(6);(b)(7)(C) | 1 | DEA-12, Receipt for Cash or Other Items, October 2015. |
| | | | (b)(7)(E) | 2 | |
| | | | (b)(7)(F) | 1 | |
| 149 | 1 | DEA-12, Receipt for Cash or Other Items | (b)(6);(b)(7)(C) | 1 | DEA-12, Receipt for Cash and Other Items. |
| | | | (b)(7)(E) | 2 | |
| | | | (b)(7)(F) | 1 | |
| 162; 165-166 | 3 | Indictment, Case No. 2:15-cr-149, Middle District of Florida | (b)(7)(E) | 2 | Indictment for Plaintiff, Case No. 2:15-cr-149, Middle District of Florida, October 2015. [The remaining two pages (163, 164) were released in full]. |
| | | | (b)(6);(b)(7)(C) | 2 | |
| 170-171 | 2 | Search and Seizure Warrant, Case No. 2:15-mj-1127, Middle District of Florida | (b)(6);(b)(7)(C) | 1 | Search and Seizure Warrant, Case No. 2:15-mj-1127, Middle District of Florida and Attachments A-B, October 2015. [The remaining three pages (167, 168, and 169) were released in full]. |
| | | | (b)(7)(F) | 1 | |
| 172 | 1 | Application for a Search Warrant, Case No. 2:15-mj-1127, Middle District of Florida | (b)(6);(b)(7)(C) | 1 | Application for a Search Warrant, Case No. 2:15-mj-1127, Middle District of Florida, October 2015. |
| | | | (b)(7)(F) | 1 | |
| 173-179 | 7 | Affidavit | (b)(6);(b)(7)(C) | 1, 3 | Affidavit describing nature of charges against Plaintiff, October 2015. |
| | | | (b)(7)(F) | 1 | |
| 180-193; 195-214; 216 | 35 | Transcript of Cell Call Recording | (b)(6);(b)(7)(C) | 1, 2, 3 | Transcript of Cell Call Recordings and Undercover Meetings, dated November 2014 through October 2015. |
| | | | (b)(7)(E) | 2 | |
| | | | (b)(7)(F) | 1 | |
| 217-233; 235-237 | 20 | Declaration of Forfeiture | (b)(6);(b)(7)(C) | 1, 3 | Declaration of Forfeiture and Related Forfeiture Records, including Equitable Sharing Documents and U.S. Marshals Service Seized Property Evidence Control Form, dated October 2015 through January 2016. [The remaining one page (234) was released in full]. |
| | | | (b)(7)(E) | 1, 2, 3, 5, 7 | |
| | | | (b)(7)(F) | 1, 2 | |

| 244; 247; 249-250; 254-261; 308-310; 313 | 16 | Photograph | (b)(6);(b)(7)(C) | 2 | Surveillance and Search Photographs. |
|---|---|---|---|---|---|
| 272-273; 285-286 | 4 | Photograph | (b)(6);(b)(7)(C) | 1, 2 | Surveillance and Search Photographs. |
| | | | (b)(7)(F) | 1 | |
| 334-335 | 2 | Photograph | (b)(7)(E) | 2 | Photographs of Drug Exhibits. |

### E. June 30, 2020 Final Response—Records Withheld in Full, Pursuant to Exemptions 6 & 7(C)-(F)

| Record | No. of Pages | Type | Applied Exemptions | Code | Description of Withheld Records |
|---|---|---|---|---|---|
| Audio/Visual | N/A | CD | (b)(6);(b)(7)(C) | 1 | These audio and video files document the surveillance of Plaintiff during the drug trafficking investigation that led to his arrest and conviction, including recordings of undercover operations and were withheld in full under Exemption (7)(E).  Portions of the recordings would also have been covered by Exemptions (b)(6), (7)(C), and (7)(F). |
| | | | (b)(7)(E) | 8 | |
| | | | (b)(7)(F) | 1 | |

# EXHIBIT B

FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

2016 OCT 28 PM 2: 09

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

UNITED STATES OF AMERICA

v.

NORRIS WILLIAMS

CASE NO.   2:15-cr

2:15-Cr-149-FtM-38MRM

21:841(a)(1)
21:841(b)(1)(C)
21:841(b)(1)(B)(i)
21:846
21:853 (Forfeiture)

## INDICTMENT

The Grand Jury charges:

## COUNT ONE

On or about November 18, 2014, in Lee County, in the Middle District of

Florida, the defendant herein,

## NORRIS WILLIAMS,

did knowingly possess with intent to distribute and distribute a quantity of a mixture

or substance containing a detectable amount of heroin, a Schedule I controlled

substance, in violation of Title 21, United States Code, Sections 841(a)(1) and

841(b)(1)(C).

## COUNT TWO

On or about December 17, 2014, in Lee County, in the Middle District of

Florida, the defendant herein,

## NORRIS WILLIAMS,

did knowingly possess with intent to distribute and distribute a quantity of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

### COUNT THREE

On or about February 11, 2015, in Lee County, in the Middle District of Florida, the defendant herein,

### NORRIS WILLIAMS,

did knowingly possess with intent to distribute and distribute a quantity of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

### COUNT FOUR

On or about October 20, 2015, in Lee County, in the Middle District of Florida, the defendant herein,

### NORRIS WILLIAMS,

did knowingly attempt to possess with intent to distribute a kilogram or more of a quantity of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(i) and 846.

2

## FORFEITURE

1.      The allegations contained in Counts One through Four of this Indictment are incorporated by reference for the purpose of alleging forfeiture pursuant to Title 21, United States Code, Section 853.

2.      Upon conviction of a violation of Title 21, United States Code, Section 841, the defendant shall forfeit to the United States of America, pursuant to Title 21, United States Code, Section 853, any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offense and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offense.

3.      The property to be forfeited includes, but is not limited to, the following:   **$50,000 in U.S. Currency.**

4.      If any of the property described above, as a result of any act or omission of the defendants:

       a.      cannot be located upon the exercise of due diligence;

       b.      has been transferred or sold to, or deposited with, a third party;

       c.      has been placed beyond the jurisdiction of the court;

       d.      has been substantially diminished in value; or

       e.      has been commingled with other property which cannot be divided without difficulty,

3

the United States of America shall be entitled to forfeiture of substitute property

under Title 21, United States Code, Section 853(p).

A TRUE BILL,

Date: _____10/28/15_____

_____Sharon Drew_____
Foreperson

A. LEE BENTLEY, III
United States Attorney

By: _____

Robert P. Barcliff
Assistant United States Attorney
Trial Attorney

By: _____

Michael Baggé-Hernández
Assistant United States Attorney
Asset Forfeiture

By: _____

Jesus M. Casas
Assistant United States Attorney
Chief, Fort Myers Division

4

FORM OBD-34
APR 1991

No. 2:15-cr-

## UNITED STATES DISTRICT COURT
Middle District of Florida
Fort Myers Division

THE UNITED STATES OF AMERICA

vs.

NORRIS WILLIAMS

## INDICTMENT

Violations:
21 U.S.C. § 841(a)(1)
21 U.S.C. § 841(b)(1)(C)
21 U.S.C. § 841(b)(1)(B)(i)
21 U.S.C. § 846
21 U.S.C. § 853 (Forfeiture)

A true bill,

_____
Foreperson

Filed in open court this 28th day
of October, 2015.

_____
Clerk

Bail  $ _____

GPO 863 525