RECEIVED
Mail Room

MAY - 5 2022

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

United States District Court
for the District of Columbia

Norris Williams,
    Plaintiff,

v.                            Civil Action No. 19-01004 (RBW)

Department of Justice,
    Defendant.

## Motion Opposing Defendants Motion for an Extension of Time

    Comes Now the Plaintiff, Norris Williams, Pro Se, who moves this Court to oppose the Defendants motion for an extension of time. He requests that this motion be construed liberally as he is a layman of the law and unskilled in its practice per <u>Haines v Kerner</u>, 404 U.S. 519 (1972).

    The Plaintiff states that there is a genuine dispute in these proceedings between the parties in this case, that in-turn substantially impared and prejudiced his rights under the laws and Constitution in his criminal trial case No. 2:15-cr-00149-SPC-MRM-1.

    In the criminal case the DEA withheld crucial evidence and only provided edited video footage during the trial. This caused the Plaintiff to be found guilty of counts 1-4, resulting in a sentence of 360 months.

    The evidence that is still being withheld is impeading the Plaintiff from exercising his rights and seeking the justice he is due. Due to the Governments misconduct in requesting that the DEA FOIA office withheld all documents until

(1)

he has exhausted all of his appeals, which is effectivly baring him from properly pursuing those appeals and any other legal remadies. (See Exhibit A Government Phone Calls.) The DEA has complied with these requests as well as found reasons to withhold document even after being ordered to surender them. These requests by the Government were placed even before his first appeal was filed. Five phone calls made during the 2017 calander year show the Governments concerted efforts to interfear with the Plantiff's due process rights.

Originaly in the FOIA tapes were requested, what was turned over was 186 pages of documents, proving not only that evidence had been withheld, but that more was withheld than the Plantif had belived.

The Defendants are balking at providing the informants name which violates the Plaintiff's constitutional right to confrontation. Any other names found should be evaluated by the Court in camera to determin if they also should be provided under the Sixth Amendment.

The Plaintiff hopes and prays the Court rules on this motion in favor of the Plaintiff and deny Defendants motion for an extension of time and or order any other relief due the Plaintiff.

Respectfully,
*Norris Williams*

William, Norris #33221-018
FCI Coleman Medium Unit B2
POB 1032
Coleman, FL 33521-1032

(2)

## CERTIFICATE OF SERVICE

I, <u>Williams, Norris</u>, hereby declare under penalties of perjury (18 U.S.C. 1746), that a true and correct copy of the foregoing was mailed via the U.S.P.S. with first class postage prepaid and placed in the prison mailing system on the <u>27</u> day of <u>April</u>, 20<u>22</u>. Copies (if copies were sent) were mailed to the addresses below. I request that the Clerk of Court notify any and all other interested parties via the CM/ECF system.

Addresses:

<u>John Moustakas</u>
<u>AUSA</u>
<u>US Dept. of Justice</u>
<u>555 Fourth St, N.W.</u>
<u>Washington, DC. 20530</u>

*Norris Williams*

[ Oath and Affirmation ]
Williams, Norris    Reg # 33221-018
FCI Coleman - Medium
P.O. Box 1032
Coleman, FL 33521-1032

# Exhibit: A

U.S. Department of Justice
Drug Enforcement Administration

## REPORT OF INVESTIGATION

Page 1 of 1

| 1. Program Code | 2. Cross File | Related Files | 3. File No. (b)(7)(E) | 4. G-DEP Identifier (b)(7)(E) |
|---|---|---|---|---|
| 5. By: (b)(6);(b)(7)(C);(b)(7)(F) SA  At Fort Myers RO | ☐ ☐ ☐ ☐ | | 6. File Title WILLIAMS, Norris | |
| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | ☐ | | 8. ■■■■■■■ | |

9. Other Officers:

10. Report Re: Case Status

### DETAILS

Norris WILLIAMS was previously sentenced on October 25, 2016. AUSA ■■■■■■■■tz who represented the United States during the sentencing continues to request that DEA maintain all evidence pending appeals.

### INDEXING

WILLIAMS, Norris - NADDIS (b)(7)(E)    REMARKS: NFI

| 11. Distribution: Division  District  Other    SARI | (b)(6);(b)(7)(C);(b)(7)(F) | 13. Date 01-20-2017 15. Date |
|---|---|---|

DEA Form - 6
(Jul. 1996)

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

(b)(6);(b)(7)(C);(b)(7)(F)

4/25/17

U.S. Department of Justice
Drug Enforcement Administration

# REPORT OF INVESTIGATION

Page 1 of 1

| 1. Program Code | 2. Cross File | Related Files | 3. File No. (b)(7)(E) | 4. G-DEP Identifier (b)(7)(E) |
|---|---|---|---|---|
| 5. By: (b)(6);(b)(7)(C);(b)(7)(F) SA At: Fort Myers RO | ☐ ☐ ☐ ☐ ☐ | | 6. File Title WILLIAMS, Norris | |
| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | | | 8. Date Prepared | |

9. Other Officers:

10. Report Re: Case Status

## DETAILS

Norris WILLIAMS was previously sentenced on October 25, 2016. AUSA ▓▓▓▓▓▓▓▓▓▓ who represented the United States during the sentencing continues to request that DEA maintain all evidence pending appeals.

## INDEXING

WILLIAMS, Norris - NADDIS (b)(7)(E)    REMARKS: NFI

| 11. Distribution: Division | (b)(6);(b)(7)(C);(b)(7)(F) | 13. Date 04-25-2017 |
|---|---|---|
| District | | 15. Date |
| Other SARI | | 4.26-17 |

DEA Form -6
(Jul. 1996)

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

7/28/17

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION | | | | Page 1 of 1 |
|---|---|---|---|---|
| 1. Program Code | 2. Cross File | Related Files | 3. File No. (b)(7)(E) | 4. G-DEP Identifier (b)(7)(E) |
| 5. By (b)(6);(b)(7)(C);(b)(7)(F) SA At: Fort Myers Resident Ofc | ☐ ☐ ☐ | | 6. File Title WILLIAMS, Norris | |
| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | ☐ ☐ | | 8. Date Prepared 07-[redacted]-2017 | |
| 9. Other Officers: | | | | |
| 10. Report Re: Case Status | | | | |

### DETAILS

1. [redacted], SA (b)(6);(b)(7)(C);(b)(7)(F) spoke with AUSA Charles Schmitz, the AUSA who handled this case at trial. AUSA Schmitz advised the appeal filed by defendant Norris WILLIAMS has not been decided and the case remains open.

2. [redacted] requested that DEA maintain the evidence in this investigation until all appeals are decided.

### INDEXING

Negative

| 11. Distribution: Division | (b)(6);(b)(7)(C);(b)(7)(F) | 13. Date 07-20-2017 |
|---|---|---|
| District | | 15. Date |
| Other   SARI | | 7-4-17 |

DEA Form - 6
(Jul. 1996)

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

**U.S. Department of Justice**
Drug Enforcement Administration

## REPORT OF INVESTIGATION

Page 1 of 1

| 1. Program Code | 2. Cross Related Files File | 3. File No. (b)(7)(E) | 4. G-DEP Identifier (b)(7)(E) |
|---|---|---|---|
| 5. By: (b)(6),(b)(7)(C),(b)(7)(F) SA At: Fort Myers Resident Ofc | ☐ ☐ ☐ ☐ ☐ | 6. File Title WILLIAMS, Norris | |
| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | | 8. Date Prepared 2017 | |

9. Other Officers:

10. Report Re: Case Status

### DETAILS

1. SA (b)(6),(b)(7)(C),(b)(7)(F) spoke with AUSA Charles Schmitz, the AUSA who handled this case at trial. AUSA Schmitz advised the appeal filed by defendant Norris WILLIAMS has not been decided and the case remains open.

2. AUSA Schmitz requested that DEA maintain the evidence in this investigation until all appeals are decided.

### INDEXING

Negative

| 11. Distribution: Division  District  Other  SARI | (b)(6),(b)(7)(C),(b)(7)(F) | 13. Date 10-16-2017 |
|---|---|---|
| | | 15. Date 10-16-2017 |

DEA Form - 6
(Jul. 1996)

Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.



U.S. Department of Justice
Drug Enforcement Administration

## REPORT OF INVESTIGATION

Page 1 of 1

| 1. Program Code | 2. Cross File | Related Files | 3. File No. (b)(7)(E) | 4. G-DEP Identifier (b)(7)(E) |
|---|---|---|---|---|
| 5. By: (b)(6);(b)(7)(C);(b)(7)(F) SA At FT. MYERS, FL RESIDENT OFFICE | ☐ ☐ ☐ ☐ ☐ | | 6. File Title WILLIAMS, Norris | |
| 7. ☐ Closed  ☐ Requested Action Completed  ☐ Action Requested By: | | | 8. Date Prepared | |

9. Other Officers:

10. Report Re: Case Status

### DETAILS

1. On 12/20/2017 SA (b)(6);(b)(7)(C);(b)(7)(F) was notified by AUSA Charles Schmitz that the 11th Circuit Court of Appeals affirmed the conviction and 360 month sentence of Norris WILLIAMS for attempting to purchase one kilogram of heroin.

2. The written opinion is attached.

3. This case will remain open pending any additional appeals or issues.

### INDEXING

Negative

| 11. Distribution: Division | (b)(6);(b)(7)(C);(b)(7)(F) | 13. Date 12-20-2017 |
|---|---|---|
| District | | 15. Date 12-26-2017 |
| Other | | |

DEA Form - 6
(Jul 1996)

Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.



(b)(6);(b)(7)(C);(b)(7)(F)   Yeah

NW:   So, you want to cut it open...you all want to cut it open?

(b)(6);(b)(7)(C);(b)(7)(F)   Up to you...

NW:   I don't want to really want ... open it... I want to be able..I need something to be able to take cuz I done smelled good shit... I done seen good shit because the shit I'm getting right now is like a gray...It's like a...it's gray, but it smells like cocaine.

(b)(6);(b)(7)(C);(b)(7)(F)   Right, right, right.

NW:   Yeah, but you know if...but I want you to bring me a sample.  I don't want to cut out no whole key bro.

(b)(6);(b)(7)(C);(b)(7)(F)   Well cut it.  It doesn't...it's not a big deal.

NW:   Okay.  Okay, we'll y'all say its no big deal, but...

(b)(6);(b)(7)(C);(b)(7)(F)
For you man, it's for you...

I'll um...like I said... are you gonna be ready soon or what?

NW:   I fixin to call...I fixin...I got somebody that's going to invest some money with me...or whatever... so to the point where I'm gonna call him and let him know then you'll are ready now... cuz I told him about two weeks or whatever, so he ready whenever I'm ready so let me call him.  I'm gonna make some arrangements... whatever... and we gonna go from there.

(b)(6);(b)(7)(C);(b)(7)(F)   Alright.

NW:   but I...I don't I mean....I understand that your principle purpose, but I don't want to take on nothing that I can't handle right now cuz the season is not good, but I got two outlets...I got two places.  I got here, Sarasota and Bradenton but if I got something that's good enough to where I can put what I need to do with it and leave them room it goes really fast, but I just been pacing myself because of the fact of the matter it's not... it's dead...it's season time – these places go on season and... and when the things line up... Boom it take off and...

(b)(6);(b)(7)(C);(b)(7)(F)
Uh hum.

Alright yeah you let me know when you're ready and... ah...you know I'll bring it to you.

(b)(6);(b)(7)(C);(b)(7)(F): You don't ...you know.

...make at least three out of it.

NW: Yeah, but I don't...I mean... how you gonna... Why would you bring this much... I just... for the sample purposes...

(b)(6);(b)(7)(C);(b)(7)(F): No, no, no, ya we got orders.

NW: Yeah, okay.

(b)(6);(b)(7)(C);(b)(7)(F): You know what I mean. We go other people we gotta...

NW: Yeah...but I want to see them. I mean...I just...look at it.

(b)(6);(b)(7)(C);(b)(7)(F): Yeah.

NW: I want...

(b)(6);(b)(7)(C);(b)(7)(F): I can bring you anything. I could bring you...you don't know where it's coming from.

NW: Yeah, yeah, I understand...I understand that.

(b)(6);(b)(7)(C);(b)(7)(F): This is my lucky knife man...

NW: Uh huh

NW: Yeah but...I don't want, I don't want to have to cut it open to the point where you gotta take...

(b)(6);(b)(7)(C);(b)(7)(F): U/I we'll just...



NW: I want you to take some out to the point where I can be able to take it to the people so they can... know how you gotta have a person gauge it and see how much, but if you all say its official, I'm gonna ride with you all until we..we can see what's up, you know.

(b)(6);(b)(7)(C);(b)(7)(F): Yeah, yeah

NW: Uh huh.

(b)(6);(b)(7)(C);(b)(7)(F): No it's right, it's up to you...you want to...you know.

Take a look at it or what...

NW: I don't want to take a look at it cuz when you cut it open it's gonna have the smell and shit is gonna be in the car, so the smell is gonna be... strong.

# News-Press.

NEWS

# One of four Fort Myers police officers on leave after Freeh Report requests return to duty



**Michael Braun**
Fort Myers News-Press

Published 3:58 p.m. ET April 6, 2021 | Updated 3:59 p.m. ET April 6, 2021

One of four Fort Myers Police Department officers placed on paid leave in 2017 after an audit of the department has formally requested a return to active duty.

Capt. Melvin Perry, Sgt. Rick Notaro, Sgt. Michael Forbes and Officer Jason Jackson were placed on leave in 2017 after allegations of corruption and a lack of resources at the Fort Myers Police Department following the 2016 Freeh Group audit.

Jackson was the only one of the three still on paid leave.

Police Benevolent Association President Matt C. Sellers sent a letter Monday to Chief Derrick Diggs making the request on behalf of Jackson.

*Based on that information and the fact Officer Jackson is not a subject of a current IA investigation, we are requesting Officer Jason Jackson be returned to full duty immediately."*

There was no response to media queries Tuesday from FMPD officials. Sellers said he also had not had a response from FMPD.

On Friday, attorneys for the four men were contacted by Karin Hoppmann, acting United States Attorney for the U.S. Attorney's Office Middle District of Florida, informing them prosecutors will not be filing charges after a federal grand jury found no significant evidence of a crime, Sellers said.

**More:** Fort Myers cop kept home since critical audit retires; internal affairs investigation links officers placed on leave

4/10/22, 8:59 PM                                                    Police corruption, toxic culture detailed in FMPD audit

# News-Press.

**NEWS**

# Police corruption, toxic culture detailed in FMPD audit

**CODY DULANEY, and FRANK BUMB** The News-Press
Published 11:29 a.m. ET Feb. 22, 2017 | Updated 11:54 a.m. ET Feb. 23, 2017

Alleged police corruption was never investigated. Officers were directed to deal with the public in a "heavy-handed" manner. A drug-trafficking network has operated with near impunity in Fort Myers, even killing witnesses. And an overwhelmed Fort Myers Police Department has failed to develop a strategy to deal with that network.

A scathing 72-page report released Wednesday outlines a toxic culture within the Fort Myers Police Department that prioritized maintaining "the illusion that the city was a safe place and that FMPD was effectively policing the city," while doing little to combat a growing problem of gang and drug-related violence.

The Fort Myers City Council paid Freeh Group International Solutions, a Delaware-based consulting firm, $150,000 to perform the audit last May. It began weeks after a News-Press investigation revealed ongoing accusations of racial discrimination and retaliation against officers who complained.

**DOCUMENT:** FMPD Needs Assessment Report

The consultants were given unfettered access to the department and all its members for several months, and officers were promised anonymity to ensure a candid discussion, said Robert O'Neill, managing director of the Freeh Group. They emerged with 32 recommendations, and the very first one is to investigate allegations of officer misconduct that surfaced during the audit.

"As a city manager, I wanted to make sure that I understand what is going on in that department, and so the new chief understands what he is getting into," City Manager Saeed Kazemi said during a press conference announcing the report. "But now we have a roadmap that we are going to follow."

## Internal and external problems

The problems also bled into the community.

"Officers were directed to increase arrests and citations for minor infractions in order to increase the Department's reporting of statistical accomplishments," the report says. "Instead of assigning appropriate resources to unsolved homicides and shootings, officers were directed to deal with the general public in a heavy-handed manner. Rather than remove violent offenders from the city, this practice spawned complaints from the general public and appears to have exacerbated tension and dis-trust (sic) within the communities in which these actions took place."

On top of that, citizen complaints of harassment were not addressed the way they should have been, which aggravated tensions between police and the community.

The issues outlined in a News-Press investigation about a joint task force were actually systemic throughout the department, as detailed by the Freeh Group's report.

**Poor outcomes**

These "heavy-handed" interactions in the community were the result of FMPD leadership pushing to emphasize statistics, creating an illusion of safety for the city and an image of competency for the department, the report said.

Short staffing also led to overwhelmed homicide investigators, who were then expected to work alone and solve homicides in two weeks.

"In homicide investigations, investigators do not work in teams and do not have partners. As a result, the primary investigator is typically overwhelmed with responsibilities...," the report said. "Investigators ask each other for help on an informal basis but are routinely reassigned to other matters. If a murder is not solved within the first two weeks, the primary investigator is returned to the rotation of detectives eligible to assume the lead on a new case. This occurs routinely and as a result, high-profile investigations, even those that could be solved, become unaddressed matters."

That has led to a pattern of violence where drug and gang-based violence then turns into residents – skeptical of the FMPD's ability to protect them from the gangs – taking matters into their own hands. A spiral of "retaliatory violence," that the FMPD has not been able to break.

Further, the report details the explosive revelation that a drug-trafficking network has operated with near impunity in Fort Myers, even killing witnesses.

# Justice Dept. looks into racial discrimination at FMPD

Published:  April 15, 2016 5:12 PM EDT
Updated:    April 15, 2016 8:58 PM EDT

FORT MYERS, Fla.- The Fort Myers Police Department will be investigated by the U.S. Department of Justice as allegations surface of years of racial discrimination and retaliation.

The News-Press reports the claims were made during several lawsuits and equal opportunity complaints against the department.

Gretchen Eberhardt, crime prevention coordinator at FMPD, told the News-Press the culture at the department is toxic.

But Fort Myers police Chief Dennis Eads is denying any racial discrimination, both within his department and with the community they serve.

"I think officers are encouraged to target criminals in the community. If those criminals happen to be minority, then so be it, but that is absolutely false," Eads said.

Eads' answer is a response to accusations made by former police union president Cecil Pendergrass in court proceedings.

Pendergrass said he felt officers were encouraged to target minorities.

"It's wrong, it's inappropriate and we actually have policies in place to deal with that," Eads said.

"There is discrimination... there is a fear (of retaliation) in the department," Eberhardt told the News-Press. "The attitude there is you have to go along to get along."

The city of Fort Myers is investigating Eberhardt's claim.

Eberhardt also told the News-Press she heard officers call the Dunbar community "Dumbar."

Eads said the first time he heard that term was when he was interviewed by the News-Press.

"There's a lot in that article, there's a lot left out," Eads said.

Eads has been in charge of the department's internal affairs since 2012 and says he has not had officers come to him complaining of racial discrimination.

Five officers have sued FMPD in the past for civil rights violations, and the city has paid thousands of dollars in settlements.

Once of the lawsuits was settled last year. It was a lawsuit brought on by Detective Audenia Thomas, after she says the Fort Myers Police Department failed to investigate years of her complaints about racial discrimination. Chief Eads agreed her claims should have been investigated.

The city manager is looking for an outside firm to investigate the department as well as the Justice Department.

**Copyright 2022 Fort Myers Broadcasting Company. All rights reserved. This material may not be published, broadcast, rewritten or redistributed without prior written consent.**

Do you see a typo or an error? Let us know.

"Additionally the Department has not been able to develop a successful investigation of a drug trafficking network responsible for numerous murders, including the murders of witnesses. There has been a lack of a focused and coordinated strategy to address the most significant criminal enterprises in the city," the report said.

Few details on that network were available in the report due to the ongoing nature of the investigation.

Overwhelmed investigators, a skeptical community that fears to cooperate with FMPD for fear of their own safety and a pattern of retaliatory violence are all detailed in the report. One exasperated detective bemoaned the department's ineffectiveness and how the community was assessing the risks.

"Cookouts and basketball are great but how do we let good people know we will remove the bad ones," the unnamed detective told investigators.

## Recommendations

The report listed 32 recommendations under four tiers. Tier 1 recommendations were marked "to be implemented immediately." The number one recommendation is to investigate allegations of police misconduct regarding drug search warrants discussed in the report.

That recommendation flows together with several recommendations related to the department's leadership and culture. One recommendation, number 14, said every supervisor should be interviewed on their leadership abilities and past performances.

"Undoubtedly, there will be individuals who will resist the changes that must be implemented in order to move the Department forward," the report said. "The Chief's greatest challenge will be to identify future leaders who are willing to sacrifice personal ambitions and preferences in order to do what is best for the Department and the City of Fort Myers."

Other recommendations call for a pooling of investigative services meant to streamline the flow of information and solve more homicide cold cases. Because murders go unsolved, the report said, the city is consumed by a "pattern of retaliatory violence" the department needs to break. A stronger relationship with community members – especially the minority community – was also the focus of several recommendations.

**City of Fort Myers**
*Teresa P. Watson*
**Councilwoman Ward 3**
**P.O. Box 2217**
**Fort Myers, FL 33902**

Norris Williams
Gregory Welch
P.O. Box 121443
Ft. Lauderdale, FL 33312



*City of Palms*

# City of Fort Myers

*Terolyn P. Watson*

## Councilwoman Ward 3

March 11, 2021

To whom it may concern,

    Sometime in 2018, I Terolyn Watson did talk with Norris Williams in regards to police unlawfulness and misconduct, that he wanted to bring to my attention as a Councilwoman. I spoke with the acting City Attorney Terry Cramer and gave him the information regarding Mr. Williams case. Mr. Cramer stated that what took place was not lawful, according to what was brought to his attention. The public should have not been able to access the drugs given.

Respectfully,

*Terolyn P. Watson*

Councilwoman Terolyn P. Watson

2200 Second Street • Fort Myers, Florida 33901 • (239) 321-7003 • Fax (239) 334-7933
Mailing Address: P.O. Box 2217 • Fort Myers, Florida 33902
E-Mail: twatson@cityftmyers.com