UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NORRIS WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 19-104 (RBW) |
| | ) | |
| UNITED STATES DEP'T OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>RENEWED MOTION FOR SUMMARY JUDGMENT</u>**

Defendants Department of Justice and the Drug Enforcement Administration ("DEA"), by undersigned counsel, move for summary judgment in this action as to the limited issues remaining in this case following the Court's memorandum opinion dated December 6, 2021 in this lawsuit under the Freedom of Information Act ("FOIA").  Accompanying Defendant's Renewed Motion is a supporting memorandum, a supporting declaration and a proposed order.

Respectfully submitted,
MATTHEW M. GRAVES, D.C. Bar #481052
Acting United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

By:      /s/
JOHN MOUSTAKAS, D.C. Bar #442976
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
Tel: (202) 252-2518
john.moustakas@usdoj.gov

*Counsel for the Defendant*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NORRIS WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 19-104 (RBW) |
| | ) | |
| UNITED STATES DEP'T OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Norris Williams, has filed this action under the Freedom of Information Act ("FOIA") against Department of Justice (the "Department") in connection with a FOIA request directed to DEA.  In a memorandum opinion dated December 6, 2021, this Court granted Defendants' motion for summary judgment in all respects but two:  certain withholdings under exemptions 7(E) and 7(F).[1]  See Memorandum Opinion and Order (Dec. 6, 2021), ECF No. 36 (hereinafter "Mem. Op.").[2]   Specifically, other than NADDIS numbers and G-DEP identifiers, which are "routinely and appropriately withheld under Exemption 7(E), *id.* at 21 (citing *Chavis v. U.S. Dep't of Justice*, Civ. A. No. 20-638, 2021 WL 1668069, at *8 (D.D.C. Apr. 28, 2021), the Court found that DEA "fail[ed] to demonstrate that the remaining information properly ha[d] been

---

[1]      Defendant incorporates by reference the Statement of Undisputed Material Facts filed with its original Motion for Summary Judgment.  *See* ECF No. 12-2.  It also incorporates by reference the two prior DEA Declarations.  *See* ECF No. 12-3 (Kelleigh A. Miller), 33-1 (Angela D. Hertel).  Defendant also incorporates by reference its prior Memoranda in Support. *See* ECF No. 12-1, 33.

[2]      The remaining records have already been found to meet the threshold requirement:  they were compiled for law enforcement purposes.   See Mem. Op. at 6.

withheld." *Id.* In addition, after finding that the DEA had justified application of Exemption 7(F) to "the names of and identifying information about DEA Special Agents and other law enforcement officers," Mem. Op. at 14, the Court concluded that, while it appeared that Identifying Information of Internal Indexing/Numbering Systems: Group Numbers may be properly withheld, it needed more information to be certain. *Id.*

Pursuant to the Court's order dated September 14, 2021, Defendants now move for summary judgment on these limited, outstanding issues.

## ARGUMENT

FOIA actions are typically resolved on summary judgment. *See Leopold v. CIA*, 106 F. Supp. 3d 51, 55 (D.D.C. 2015); *Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 200 (D.D.C. 2007). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009) (quotation omitted). Such declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982), and *Hayden v. NSA*, 608 F.2d 1381, 1388 (D.C. Cir. 1979)).

DEA has reviewed the withholdings made under Exemption 7(E), (F) as to which the Court ordered supplemental briefing. *See* Supplemental Declaration of Angela D. Hertel,   ¶¶  3-4

("Hertel Supp. Decl.").   Understanding the lack of specificity which concerned the Court, the DEA's Renewed Motion for Summary Judgment addresses in greater detail and granularity application of Exemption 7(E) to seven categories of records:  (i) DEA file numbers; (ii) other law enforcement codes (qualitative drug classification criteria and substance/commodity codes); (iii) sub-office codes; (iv) NCIC codes; (v) records/forms that contain investigative techniques that are not known to the public; (vi) information regarding meetings and debriefings with confidential and other sources; and (vii) six audio/video files.  *See* Hertel Supp. Decl. ¶¶ 8-15.[3]  DEA has also addressed the Court's need for more information and visibility into the withholding of Identifying Information of Internal Indexing/Numbering Systems:  Group No. (Group Numbers).  *Id.* ¶¶ 17-21.

Because the Court already has determined that DEA's withholding under Exemption 7(E) of the specific items identified in the prior Hertel Declaration was proper, and the reference to the DEA Agents' Manual in paragraphs 34 and 38 was not intended to reference additional material, the Court should grant summary judgment on the outstanding issues addressed below.   Likewise, as there is no additional material being referenced, the Court's determination that DEA had produced all reasonably segregable, non-exempt information – subject to resolution of this limited, outstanding issue – remains applicable.  Mem. Op. at 16 n. 7.  Likewise, for the reasons set forth in the Defendant's prior Memorandum of Points and Authorities and declarations, release of the records that are the subject of Defendant's Renewed Motion for Summary Judgment would

---

[3]     To eliminate any confusion that may have been caused by the earlier Hertel Declaration (ECF No. 33-1), references in ¶¶  34, 38 thereof to material or information "that would reveal sensitive, non-public references to the DEA's Agents' Manual" was not intended to extend beyond these seven categories of records, plus the two as to which the Court has previously ruled favorably (NADDIS information; G-DEP identifiers).   *See* Mem. Op. at 12.

foreseeably result in harm to important interests that FOIA exemptions are designed to protect. *See* ECF No. 12-3, ¶ 40; ECF No. 33-1, ¶ 52; ECF No. 33 at 12.

## EXEMPTION 7(E)

Exemption 7(E) "sets a relatively low bar for the agency to justify withholding." *Blackwell v. FBI*, 646 F.3d 37, 42, 396 U.S. App. D.C. 164 (D.C. Cir. 2011). "Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194, 385 U.S. App. D.C. 250 (D.C. Cir. 2009) (alterations adopted and internal quotation marks omitted). The exemption "looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Id*. at 1193.

The lion's share of DEA's withholdings under Exemption 7(E) are invoked to protect DEA case file numbers. *See Vaughn* Index at 1-11, 13-20, 23-26, 30-31, 34. DEA's "case numbering convention identifies the investigative interest or priority given to such matters." Hertel Supp. Decl., ¶ 8. The file numbers are proprietary to DEA and safeguarded; they "can only be legitimately utilized by agency personnel functioning within the agency." *Id.* The file numbers "reveal the specific DEA office that initiated the investigation, the year the investigation was commenced, and the total number of cases initiated by the DEA office in a particular fiscal year." *Id.* Releasing such would give bad actors key information about DEA procedures and techniques and potentially the ability to track how DEA investigates subjects. As

such, a release of this kind "could reasonably be expected to create a risk of circumvention of law by revealing how an agency's law enforcement databases work and rendering them more vulnerable to manipulation, including the possibility of individuals compromising the integrity of DEA's data through a breach." *Id.*

For these reasons, case file numbers and sub-file numbers are widely recognized as protected from disclosure by Exemption 7(E). *See Kowal v. United States DOJ*, Civ. A. No. 18-938 (TJK), 2021 U.S. Dist. LEXIS 144524, at *16 (D.D.C. Aug. 3, 2021); *Poitras v. Dep't of Homeland Sec.*, 303 F. Supp. 3d 136, 159 (D.D.C. 2018); *Schneider v. United States DOJ*, Civ. A. No. 18-474 (DLF), 2019 U.S. Dist. LEXIS 167508, at *13 (D.D.C. Sep. 28, 2019). This is because "[s]uspects could decode this information and, as a result, change their patterns of drug trafficking" and "develop enforcement countermeasures, avoid detection and apprehension, create excuses for suspected activities, and/or create alibis for suspected activities." *Kowal*, 2021 U.S. Dist. LEXIS 144524, at *16; *Poitras*, 303 F. Supp.3d. 159. at 33. As such, DEA's application of Exemption 7(E) to its case file numbers is wholly appropriate.

DEA also invoked Exemption 7(E) to protect qualitative drug classification criteria. *See* Hertel Supp. Decl., ¶ 10. A release of these codes " would reveal how DEA internally classifies investigative targets, which would allow dangerous drug violators to understand how DEA investigates them and the level in which we classify their involvement along with the investigative priority given to drug violators, including some of the most highly sought-after criminals." *Id.* Release of the qualitative drug classification criteria codes could result in a circumvention of the law by drug violators. *Id.* As such, the invocation of Exemption 7(E) was wholly proper. *See, e.g., Rios v. United States*, Civ. A. No. 15-183 (TSC), 2021 U.S. Dist. LEXIS 22880, at *2 (D.D.C. Feb. 8, 2021).

DEA also applied Exemption 7(E) "to withhold internal principal-controlled substance/commodity codes which are used by DEA to internally label and identify the types of drug(s) involved in a particular investigation."  Hertel Supp. Decl., ¶ 9; *Vaughn* Index 1, 3-4, 6-7, 14, 16, 19.  These codes are used in the formulation of G-DEP numbers, which this Court has already acknowledged deserve 7(E) protection.  *See* Mem. Op. at 12.  Their release would risk circumvention of the law "by allowing criminals to understand and de-code DEA's internal data, which, in turn, could inform changes to their methods of drug trafficking designed to evade detection."  Hertel Supp. Decl., ¶ 10.   How law enforcement officers internally label cases and maintain information regarding a case, is both a law enforcement technique and procedure that is not commonly known to the public.  Applying a mosaic analysis, suspects could use these numbers (often indicative of investigative priority), in conjunction with other information known about other individuals and techniques, to change their pattern of activity to avoid detection, apprehension, or create alibis for suspected activities.  *See, e.g., Djenasevic v. Exec. Office of United States Attys.*, 319 F. Supp. 3d 474, 490 (D.D.C. 2018)(applying "mosaic theory" to DEA's withholdings under Exemption 7(E)).[4]

DEA also withheld sub-office codes under Exemption 7(E) as to one record.  *See Vaughn* Index at 31.  DEA sub-office codes are used as enforcement group identifiers in multiple systems

---

[4]      "A mosaic theory posits that separate disclosures of otherwise innocuous information could be assembled by a requester or other person to reveal how, when, and under which circumstances certain techniques are employed by law enforcement and investigative agencies. Thus, the only way to prevent anyone from constructing the broader 'mosaic' is to shield each individual piece from disclosure." *Whittaker v. Dep't of Justice*, Civ. A. No. 18-1434 (APM), 2020 U.S. Dist. LEXIS 190946, at *14-15 (D.D.C. Oct. 15, 2020)(cleaned up).  Supported by both Supreme Court and D.C. Circuit precedent, this approach permits an agency to justify withholding agency records that form only a small piece of the larger puzzle to prevent the greater risk of identifying that which, when aggregated, would otherwise be legitimately protected from disclosure. *E.g., CIA v. Sims*, 471 U.S. 159, 178 (1985); *United States v. Maynard*, 615 F.3d 544, 562 (2010).

throughout DOJ, which "are part of the DOJ Consolidated Asset Tracking System (CATS) and

show[] the enforcement group within a specific DEA Field office or Resident office."  *See* Hertel

Supp. Decl., ¶ 11.   Revealing these sub-office codes could permit bad actors to pinpoint where a

certain enforcement group is located, thereby disclosing "how and where DEA conducts

operations and investigations," allowing dangerous targets to derive information to circumvent

law enforcement." *Id.*   As such, DEA properly invoked Exemption 7(E) as to sub-office codes.

*See, e.g.*, *Rios*, 2021 U.S. Dist. LEXIS 22880, at \*2 (recognizing "sub-office codes" among the

identifying numbers or codes "that could lead to discovery and circumvention of the law by drug

violators").

DEA also applied Exemption 7(E) to withhold National Crime Information Center (NCIC)

codes (also referred to as ORI numbers in some instances).  *See Vaughn* Index at 3, 31.  NCIC is

a sensitive, criminal law enforcement tool created and maintained by the FBI for the use of

authorized users to obtain criminal justice information – including criminal records, fugitive status,

and other sensitive and highly probative data aggregated from federal, state, local, foreign criminal

law enforcement agencies and certain authorized courts.  *See* Hertel Supp. Decl., ¶ 12.  The NCIC

database provides information "to authorized agencies to facilitate the apprehension of fugitives,

the location of missing persons, the location and return of stolen property, or similar criminal

justice objectives – in short, law enforcement information restricted to agencies that perform the

administration of criminal justice."  *Id.*   Issued by FBI's Criminal Justice Information Service

Division (CJIS) to law enforcement agencies that have met established qualifying criteria, the nine-

character NCIC codes regulate access to this powerful tool, permitting each qualified agency to

obtain its individually-authorized level of access to the database and identifying the source of

information aggregated in the database.  *Id.*   Release of these codes could allow unauthorized

access to law enforcement systems and information and thereby pose a meaningful risk of circumvention of the law.  As recently as three months ago, this Court has held that NCIC codes are properly protected by Exemption 7(E).  *See, e.g.*, *Cooper v. Dep't of Justice*, Civ. A. No. 99-2513 (RBW), 2022 U.S. Dist. LEXIS 36204, at *117-18 (D.D.C. Mar. 1, 2022).  *Accord Zeyad Abdeljabbar v. BATF*, 74 F. Supp. 3d 158, 183 (D.D.C. 2014); *Rios*, 2021 U.S. Dist. LEXIS 22880, at *2; *McRae v. Dep't of Justice*, 869 F. Supp. 2d 151, 169 (D.D.C. 2012).  As such, Exemption 7(E) was properly applied to NCIC codes.

DEA invoked Exemption 7(E) to a series of records that detail "the approval and use of drugs in an undercover operation" and reveal  "identifying information for investigative techniques that are not known to the public."  *See Vaughn* Index at 10, 11 (July 2015, DEA internal Memorandum ("DEA Memo"), a DEA-12 (Receipt for Cash or Other Item), and DEA-284 Authorization Forms, Authorization for Use and Report of Use of Consensual Eavesdropping and/or CC TV Equipment).   These records were withheld "to protect DEA's chain of custody procedures and forensic techniques for drug evidence following operations and investigations in the underlying investigation," including "how drugs are received into custody, where and how drugs are stored when not in use, location of drug processing facilities, the exact operation in which the drugs were used, and how DEA wraps, stores, and maintains particular drugs."  *See* Hertel Supp. Decl., ¶ 13.  Moreover, the DEA-284 was withheld in full under 7(E), " to protect DEA's sensitive techniques and procedures, including how our surveillance is done, when conducting eavesdropping operations by DEA law enforcement officials."  *Id.*  These details about DEA conducts eavesdropping operations reveal law enforcement procedures, techniques, and practices that are not commonly known to the public, whose release "could allow targets and other criminals to restructure their activities to avoid or minimize the efficacy of these procedures, techniques, and

practices – and even take affirmative steps to counter undercover operations and investigations." *Id.* As such, they have been properly meet the low bar set under Exemption 7(E). *See, e.g.*, *Blackwell v. FBI*, 646 F.3d 37, 42 (2011)("Under our precedents, Exemption 7(E) sets a relatively low bar for the agency to justify withholding. . . .").

This Court has previously determined that information regarding meetings and debriefings with confidential and other sources were appropriately withheld under Exemption 7(D). Exemption (E) – in conjunction with Exemption 7(D) – has also been cited as a basis for withholding this information.   Release of this information "could reasonably be expected to disclose and jeopardize the techniques and procedures that DEA utilizes when working with confidential sources, potentially exposing how confidential sources operate during DEA investigations." *See* Hertel Supp. Decl., ¶ 14.  For instance, by applying Exemption 7(E) in conjunction with 7(D), DEA endeavored to "protect the means by which confidential sources make contact with DEA targets, exchange money and drugs once contact is made, and work with undercover law enforcement officers by means [designed] to avoid compromising one another." *Id.* Because this is information "could assist targets and other violators in detecting and evading confidential sources," it could "impair[] the effectiveness of DEA's investigations involving confidential sources." *Id.*  As such, the application of Exemption 7(E) is eminently proper. *See*, *e.g.*, *Djenasevic*, 319 F. Supp. 3d at 490 (Exemption 7(E) properly applied to information related to DEA's "meetings with confidential sources" and "the use of confidential informants" because release of such information "would allow criminals to restructure their activities to circumvent the law.").

Finally, DEA withheld six audio/video files in full pursuant to Exemption 7(E).  *See Vaughn* Index at 35.  These records reveal "the surveillance of Plaintiff during the drug trafficking

investigation that led to his arrest and conviction." *See* Hertel Supp. Decl., ¶ 15.  Release of the recordings would provide details of the techniques and procedures used by DEA to investigate drug trafficking suspects and activity that, if released, could constitute significant harm to DEA's ability to investigate individuals involved in drug trafficking" by disclosing information – including the extent of its technological capabilities – that "inexorably risks harming the agency's core law enforcement mission by making it more possible for drug traffickers to avoid detection and apprehension." *Id.* As such, withholding theses records is wholly appropriate.  *See, e.g.*, *Judicial Watch, Inc. v. Dep't of State*, Civ. A. No. 12-893 (JDB), 2017 U.S. Dist. LEXIS 143665, at *10-11 (D.D.C. Sep. 6, 2017)(release of video surveillance would allow agency's "sources and methods" to be compromised and lead to "countermeasures and circumvention"); *Showing Animals Respect and Kindness v. Dep't of Interior*, 730 F. Supp. 2d 180, 199-200 (D.D.C. 2010) (videos and photographs were properly withheld in full under Exemption 7(E) because "they reveal specific details of surveillance techniques . . . which could compromise [the Fish and Wildlife Service's] ability to conduct future investigations at various National Wildlife Refuges.").

For the foregoing reasons, Defendant respectfully submits that its invocations of Exemption 7(E) are wholly justified.

## EXEMPTION 7(F)

DEA applied Exemption 7(F) to fourteen records on which redactions were made to prevent the disclosure of certain identifying information relating to DEA's system of indexing/numbering internal records.  *See Vaughn* Index at 1-9, 14, 16-17, 20, 31.  Exemption 7(F) covers records that, if disclosed, "could reasonably be expected to endanger the life or physical safety of any individual."  5 U.S.C. § 552(b)(7)(F).  Exemption 7(F)'s language is very broad; it does not require that a particular kind of individual be at risk of harm – "any individual"

will do.  Disclosure need not definitely endanger life or physical safety; a reasonable  expectation of endangerment suffices.  *See, e.g., Pub. Emples. for Envtl. Responsibility v. United States Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 205 (2014).  Application of exemption 7(F) has been uniformly upheld to protect the names and identities of law enforcement.  *See Farese v. Dep't of Justice*, 826 F.2d 129 (D.C. Cir. 1987); *Burnett v. Dep't of Justice*, No. 21-5092, 2021 U.S. App. LEXIS 35872, at *4 (D.C. Cir. Dec. 3, 2021).  Accepting DEA's characterization of the drug trade and the potential dangers it poses, this Court has already approved of "DEA['s] reli[ance] on "Exemptions 7(C) and 7(F) to withhold the names of and identifying information about DEA Special Agents and other law enforcement officers."  Mem. Op. at 14.

The only remaining question under Exemption 7(F) relates to DEA's application of the protection to sensitive group numbers.  While the Court acknowledged that this category of records might also be properly withheld, "further explanation [was] needed before the Court [could] reach that conclusion."  *Id.*  With the additional information provided by DEA's declarant, it is now plain that, for the same reasons that names of and identifying information about DEA personnel are protected, so, too, are group numbers which could lead to the disclosure of that same protected information – name and identifying details.

DEA's Organization and Staffing Management Section uses certain accounting codes and organization group numbers for allocation purposes within the agency.  *See* Hertel Supp. Decl., ¶ 19.  That means that every group within DEA is identified by a group number.  Closing the loop, each DEA employee is associated with a particular group within various DEA systems. While, standing alone, information that identifies a component/group within DEA could seem rather innocuous, such information is a quintessential form of  *tessera*, which, when assembled

with other *tesserae*, could lead to identifying DEA personnel.  As DEA's Declarant explains, the release of group numbers into the public domain means that with just a single other *tessera* (or puzzle piece) – information about personnel affiliated with particular groups, for example – "violators could potentially identify the agent(s) that wrote the investigative reports and/or identify the law enforcement personnel involved in particular law enforcement operations." *Id.* ¶ 19.  As indicated above, other sensitive DEA identifiers have been protected under a mosaic theory, *see supra* at 7, citing *Djenasevic*, 319 F. Supp. 3d at 490.  These identifiers are no different.

This logical possibility is precisely why the agency invoked Exemption 7(F), in conjunction with Exemptions 6 and 7(C), "to protect the identities of individual DEA employees in operational groups, just as it did to protect DEA employees' individual identities" directly under 7(F).  *See* Hertel Supp. Decl., ¶ 18.  This kind of information is already viewed as insignificant to the core purposes of FOIA in the context of balancing privacy interests under Exemptions 6 and 7(C).  *See, e.g.*, *Pronin v. Fed. Bureau of Prisons*, 2020 U.S. Dist. LEXIS 42990, at *8 (D.D.C. Mar. 12, 2020) (names and positions "shed[] no light on the activities of the" agency because they "reveal little or nothing about an agency's own conduct" or "what the Government is up to")(citing *Beck v. Dep't of Justice*, 997 F.2d 1489, 1493 (D.C. Cir. 1993) and *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989)).  Recognizing that the risks of disclosure of personally identifying information have more dire potential consequences than simple harassment or invasion of privacy protected by exemptions 6 and 7(C), the additional invocation of 7(F) strengthens the power of the agency's justification.

Application of 7(F) to records identifying group numbers is merely one step of attenuation removed from the utterly uncontroversial notion that the identities of DEA personnel

are entitled to protection because violators are often armed and "have known violent tendencies." *See* Mem. Op. at 14.  By parity of reasoning, those protections are necessary to shield group members who could be identified and, therefore, become vulnerable to the risks of "physical attacks, threats, harassment, murder, and attempted murder."  *Id.*

For the foregoing reasons, Defendant respectfully submits that its invocations of Exemption 7(F) are wholly justified.

## **<u>CONCLUSION</u>**

For the reasons set forth above, the Defendants request that this Court grant summary judgment in their favor as to the issues remaining following this Court's December 6, 2021 decision.

Dated: June 9, 2022
      Washington, DC

                               Respectfully submitted,

                               MATTHEW M. GRAVES, D.C. Bar #481052
                               United States Attorney

                               BRIAN P. HUDAK
                               Acting Chief, Civil Division

                               By: _____/s/_____
                                   JOHN MOUSTAKAS, D.C. Bar #442076
                                 Assistant United States Attorney
                                 555 Fourth Street, NW
                                 Washington, DC 20530
                                 (202) 252-2518
                                 john.moustakas@usdoj.gov

                               *Attorneys for the United States of America*