UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NORRIS WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 19-104 (RBW) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |

**SUPPLEMENTAL DECLARATION OF ANGELA D. HERTEL**

I, Angela D. Hertel, hereby make the following Declaration under penalty of perjury, pursuant to 28 U.S.C. § 1746.

1. I am currently the Unit Chief of the Legal and External Affairs Sub-Unit (CCARL), part of the recently reorganized Freedom of Information Act (FOIA) and Privacy Act (PA) Unit (CCAR), of the United States Department of Justice (DOJ), Drug Enforcement Administration (DEA), located at DEA Headquarters in Arlington, Virginia.  While my responsibilities and duties have remained the same since the declaration filed in May 2021, my new title is the result of the reorganization, effective November 21, 2021.  From October 2020 through November 2021, I served as the Unit Chief of the FOIA/PA Legal and External Affairs Unit (FSRL), part of the FOIA/PA Section (FSR), until FSR reorganized as CCAR in November 2021.  From May 2019 through October 2020, I served as Acting Unit Chief of the FOIA/PA Unit (FSRF) until FSRF was reorganized as FSR in October 2020.  My primary responsibilities of overseeing FOIA and PA matters, including litigation, have been consistent throughout the organizational changes.  I have been responsible for working on DEA matters related to the FOIA, 5 U.S.C. § 552, and the PA, 5 U.S.C. § 552a (cited together as FOIA/PA) since 2009.

1

2. As the Unit Chief, I, in part, oversee the processing of certain requests to the DEA under the FOIA/PA. Due to the nature of my official duties and my experience in responding to requests for DEA records since 2009, I am knowledgeable about the policies and practices of the DEA related to search, process, and disclosure of DEA information pursuant to the FOIA/PA.

3. In preparing this declaration, I have read and am familiar with the Complaint in the above titled action, as well as the Court's Memorandum Opinion and Order, dated December 6, 2021, wherein the Court granted the government's motion for summary judgment, with the exception of DEA's 7(E) withholding of "information regarding and debriefings with . . . sources, as well as related files . . . , acquisition of certain evidence, other identifying information, and material that would reveal sensitive, non-public references to the DEA's Agent's Manual . . . would reveal . . . law enforcement techniques" and DEA's 7(F) withholding of "a category of information designated 'Identifying Information of Internal Indexing/Numbering Systems: Group No.'"

4. I file this declaration to provide the Court clarification regarding the assertion of: (a) Exemption 7(E) to withhold information that would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law and (b) Exemption 7(F) to withhold records or information compiled for law enforcement purposes, the disclosure of which could reasonably be expected to endanger the life or physical safety of an individual.

5. The statements set forth herein are true and correct to the best of my belief and based on my personal knowledge as well as information acquired by me in the course of performing my official duties.

## BASES FOR WITHHOLDING REMAINING INFORMATION PURSUANT TO FOIA EXEMPTION (b)(7)(E)

6.  As mentioned in ¶¶ 36 through 43 in my previous declaration dated May 19, 2021, DEA asserted Exemption 7(E) to withhold information such as DEA file numbers, specific information regarding meetings and debriefings with confidential and other sources as well as related files, NADDIS numbers, acquisition of certain evidence, other identifying information, and material that would reveal sensitive, non-public references to the DEA's Agents' Manual, which is not available to the public and would reveal DEA information and law enforcement techniques.

7.  In addition to G-DEP identifiers and NADDIS information, which the Court already deemed permissible to redact, there are seven other related categories of information DEA withheld under 7(E): DEA file numbers; other law enforcement codes; DEA sub-office codes; National Crime Information Center (NCIC) codes; forms that contain investigative techniques that are not known to the public; information regarding meetings and debriefings with confidential and other sources; and six audio/video files.

8.  *First*, the vast majority of DEA's applications of Exemption 7(E) were to DEA file numbers (also referred to as Case Numbers and Cross Files/Related Files in some instances). DEA asserted Exemption 7(E) to protect these sensitive DEA file numbers because the release of the case numbering convention identifies the investigative interest or priority given to such matters. DEA file numbers relate solely to internal DEA practices and can only be legitimately utilized by agency personnel functioning within the agency. Disclosing this information could reasonably be expected to create a risk of circumvention of law by revealing how an agency's law enforcement databases work and rendering them more vulnerable to manipulation, including the possibility of individuals compromising the integrity of DEA's data through a breach. DEA file numbers reveal the specific DEA office that initiated the investigation, the year the investigation was commenced,

3

and the total number of cases initiated by the DEA office in a particular fiscal year. The disclosure of this information would reveal details about how the DEA currently conducts investigations giving bad actors key information about DEA procedures and techniques and potentially the ability to track how DEA investigates subjects. See *Vaughn* Index at 1-11, 13-20, 23, 24, 25, 26, 30, 31, 34.[1]

9. <u>Second</u>, DEA also asserted Exemption 7(E) to protect qualitative drug classification criteria and internal principal-controlled substance/commodity codes (hereinafter, "Other Law Enforcement Codes"), specific numbers and codes that could lead to discovery and circumvention of the law by drug violators. DEA applied Exemption 7(E) to withhold Other Law Enforcement Codes because, among other things, they reveal qualitative drug classification criteria to violators, who could misuse this information. The public disclosure of these qualitative drug classification criteria codes could result in a circumvention of the law by drug violators, who would learn how DEA internally classifies investigative targets. This, in turn, would reveal how DEA investigates dangerous drug violators, how the level of their involvement is classified, and what investigative priority is given to them, including some of the most highly sought-after criminals.

10. Internal principal-controlled substance/commodity codes are also among the Other Law Enforcement Codes to which Exemption 7(E) has been applied in this case. These codes are used by DEA to internally label and identify the types of drug(s) involved in a particular investigation. They are used in the formulation of G-DEP numbers, which this Court has already acknowledged deserve 7(E) protection. How law enforcement officers internally label, and maintain information about a case is both a law enforcement technique and procedure – neither of which is commonly

---

[1] The numerical references to the *Vaughn* index are the item numbers on the index (1 is the first entry on the *Vaughn* index, 2 is the second, and so on).

known to the public. Release of these codes could risk circumvention of the law by allowing criminals to understand and de-code DEA's internal data, which, in turn, could inform changes to their methods of drug trafficking designed to evade detection. Applying a mosaic analysis, suspects could use these numbers (which are often indicative of investigative priority), in conjunction with other information known about other individuals and techniques, to change their pattern of activity to avoid detection, apprehension, or create alibis for suspected activities. *See Vaughn* Index 1, 3, 4, 6, 7, 14, 16, 19.

11.     <u>Third</u>, DEA has also withheld sub-office codes under Exemption 7(E). The DEA sub-office code is used as an enforcement group identifier in multiple systems throughout DOJ. For example, sub-office codes are part of the DOJ Consolidated Asset Tracking System (CATS) and shows the enforcement group within a specific DEA Field office or Resident office. By revealing these sub-office codes, suspects could pinpoint where a certain enforcement group is located. Disclosure of such information could reveal how and where DEA conducts operations and investigations, thereby giving dangerous targets information with which to attempt to circumvent law enforcement. DEA sub-office codes and, relatedly, enforcement group locations are data that could allow violators to determine where DEA focuses its investigative resources geographically and, by doing so, allow them to move their criminal activities to places where DEA's absence increases their chances of resuming criminal behavior at diminished risk of detection. *See Vaughn* Index at 31.

12.     <u>Fourth</u>, DEA also applied Exemption 7(E) to withhold National Crime Information Center (NCIC) codes (also occasionally referred to as ORI numbers). The NCIC is a computerized index of criminal justice information that includes offenders' criminal records, as well as highly sensitive law enforcement data about fugitives, stolen property, missing persons, among other things. A

repository of aggregated data from all manner of criminal law enforcement agencies (federal, state, local and foreign, as well as authorized courts), it is designed to provide criminal law enforcement agencies with ready access to important information about crimes and criminals in real time. Access to this powerful tool is strictly limited to authorized users and is protected by administrative, physical, and technical safeguards. NCIC codes are nine-character codes issued by FBI's Criminal Justice Information Service Division (CJIS) to law enforcement agencies that have met established qualifying criteria. The codes grant and regulate the level of access to the database and also are a means of identifying each law enforcement agency's listed transactions within the NCIC System. Release of these codes could allow unauthorized access to highly sensitive law enforcement systems and information to which even agencies' level of access are regulated and thereby pose a meaningful risk of circumvention of the law. *See Vaughn* Index at 3, 31.

13.     *Fifth*, DEA applied Exemption 7(E) to protect a July 2015, DEA internal Memorandum ("DEA Memo"), a DEA-12 (Receipt for Cash or Other Item), and DEA-284 Authorization Forms, Authorization for Use and Report of Use of Consensual Eavesdropping and/or CCTV Equipment that identify investigative techniques that are not known to the public and, as such, were withheld in full. The DEA Memo and DEA-12 – two pages withheld in full – detail the approval and use of drugs in an undercover operation. *See Vaughn* Index at 10. The remaining pages constitute a DEA-284, which was withheld in full to protect DEA's chain of custody procedures and forensic techniques for drug evidence following operations and investigations in the underlying investigation. *Id.* at 11. They include how drugs are received into custody, where and how drugs are stored when not in use, location of drug-processing facilities, the exact undercover operation in which the drugs were used, and how DEA wraps, stores, and maintains particular drugs. The

DEA-284 was withheld to protect DEA's sensitive techniques and procedures, including how surveillance is conducted by DEA law enforcement officials. The handling and processing of drug evidence, as well as the conduct of eavesdropping operations, are law enforcement procedures, techniques, and practices that are not commonly known to the public. As such, their release could allow targets and other criminals to restructure their activities to avoid or minimize the efficacy of these procedures, techniques, and practices – and even take affirmative steps to counter undercover operations and investigations.

14.     <u>Sixth</u>, DEA also applied Exemption 7(E) to information regarding meetings and debriefings with confidential and other sources. This Court has already determined that such information was appropriately withheld in full under Exemption 7(D), but the withholdings have also been alternatively based on Exemption 7(E). The DEA applied exemption 7(E) in conjunction with 7(D) to protect the means by which confidential sources make contact with DEA targets, exchange money and drugs once contact is made, and work with undercover law enforcement officers by means to avoid compromising one another. The release of such information could reasonably be expected to disclose and jeopardize the techniques and procedures that DEA utilizes when working with confidential sources, potentially exposing how confidential sources operate during DEA investigations, which, in turn, could assist targets and other violators in detecting and evading confidential sources, with the effect of impairing the effectiveness of DEA's investigations involving confidential sources.

15.     <u>Seventh</u>, six audio/video files were also withheld in full pursuant to Exemption 7(E). These records -- including recordings of undercover operations -- document the surveillance of Plaintiff during the drug trafficking investigation that led to his arrest and conviction. These files reveal techniques and procedures used by DEA to investigate drug trafficking suspects and activity that,

if released, could significantly impede DEA's investigative efforts by helping targets and violators circumvent the law by revealing sensitive information about how it conducts undercover operations, including its technological capabilities. Revealing to targets such information inexorably risks harming the agency's core law enforcement mission by making it more possible for drug traffickers to avoid detection and apprehension. *See Vaughn* Index at 35.

16. DEA's withholdings under Exemption 7(E) are fully described in its *Vaughn* index submitted on May 23, 2021, including the type of information redacted (e.g., NADDIS information, G-DEP identifiers, qualitative identifiers, NCIC codes, file numbers, investigative techniques that are not known to the public, and sub-office codes, etc.). Reference to the Agents' Manual in ¶ 41 of my previous declaration (*i.e.*, to information or material "that would reveal sensitive, non-public references to the DEA's Agents' Manual") was meant to encompass the same material already described as being exempt under Exemption 7(E) and was not intended to signify that any additional material was withheld under 7(E) that could reveal sensitive, non-public references to the DEA Agents' Manual. The records to which Exemption 7(E) has been applied have been re-reviewed to confirm that DEA's withholdings under that exemption pertained to the specific information already identified (*e.g.*, NADDIS information, G-DEP identifier, qualitative identifiers, NCIC codes, file numbers, investigative techniques that are not known to the public, and DEA sub-office codes, etc.) and not any additional material.

**BASES FOR WITHOLDING REMAINING INFORMATION PURSUSANT TO FOIA EXEMPTION (b)(7)(F)**

17. As mentioned in ¶ 45 of my previous declaration, pursuant to Exemption 7(F), one hundred and sixty (160) pages of the responsive file were released with certain types of information redacted, including Identifying Information of Internal Indexing/Numbering Systems: Group No. (Group Numbers). *See Vaughn* index at 1, 2, 3, 4, 5, 6, 7, 8, 9, 14, 16, 17, 20, 31.

18.     Specifically, DEA applied Exemption 7(F), in conjunction with Exemptions 6 and 7(C), to group numbers to protect the identities of individual DEA employees in operational groups, just as it did to protect DEA employees' individual identities under 7(F) – an assertion whose propriety the Court previously acknowledged.  *See* Mem. Op. at 14.

19.     DEA's Organization and Staffing Management Section (FRM) uses and stores accounting codes in the Unified Financial Management System (UFMS) and uses and stores organizational group numbers in the National Finance Center (NFC) to manage DEA's Table of Organization for resource allocation purposes.  In other words, some enforcement components within DEA have a numeric identifier.  Individual employees are associated with a particular group in NFC and in DEA's internal personnel management system.

20.     Release of group numbers provides one piece of a larger mosaic or puzzle that makes identification of DEA personnel more likely than without that information.  Under a recognized mosaic approach, possession of this datum added to other information learned or gleaned from other sources could permit individual DEA personnel to become associated with identified operational groups – a risk universally deemed unacceptable so as to protect the names of and identifying information about personnel from disclosure.  Through such an analysis violators could potentially identify the agent(s) that wrote the investigative reports and/or identify the law enforcement personnel involved in particular law enforcement operations.  These groups have a limited number of personnel assigned making the likelihood of personnel identification that much greater.

21.     As the Court recognized in connection with the assertion of Exemption 7(F) to the names and identifying information of DEA employees, violators are often armed and "have known violent tendencies."  *Id.*  For parity of reasons, those protections are necessary to shield group members

who could be identified and, therefore, become vulnerable to the risks of "physical attacks, threats, harassment, murder, and attempted murder." *Id.*

## SEGREGABILITY

22. As stated in my prior declaration, in each instance where information was withheld pursuant to Exemption 7(E) and 7(F), every effort was made to release all segregable information without disclosing law enforcement techniques or procedures or endangering the life or physical safety of an individual. I conducted a line-by-line review of each responsive record and determined that no additional information may be segregable for disclosure without revealing the protected information. As noted in ¶¶ 43 and 49 of my previous declaration, Exemptions 7(E) and 7(F) were applied to information in many of the records that were withheld in full pursuant to other exemptions, which the Court deemed are proper.

## FORSEEABLE HARM

23. As described in the previous paragraphs, DEA believes that release of any of the withheld information would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions. Specifically, release of the information could reasonably be expected to result in revealing sensitive law enforcement techniques and procedures; and place in jeopardy the lives and safety of third parties.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATE: June 9, 2022

ANGELA D. HERTEL
Chief, Legal and External Affairs Sub-Unit
Freedom of Information and Privacy Act Unit
Drug Enforcement Administration