UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NORRIS WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 19-0104 (RBW) |
| ) | |
| DEPARTMENT OF JUSTICE, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

The plaintiff brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552. Currently pending before the Court are the defendant's Renewed Motion for Summary Judgment ("Def.'s Mot."), ECF No. 43, the Plaintiff[']s Cross Motion for Summary Judg[]ment ("Pl.'s Cross-Mot."), ECF No. 48, the plaintiff's Motion to the Court for Appointment of Counsel Under the 3006A Statute ("Pl.'s Mot. to Appoint Counsel"), ECF No. 49, and his Motion to Compel[] the Department of Justice to Produce and Supply the Plaintiff Copies of All Court Filings or the Material Specified in this Court[']s Order Document Entry 20 and Grant Summary Judg[]ment [i]n Favor of the Plaintiff ("Pl.'s Mot. to Compel"), ECF No. 52. For the reasons discussed below, the Court GRANTS the defendant's summary judgment motion and DENIES the plaintiff's motions.

**I. BACKGROUND**

By letter dated January 15, 2018, the plaintiff requested information maintained by the Drug Enforcement Administration ("DEA") about himself and his criminal case, *see* Defendant's Statement of Undisputed Material Facts ("Def.'s SMF") ¶ 1, ECF No. 33, that was prosecuted in

1

the United States District Court for the Middle District of Florida, *see United States v. Williams*, 718 F. App'x 890 (11th Cir. 2017) (per curiam) (affirming the defendant's convictions and sentences). The initial search of the DEA's Investigative Reporting and Filing System yielded forty-five pages of responsive records which were withheld in full under Exemption 7(A). Def.'s SMF ¶ 3. Later, DEA staff discovered additional responsive records, and the agency ultimately released to the plaintiff eighty-four pages of records in full, released 192 pages in part, withheld fifty-nine pages in full, and withheld six audio/visual files in full under Exemptions 6, 7(C), 7(D), 7(E) and 7(F). *Id.* ¶ 5; *see generally* Errata, Exhibit ("Ex.") A ("*Vaughn* Index"), ECF No. 44-1.

The Court previously determined that the DEA conducted an adequate search for records responsive to the plaintiff's FOIA request, that all of the responsive records were compiled for law enforcement purposes, and that the records fall within the scope of Exemption 7. *See Williams v. Dep't of Justice*, Memorandum Opinion and Order at 5–7 (D.D.C. Dec. 6, 2021) ("December 6, 2021 Ruling"), ECF No. 36. Further, the Court found that the DEA properly withheld the names of and identifying information about third parties contained in the responsive records, including DEA Special Agents, other law enforcement personnel, witnesses, suspects, co-defendants, and confidential sources, under Exemptions 7(C), 7(D) and 7(F), *see generally id.* at 8–11, 14, and Geographic Drug Enforcement Program ("G-DEP") and Narcotics and Dangerous Drug Investigation System ("NADDIS") numbers under Exemption 7(E), *see id.* at 12.

What the Court left for further review was the DEA's application of (1) Exemption 7(E) to seven categories of records, and (2) Exemption 7(F) to group numbers, or Identifying

Information of Internal Indexing/Numbering Systems. *Id*. at 12-14; *see* Supplemental Declaration of Angela D. Hertel ("Supp. Hertel Decl.") ¶¶ 7, 17, ECF No. 43-1.[1]

## II. DISCUSSION

### A. The Defendant's Renewed Summary Judgment Motion

#### 1. Legal Standard

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). Courts will grant summary judgment to an agency only if the agency can prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Friends of Blackwater v. U.S. Dep't of Interior*, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (internal quotation marks omitted) (citation omitted). Thus, in a lawsuit brought to compel the production of documents under the FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly[, or partially,] exempt [from disclosure.]'" *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (omission in original)). "In ruling on summary judgment, courts may rely on non-conclusory agency affidavits demonstrating the basis for withholding if they are not contradicted by contrary evidence in the record or by evidence of the agency's bad faith." *Rep. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021) (citing *Shapiro v. Dep't of Just.* 893 F.3d 796, 799 (D.C. Cir. 2018)).

---

[1] Because the Court has determined that certain records or portions of records properly have been withheld under Exemptions 7(C), 7(D), and/or 7(E), *see* December 6, 2021 Ruling at 8, 10–12; Errata, Ex. A (*Vaughn* Index) (Doc. Nos. 1, 2, 6, 7, 8, 9, 10, 11), it need not consider whether FOIA Exemption 7(F) applies to them also, *see Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1173 (D.C. Cir. 2011).

### 2. Exemption 7(E)

Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such . . . information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

As to the remaining matters at issue, the Court addresses briefly the DEA's justification for withholding the following categories of information under Exemption 7(E):

- DEA file numbers
- other law enforcement codes: qualitative drug classification criteria and internal principal-controlled substance/commodity codes
- DEA sub-office codes
- National Crime Information Center (NCIC) codes
- forms containing investigative techniques not publicly known
- six audio/video files

*See* Supp. Hertel Decl. ¶ 7.[2]

### a. DEA File Numbers

The DEA represents that "[t]he lion's share of DEA's withholdings under Exemption 7(E) are invoked to protect DEA case file numbers[,]" Def.'s Mot. at 5, or more specifically, the DEA's "case numbering convention [which] identifies the investigative interest or priority given to" a matter, Supp. Hertel Decl. ¶ 8. File numbers pertain "solely to internal DEA practices and can only be legitimately utilized by agency personnel functioning within the agency." *Id.* The declarant further explains that file numbers identify the specific DEA office initiating an

---

[2] Upon review of the record in this case, the Court finds that a seventh category of information, described as "information regarding meetings and debriefings with confidential and other sources," Supp. Hertel Decl. ¶ 14; *see* Errata, Ex. A (*Vaughn* Index) (Doc. Nos. 1–2, 6, 9), was already ruled protected under Exemption 7(D), *see* December 6, 2021 Ruling at 9–11.

investigation, the year the investigation began, and the total number of investigations the office initiated in any given fiscal year. *See id.* According to the declarant, release of DEA file numbers "could reasonably be expected to create a risk of circumvention of law" by, for example, "revealing how . . . law enforcement databases work . . . rendering them more vulnerable to manipulation[.]" *Id.* In addition, the declarant represents that disclosure of "details about how the DEA currently conducts investigation[s]" provides "bad actors key information about DEA procedures and techniques and potentially the ability to track how [the] DEA investigates subjects." *Id.*

### b. Other Law Enforcement Codes

#### *i.* Qualitative Drug Classification Criteria

The DEA applied Exemption 7(E) to two groups of information designated "Other Law Enforcement Codes." *See* Supp. Hertel Decl. ¶ 9. With respect to "qualitative drug classification criteria and internal principal-controlled substance/commodity codes," *id.*, the declarant explains that their disclosure offers the public "specific numbers and codes" which in turn "could lead to . . . circumvention of the law by . . . reveal[ing] how [the] DEA investigates dangerous drug violators, how the level of [the violators'] involvement is classified, and what investigative priority is given to them, including some of the most highly sought-after criminals." *Id.*

#### *ii*. Internal Principal-Controlled Substance/Commodity Codes

The designation Other Law Enforcement Codes also includes "[i]nternal principal-controlled substance/commodity codes," which the DEA uses "to internally label and identify the types of drug(s) involved in a particular investigation." *Id*. ¶ 10. According to the declarant, disclosure of these codes would reveal "both a law enforcement technique and procedure[.]" *Id.*

5

These codes are incorporated into G-DEP numbers, *see id.*, which the Court already deemed protected under Exemption 7(E), *see* December 6, 2021 Ruling at 12.

### c. Sub-Office Codes

The declarant explains that sub-office codes are used as "enforcement group identifier[s] in multiple systems throughout" the U.S. Department of Justice ("DOJ"), such as the DOJ's Consolidated Asset Tracking System to identify "the enforcement group within a specific DEA Field office or Resident office" associated with a particular matter. Supp. Hertel Decl. ¶ 11. If these codes were released, the declarant states, a "suspect[] could pinpoint where a certain enforcement group is located," and in turn, "determine where [the] DEA conducts operations and investigations" or "where [the] DEA focuses its investigative resources geographically[.]" *Id.* With such information, the declarant states, wrongdoers could relocate their criminal activities to areas where the DEA is less likely to detect them. *See id.*

### d. NCIC Codes

The declarant describes the NCIC as a computerized repository of information from local, state, federal, and foreign law enforcement sources providing "criminal law enforcement agencies . . . ready access to important information about crimes and criminals in real time." *Id.* ¶ 12; *see* Errata, Ex. A (*Vaughn* Index) (Doc. No. 3). The Federal Bureau of Investigation's Criminal Justice Information Service Division issues nine-character NCIC codes to qualifying law enforcement agencies, thus granting these agencies "access to the database" and providing a means by which to track each agency's transactions within the NCIC. Supp. Hertel Decl. ¶ 12. According to the declarant, disclosure of NCIC codes "could allow unauthorized access to highly sensitive law enforcement systems and information . . . and thereby pose a meaningful risk of circumvention of the law." *Id.*

### e. Information in a DEA Memorandum and DEA-12 and DEA-284 Forms

The declarant explains that the DEA withheld under Exemption 7(E) information from three documents: an internal memorandum, a receipt (DEA-12) "detail[ing] the approval and use of drugs in an undercover operation[,]" and a document (DEA-284) reflecting the DEA's "chain of custody procedures and forensic techniques for drug evidence following operations and investigations." *Id*. ¶ 13; *see* Errata, Ex. A (*Vaughn* Index) (Doc. Nos. 10–11). According to the declarant, release of the memorandum and the DEA-12 would reveal "investigative techniques that are not known to the public" regarding the use of consensual eavesdropping or closed circuit television equipment. Supp. Hertel Decl. ¶ 13. Moreover, release of the DEA-284 would reveal "how drugs are received into custody, where and how drugs are stored when not in use, location of drug-processing facilities, the exact undercover operation in which the drugs were used, and how [the] the DEA wraps, stores, and maintains particular drugs." *Id*. The DEA therefore withheld these records to protect its procedures and techniques for conducting surveillance so as not to "allow targets and other criminals to restructure their activities to avoid or minimize the efficacy of these procedures, techniques, and practices – and even take affirmative steps to counter undercover operations and investigations." *Id*.

### f. Audio/Video Files

The DEA has withheld in full recordings, including "recordings of undercover operations[,]" which "document the surveillance of [t]he plaintiff during the drug trafficking investigation that led to his arrest and conviction." Supp. Hertel Decl. ¶ 15; *see* Errata, Ex. A (*Vaughn* Index) (Doc. No. 35). The declarant explains that release of these recordings would result in the revelation of "techniques and procedures used by [the] DEA to investigate drug trafficking suspects and activity[,]" which then "could significantly impede [the] DEA's

7

investigative efforts by helping targets and violators circumvent the law by revealing sensitive information about how it conducts undercover operations, including its technological capabilities."  Supp. Hertel Decl. ¶ 15.

The plaintiff objects generally to the DEA's refusal to release all of the records he has requested, *see, e.g.*, Pl.'s Cross-Mot. ¶¶ 3–5, but without addressing the merits of the defendant's arguments justifying reliance on Exemption 7(E).  However, based on the parties' submissions, the Court concludes that the DEA's reliance on Exemption 7(E) is permitted.  *See, e.g., Dale v. U.S. Drug Enf't Agency*, No. 20-cv-1248 (EGS), 2022 WL 3910502, at *8 (D.D.C. Aug. 31, 2022) (permitting the withholding of investigative case numbers, qualitative characterization codes, and NCIC numbers); *Rios v. United States*, No. 15-cv-1183 (TSC), 2021 WL 430053, at *1 (D.D.C. Feb. 8, 2021) (permitting the withholding of DEA file numbers, NCIC codes, office and sub-office codes, quantitative and qualitative drug classification criteria, internal drug violator codes included in G-DEP numbers, and operational code names); *Poitras v. Dep't of Homeland Sec.*, 303 F. Supp. 3d 136, 159 (D.D.C. 2018) (permitting the withholding of "(1) sensitive file numbers or sub-file names; (2) internal, non-public email or IP addresses; (3) dates or types of investigations; (4) identity or location of FBI or Joint Units, Squads, or Divisions; (5) collection or analysis of information; (6) investigative focus; (7) law enforcement strategies or techniques for addressing the techniques, tactics or procedures . . . used by an organization; [and] (8) monetary payments for investigative techniques"); *Showing Animals Respect & Kindness v. U.S. Dep't of Interior*, 730 F. Supp. 2d 180, 200 (D.D.C. 2010) (concluding that videos and photographs "which disclose the location and timing of [] surveillance could be reasonably expected to risk circumvention of the law" and, therefore, were properly withheld in full under Exemption 7(E)).

### 3. Exemption 7(F)

Exemption 7(F) protects from disclosure information contained in law enforcement records that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). This Circuit has observed that Exemption 7(F)'s "language is very broad," and that it "does not require that a particular kind of individual be at risk of harm; 'any individual' will do." *Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.*, 740 F.3d 195, 205 (D.C. Cir. 2014); *see Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 525 (D.C. Cir. 2015) (noting that "the phrase 'any individual'" makes clear that Exemption 7(F) now shields the life or physical safety of *any* person, not only the law enforcement personnel protected under the pre–1986 version of the statute"). "In reviewing claims under Exemption 7(F), courts have inquired whether or not there is a nexus between disclosure and possible harm and whether the deletions were narrowly made to avert the possibility of such harm." *Berard v. Fed. Bureau of Prisons*, 209 F. Supp. 3d 167, 174 (D.D.C. 2016) (citing *Albuquerque Pub. Co. v. U.S. Dep't. of Just.*, 726 F. Supp. 851, 858 (D.D.C. 1989)). Here, the Court has already approved the DEA's reliance on Exemption 7(F), in conjunction with Exemption 7(C), to protect the names of DEA Special Agents, other law enforcement personnel, and third parties involved in the relevant criminal investigations appearing in various DEA forms, the plaintiff's indictment, warrants issued and photographs. *See* December 6, 2021 Ruling at 13–14.

The DEA also relied on Exemption 7(F) to protect a category of information designated "Identifying Information of Internal Indexing/Numbering Systems: Group No. (Group Numbers)." Supp. Hertel Decl. ¶ 17. The declarant explained that the "DEA's Organization and Staffing Management System . . . uses and stores organizational group numbers in the National

Finance Center (NFC)" for the purpose of allocating resources. *Id.* ¶ 19. Further, she stated that certain law "enforcement components within [the] DEA have a numeric identifier," as do "[i]ndividual employees associated with a particular group in [the] NFC and in [the] DEA's internal personnel management system." *Id.* According to the declarant, if group numbers were released, that would amount to the disclosure of a "mosaic" or puzzle from which outsiders could determine which DEA personnel were associated with particular operational groups, and from that "potentially identify the agent(s) [who] wrote the investigative reports and/or identify the law enforcement personnel involved in particular law enforcement operations." *Id.* ¶ 20. And, given that "violators are often armed and 'have known violent tendencies[,]'" the DEA withheld the group numbers "to shield group members who could be identified and, therefore, become vulnerable to the risks of 'physical attacks, threats, harassment, murder, and attempted murder.'" *Id.* ¶ 21.

Again, the plaintiff's responses fail to address the merits of the defendant's arguments and, based on its review of the parties' submissions, the Court concludes that the DEA properly withholds group numbers under Exemption 7(F). *See, e.g., Dale*, 2022 WL 3910502, at *9 (D.D.C. Aug. 31, 2022) (permitting the withholding of identifying information about DEA Special Agents, laboratory personnel, employees whose duties include custody and disposition of drug evidence, and street address of DEA evidence storage facility under Exemption 7(F)).

### 4. Segregability

A district court's determination that agency records are exempt from disclosure under the FOIA is subject to remand if the court does not also make specific findings on the question of segregability. *See Krikorian v. U.S. Dep't of State*, 984 F.2d 461, 467 (D.C. Cir. 1993). To make this determination, the agency must provide a "relatively detailed description" of the

withheld material. *Id.* (citing *Goldberg v. U.S. Dep't of State*, 818 F.2d 71, 78 (D.C. Cir. 1987)). Agencies must also review the withheld documents and determine whether, absent the exempted material, the resulting document would still be comprehensible, or whether "the result would be an essentially meaningless set of words and phrases." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977) (stating that the result being a "meaningless set of words" may be sufficient to claim that the information is not segregable).

Having reviewed the DEA's supporting declarations, *see* Supp. Hertel Decl. ¶ 22; Defendant's Motion for Summary Judgment, Ex. 1 (Declaration of Angela D. Hertel) ¶¶ 50–51, ECF No. 33-1, the Court concludes that a line-by-line review of each responsive record was conducted, and therefore, the DEA has demonstrated that it has released all reasonably segregable information.

### B. The Plaintiff's Cross-Motion for Summary Judgment and Motion to Compel

The Court considers the plaintiff's cross-motion for summary judgment and his motion to compel collectively, as both essentially demand release of all the responsive records for two reasons. First, the plaintiff interprets the Court's January 8, 2020, Memorandum Opinion and Order, ECF No. 20, as an order directing the DEA to release all responsive records. *See* Pl.'s Cross-Mot. ¶ 2; Pl.'s Mot. to Compel ¶ 1. Second, the plaintiff argues that he is entitled to the requested records because, without them, he cannot challenge his criminal conviction. *See* Pl.'s Cross-Mot. ¶¶ 7–9; Pl.'s Mot. to Compel ¶ 6. According to the plaintiff, had the government fulfilled its obligation to produce exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), it would not have been necessary for him "to resort to the use of FOIA to uncover material collected on him, a private citizen, by a government agency." Plaintiff's Response to

11

the Defendant's "Reply in Support of Defendants' Renewed Motion for Summary Judgment" at 1, ECF No. 53.  The plaintiff's arguments are not persuasive.

As the Court previously explained, *see* December 6, 2021 Ruling at 5, the plaintiff misconstrues the January 8, 2020, Memorandum Opinion and Order.  There, the Court concluded that the DEA initially failed to show that it was entitled to summary judgment and afforded the agency a second opportunity to describe its search for responsive records and to justify its decisions to withhold information under the claimed exemptions.  *See* Memorandum Opinion and Order at 10–11 (Jan. 8, 2020), ECF No. 20.  Contrary to the plaintiff's position, the Court did not order the release in full of all documents requested by the plaintiff, and the DEA has not violated the Court's Memorandum Opinion and Order by failing to do so.

The plaintiff confuses a government agency's obligations under the FOIA with its obligations in criminal proceedings.  As the Circuit has observed, the "FOIA is not a substitute for discovery in criminal cases or in habeas proceedings.  Instead, its purpose is to protect the citizens' right to be informed about what their government is up to."  *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1177 (D.C. Cir. 2011) (citations and internal quotation marks omitted); *see Williams & Connolly v. SEC*, 662 F.3d 1240, 1245 (D.C. Cir. 2011) ("[The] FOIA is neither a substitute for criminal discovery . . . nor an appropriate means to vindicate discovery abuses[.]" (internal citations omitted)).  The purpose for which the plaintiff seeks the production of documents is not relevant, and therefore the FOIA does not require the release of documents for the purpose of attacking a criminal conviction.  *See, e.g., Richardson v. United States*, 80 F. Supp. 3d 128, 137 (D.D.C. 2015).

**C. The Plaintiff's Motion for Appointed Counsel**

The plaintiff asked the Court to appoint counsel to represent him in this matter. *See generally* Pl.'s Mot. to Appoint Counsel at 1, ECF No. 49. He cites 18 U.S.C. § 3006A, which permits appointment of counsel for criminal defendants. But this is a civil case, and "[n]o civil litigant is 'guaranteed counsel.'" *Gaviria v. Reynolds*, 476 F.3d 940, 943 (D.C. Cir.) (quoting *Willis v. FBI*, 274 F.3d 531, 532 (D.C. Cir. 2001)), *cert. denied*, 552 U.S. 904 (2007). The Court is, however, "authorized by statute to request an attorney to represent any person unable to afford counsel." *Id.* (quoting 28 U.S.C. § 1915(e)(1)). And, such an appointment is made taking into account the nature and complexity of the action, the potential merit of the *pro se* party's claims, the demonstrated inability of the *pro se* party to retain counsel by other means, and the degree to which the interests of justice will be served by appointment of counsel. LCvR 83.11(b)(3).

As grounds for being appointed an attorney, the plaintiff explains that he lacks monetary resources, that mail being delivered to him is delayed, and that conditions at the institution due to the COVID-19 pandemic limit his access to the law library. *See* Pl.'s Mot. to Appoint Counsel at 1. Notwithstanding these limitations, the plaintiff has proved quite capable of representing himself in this case. And having been afforded the ability to adequately evaluate the legal positions advanced by the plaintiff, the Court concludes that the appointment of counsel is not warranted.

**III. CONCLUSION**

The Court concludes that the DEA has demonstrated its compliance with the FOIA – it conducted an adequate search for records responsive to the plaintiff's FOIA request, only withheld information properly under Exemptions 7(C), 7(D), 7(E) and 7(F), and released all reasonably segregable information. Accordingly, the Court grants summary judgment for the

defendant and denies the plaintiff's motions for summary judgment, to compel, and for appointment of counsel. An Order consistent with the Memorandum Opinion is issued separately.

DATE: March 9, 2023

/s/
REGGIE B. WALTON
United States District Judge